Teitelbaum Law Group LLC
Attorneys for Stack's-Bowers Numismatics, LLC
d/b/a Stack's Bowers Galleries                    Hearing Date: July 12, 2019
1 Barker Avenue                                   Hearing Time: 10:00 a.m
White Plains, New York 10610                      Objection Deadline: July 5, 2019
Tel. 914.437.7670
E. Mail jteitelbaum@tblawllp.com
Jay Teitelbaum, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------
In re:                                    :    Chapter 11
                                          :    Case No: 19-22721(RDD)
HAMPSTEAD GLOBAL, LLC,                         :
                    Debtor                 :
-------------------------------------------------------

### MOTION FOR AN ORDER, (I) DISMISSING CHAPTER 11 CASE OR CONVERTING CHAPTER 11 CASE TO CHAPTER 7; (II) COMPELLING ASSUMPTION OR REJECTION OF EXECUTORY CONTRACT; AND (III) MODIFYING THE AUTOMATIC STAY TO PERMIT THE EXERCISE OF REMEDIES OF ASSUMED OR REJECTED CONTRACTS

1.      Stack's-Bowers Numismatics, LLC, d/b/a Stack's Bowers Galleries ("**Movant**"), by its undersigned counsel Teitelbaum Law Group LLC, and upon the accompanying declaration of Brian Kendrella (the "**Kendrella Decl.**"), hereby moves for an order, pursuant to Sections 105, 1112(b), 362(d)(1) and 365(d)(2) of Title 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**") and Rules 1017, 1019, 2002 and 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), (i) dismissing the Chapter 11 case or converting the Chapter 11 case to Chapter 7; (ii) compelling the Debtor or Chapter 7 Trustee to assume or reject that certain Purchase and Sale Agreement, dated as of April 30, 2018 (the "**PSA**"), between Movant and Debtor and that certain Escrow Agreement, dated as of May 1, 2018 among Movant as Seller, the Debtor as Buyer and Greenberg & Lieberman as Escrow Agent which was executed pursuant to the PSA (the "**Escrow Agreement**"); (iii) modifying the

automatic stay to permit Movant, upon (a) a payment default under the PSA following assumption or (b) the rejection of the PSA and Escrow Agreement, to exercise its rights and remedies under the PSA and Escrow Agreement and State Law with respect to the transfer of the title, registration and use of the domain name www.coins.com (the "**Domain Name**") back to Movant; and (iv) granting Movant such other and further relief as the Court deems just and proper.

2.    This Chapter 11 case is the epitome of a bad faith filing. The sole purpose of the filing is to delay Movant's exercise of its rights under the PSA and Escrow Agreement and for the Debtor to have this Court rewrite the terms of the PSA. The Debtor is seeking to use the Domain Name, Movant's property, to launch a business; but does not want to, or have the ability to, pay Movant the purchase price under the PSA.

3.    The Debtor has one material asset- -a contractual right to purchase the Domain Name from Movant. The Debtor has only one actual and substantial creditor - - Movant.

4.    Movant has filed a proof of claim in this case asserting a claim in the amount of $1,400,000 pursuant to the terms of the PSA. A copy of the filed proof of claim is attached to the Kendrella Decl. as **Exhibit A**.

5.    Based upon the Debtor's Statement of Financial Affairs (ECF Docket No. 10) (the "**SOFA**") and Mr. Perzow's testimony at the 341 Meeting held on May 6, 2019, the Debtor has (i) no appraisal or other valuations to support any alleged valuation of the Domain Name, (ii) no operating business, (iii) no customers, (iv) no income, (v) no cash, and (vi) no assets other than the Domain Name.

6.    Based upon the sparse pleadings filed in this case, it does not appear that the Debtor has any ability to (i) propose and confirm a Chapter 11 plan or otherwise rehabilitate,

(ii) remain in Chapter 11 without substantial losses, (iii) cure pre-petition monetary defaults under the PSA, or (iv) make the post-petition payments required under the PSA in the event of an assumption of such agreement.

7.    The Debtor cannot in equity and fairness be permitted to exploit the benefits of the PSA without incurring the obligations thereunder. The Debtor cannot continue to try to use and/or market the Domain Name without providing Movant the benefits of its bargain under the PSA. The Debtor cannot use this Court to renegotiate or redraft the PSA.

### ***The Purchase and Sale Agreement and Escrow Agreement***

8.    The Debtor and Movant executed the PSA pursuant to which Movant agreed to sell all right title and interest in the Domain Name (www.coins.com) to Debtor for $1,700,000. A copy of the PSA is attached to the Kendrella Decl. as **Exhibit B**.

9.    Pursuant to the PSA:

    i.    The Effective Date of the PSA was April 30, 2018 (PSA page 1).

    ii.    The Purchase Price for the Domain Name was $1.7 Million (PSA § 2) and was payable as follows:

        (i)    An "Initial Payment" non-refundable payment of $300,000 5 business days after the Effective Date (PSA §2(a));

        (ii)    $300,000 ten months after the Effective Date; $200,000 thirteen months after the Effective Date; $300,000 sixteen months after the Effective Date; and $600,000 twenty five months after the Effective Date (PSA §2(b)).

    iii.    The Debtor **had** the right to purchase the Domain Name for a reduced price of $1.6 million provided the Debtor paid a total of $1.6 Million to

Movant no later than 12 months after the Effective Date – or by April 30, 2019 (PSA §2(c)).

iv.   Debtor delivered the Initial Payment of $300,000 to Movant. Kendrella Decl.

v.   Movant caused the registration of the Domain Name to be transferred to the Escrow Agent pursuant to the terms of the Escrow Agreement. A copy of the Escrow Agreement is attached to the Kendrella Decl. as **<u>Exhibit C</u>**. (PSA §3).

vi.   Pursuant to the PSA, the Domain Name was registered with the Escrow Agent "(i) in trust for the benefit of the Buyer; (ii) to secure Sellers' receipt of the unpaid balance of the Purchase Price in full in accordance with Section 2; and (iii) Buyer shall not receive the [sic] any ownership interest in the Domain Name until the Purchase Price has been paid in full and the registration has been transferred to Buyer". (PSA §3)

vii.   Pursuant to the PSA, unless and until the Purchase Price is paid in full, title and ownership of the Domain Name does not pass to the Debtor.

(i)   Section 3 of the PSA specifically provides: "For the avoidance of doubt, only upon the payment in full of the Purchase Price in accordance with Section 2, will the registration of the Domain Name (as well as all Intellectual Property rights associated with the Domain Name) be transferred to and registered in the name of the Buyer, concurrently by such action, all right, title and interest of any kind associated with the Domain Name, including but not

limited to all intellectual property rights, and all trademark rights, to the extent such rights exist, shall automatically pass to the Buyer."

(ii) PSA Section 7(iii) provides in pertinent part "For the avoidance of doubt, except for the use rights described in Section 5, the Buyer shall have no ownership or other interest in the Domain Name until the Purchase Price is paid in full"

viii.  In consideration for the Initial Payment, the Debtor received only the limited right to use the Domain Name registered with the Escrow Agent, subject to the limitations set forth in the PSA and subject to Movants' right to, among other things, notify the Escrow Agent of a payment default and demand that the Domain Name registration be put in the name of Movant. (PSA §§3, 5, 7(iii)).

ix.  Pursuant to the PSA, in addition to payment of the Purchase Price, the Debtor has ongoing material obligations, including:

(i) not to use the Domain Name in any manner other than as permitted in the PSA; (ii) not to permit or authorize any lien, claim or encumbrance on the Domain Name; (iii) not to use the Domain Name for any unlawful purpose or anything of a pornographic nature; and (iv) not to violate Google standards for traffic generation. (PSA §5)

x.  Pursuant to the PSA and Escrow Agreement, Movant also has ongoing material obligations including:

(i) Maintaining good and marketable title to Domain Name, free and clear of all liens and encumbrances (PSA §7)' and upon receipt of payment in full cooperate in the transfer of the registration and ownership of the Domain Name to Debtor. (Escrow Agreement §4(a))

10. Pursuant to the Escrow Agreement (i) Movant has the right to object to the transfer and release of the Domain Name to the Debtor based upon a failure of the Debtor to make payments as required under the PSA. (Escrow Agreement §4(a)); and (ii) the Escrow Agent is required to return the Domain Name to Movant three business days after receipt from Movant of notice of a payment default under the PSA. (Escrow Agreement §4(c)).

11. Other than the Initial Payment of $300,000, Debtor has not made any payments to Movant under the PSA or on account of the purchase of the Domain Name. (Kendrella Decl.)

12. As of the Petition Date, the balance due to Movant under the PSA, was $1.4 million. Kendrella Decl.

### *The Debtor's Non-Existent Business*

13. The Debtor's Schedules and SOFA reflect that the Debtor has (i) no business operations, (ii) no customers, (iii) no income, (iv) no cash, (v) no material assets other than the Domain Name, and (vi) no substantial creditors other than Movant.

14. The Debtor alleges that the value of the Domain Name and another domain name identified as www.rarex.com is $5 million; however, Mr. Perzow testified at the 341

Meeting that the Debtor does not have an appraisal or any basis for such a valuation and that the rarex domain name was purchased from Mr. Gati for approximately $15,000.[1]

15. The Debtor's Statement of 20 Largest Creditors identifies 18 creditors in total, including (i) Movant at $1.3 Million, (ii) Josh Perzow at $180,000, (iii) Barbara Etinson at $150,000, (iv) Ari Gati at $105,000, and (v) 13 others with claims ranging from $5,750 to $10.00 and aggregating approximately $13,000.

16. The Debtors statements, schedules and 1007 Affidavit fail to identify Josh Perzow and Barbara Etinson, as the bother and mother of Adam Perzow, the sole member of the Debtor. These alleged creditors are statutory insiders of the Debtor. (Bankruptcy Code §101(31)(B)(vi)). Moreover, at the 341 Meeting, Mr. Perzow testified that the amounts scheduled as due to Josh Perzow and Barbara Etinson as loans (i) were allegedly advanced to the Debtor at the time of the start-up of the Debtor in February 2018; (ii) are not evidenced by any promissory note or other writing; (iii) are not subject to any stated maturity or repayment date; and (iv) are to be repaid with 10% interest whenever they are repaid. Movant disputes that these are in fact loans.

17. The Debtors statements, schedules and 1007 Affidavit do not identify the actual relationship with or basis of the claim of Ari Gati and the claim is suspect. Mr. Perzow testified at the 341 Meeting that the amounts due to Mr. Gati are for services performed for the Debtor; however, Mr. Perzow testified that the Debtor has not launched its business.   Moreover, the Debtor's 1007 Affidavit states that the Debtor has no employees. (ECF Docket No. 3 at ¶3).

---

[1] Although there is no transcript of the 341 Meeting, Movant obtained from the U.S. Trustee an audio recording of the meeting.

18. The Debtor's Schedule of 20 Largest Creditors misrepresents Movant's claim as an unsecured loan.  The Debtor fails to identify the PSA and Escrow Agreements as executory contracts pursuant to which the Debtor is obligated to pay $1.4 to complete the purchase of the Domain Name.

19. The Debtors have not filed any operating reports in this case. Mr. Perzow testified at the 341 Meeting that, despite being formed in February 2018, the Debtor has not launched its business, meaning it has (i) no business operations, (ii) no customers, (iii) no income, (iv) no cash, and (v) no material assets other than the Domain Name.

20. Pursuant to the express terms of the PSA, the Debtor has no ownership interest in the Domain Name.

21. Pursuant to the express terms of the PSA, the Debtor's continued limited use of the Domain Name is contingent upon the payment of the Purchase Price and the performance of other material obligations under the PSA.

### Relief Requested

### Point I

### The Cases Should Be Dismissed or Converted for Cause Pursuant to §1112(b) (1), (4)(A) and the C-TC Factors

22.  Movant seeks entry of an order pursuant to Bankruptcy Code §1112(b) (1) and (4) either dismissing the Chapter 11 Case or converting the case to Chapter 7.

23. Bankruptcy Code §1112(b) (1) provides in pertinent part that:

> on request of a party in interest, . . . the court shall convert a case under this chapter to a case under chapter 7 or dismiss case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or examiner is in the best interests of creditors and the estate.

**_Conversion or Dismissal Pursuant to §1112(b)(4)(A):_**

24. Bankruptcy Code §1112(b)(4) defines "cause to include, but not be limited to, sixteen examples including (b)(4)(A), which provides that cause includes "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation" *In re Red Bull Taxi Inc*., 2017 Bankr. LEXIS 1209 at **5-6 (Bankr. S.D.N.Y. 2017), the Court articulated the test as follows:

Section 1112(b)(4) contains a non-exhaustive list of examples of what constitutes cause for dismissal or conversion. Pursuant to section 1112(b)(4)(A) , cause includes "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A). Thus, to establish cause under section 1112(b)(4)(A), the moving party must establish two separate prongs: (1) that the estate is suffering a substantial or continuing loss or diminution and (2) the absence of a reasonable likelihood of rehabilitation. Section 1112(b)(4)(A) is "intended to preserve estate assets by preventing the debtor in possession from gambling on the enterprise at the creditors' expense when there is no hope of rehabilitation." *In re Lizeric Realty Corp.*, 188 B.R. 499, 502 (Bankr. S.D.N.Y. 1995); *see also In re Court Living Corp.*, No. 96 CIV. 965, 1996 U.S. Dist. LEXIS 13588, 1996 WL 527333, at *3 (S.D.N.Y. Sept. 16, 1996)"). For purposes of this analysis, the term "rehabilitation" is not synonymous with the term "reorganization," which, for purposes of chapter 11 generally, may include a liquidation. *See In re Adbrite Corp.*, 290 B.R. at 216. Rather, the term "rehabilitate" means" to put back in good condition; re-establish on a firm, sound basis." *In re Lizeric Realty Corp.*, 188 B.R. at 503 (quoting 5 *Collier on Bankruptcy* ¶ 1112.03 at 1112-19 (Lawrence P. King *et al.* eds., 15th ed. 1995)) (internal quotation marks omitted). Courts have found that cause exists under section 1112 (b)(4) (A) when a debtor has a negative cash flow post-petition, and an inability to pay current expenses. *See In re Adbrite Corp.*, 290 B.R. at 215.

25. In this case, the Debtor has no business, no assets (other than the Domain Name), no income and is incurring expenses, if for nothing else the administration of this case. Although the Debtor has not filed any operating reports, the Debtor's 1007 Affidavit alleges that the Debtor has offices in Tarrytown, N.Y. Scarsdale, N.Y. and Santa Monica Ca. (ECF Docket No. 3 at ¶2). The Debtor has not identified the rent or other expenses associated with these offices, but presumably there are such expenses.

26. In addition, the Debtor has retained counsel in this case and upon information and belief has corporate counsel in California (which has **not** been retained pursuant to any order of this Court). Presumably counsel is not working *pro-bono*. The Debtor will also be incurring fees payable to the U.S. Trustee.

27. Finally, assuming the debtor is attempting to launch its business, there must be advertising, marketing and other expenses associated with the start up. None of these expenses have been identified.

28. With no income and no assets to liquidate other than the Domain Name, the Debtor has or will have substantial and continuing losses.

29. The Debtor has not started its business in the 14 months since executing the PSA and Escrow Agreement. Mr. Perzow has testified at the 341 meeting that the economic down turn and other business issues have precluded the launch.  Other than Mr. Perzow's sales pitch, there is not proof of a viable business or any rehabilitation of the Debtor.

30. As the Debtor alleges that it has no employees, buildings or equipment (ECF Docket No. 3 at ¶3), the dismissal or conversion will not prejudice or be detrimental to innocent bystanders or the administration of any assets.

31. Dismissal or conversion of this case under 1112(b)(4) (A) is appropriate.

### ***Conversion of Dismissal for Cause -- Bad Faith Filing***

32. In addition, the Second Circuit in *In re C-TC 9th Ave.*, 113 F.3d 1304, 1311 (2d Cir. 1997), held that the list of examples in §1112(b)(4)

> is illustrative, not exhaustive." Although "bad faith" is not among the examples listed therein, "[i]t is well settled that the filing of a bankruptcy petition in bad faith constitutes 'cause' for dismissal or conversion of a case under the Bankruptcy Code section 1112(b)." *In re Ancona*, No. 14-10532, 2016 Bankr. LEXIS 4114, at *9 (Bankr. S.D.N.Y. Nov. 30, 2016); *In re Kaplan Breslaw Ash, LLC*, 264 B.R.

309, 334 (Bankr. S.D.N.Y. 2001) ("Cause, for either dismissal or relief from the stay, may be found based on unenumerated factors, including 'bad faith[.]'.

*See also In re Reyes*, No. 14-13233, 2015 Bankr. LEXIS 2575, 2015 WL 4624156, at *4 (Bankr. S.D.N.Y. Aug. 4, 2015)(noting that under §1112 (b), "the court may convert or dismiss a case that was filed in bad faith."); *In re Schur Mgmt. Co., Ltd.*, 323 B.R. 123, 127 (Bankr. S.D.N.Y. 2005) ("It is not contested . . . that there exists a general good faith requirement under which Chapter 11 petitions can be dismissed for having been filed in bad faith.").

33. The rationale for dismissing a case filed in bad faith is that bankruptcy is an equitable remedy and "if a petition is not filed in good faith, it is an abuse of judicial process or of the jurisdiction of the bankruptcy court." *In re Kingston Square Assocs.*, 214 B.R. 713, 724 (Bankr. S.D.N.Y. 1997) (citations omitted). This Court "has wide discretion to determine if cause exists [under §1112(b)] and how to ultimately dispose of the case. "*In re Gucci*, 174 B.R. 401, 404 (Bankr. S.D.N.Y. 1994).

34. A petition is filed in bad faith "if it is clear that on the filing date there was no reasonable likelihood that the debtor intended to reorganize and no reasonable probability that it would eventually emerge from bankruptcy proceedings. "*Baker v. Latham Sparrowbush Assocs. (In re Cohoes Indus. Terminal, Inc.)*, 931 F.2d 222, 227 (2d Cir. 1991).

35. In this Circuit a bankruptcy petition will be dismissed if both the objective futility of the reorganization process and subjective bad faith in filing the petition are found. *In re General Growth Props., Inc.*, 409 B.R. 43, 56 (Bankr. S.D.N.Y. 2009).

36. The objective futility standard "is designed to ensure that the debtor actually has a potentially viable business in place to protect and rehabilitate. Lacking this, the chapter

11 case has lost its *raison d'etre*." *In re RCM Global Long Term Capital Appreciation Fund, Ltd.*, 200 B.R. 514, 520 (Bankr. S.D.N.Y. 1996).

37. In support of the objective standard, Movant relies upon the undisputed facts that since its formation and execution of the PSA, the Debtor has (i) not launched its business, (ii) no customers, (iii) no employees, (iv) no assets (other than the Domain Name), (v) no income, and (vi) no cash for operating capital. In short, the Debtor has nothing but a fast talking salesman in Mr. Perzow.

38. In considering the subjective indicia of bad faith standard to determine whether the Debtor actually intends to use chapter 11 to reorganize and rehabilitate itself, the Second Circuit in *C-TC*, *supra* identified eight factors, or "badges," (the "**C-TC Factors**"), the presence of which would be indicative of subjective bad faith:

> (1) The debtor has only one asset;
>
> (2) The debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;
>
> (3) The debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;
>
> (4) The debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;
>
> (5) The timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;
>
> (6) The debtor has little to no cash flow;
>
> (7) The debtor can't meet current expenses including the payment of personal property and real estate taxes; and
>
> (8) The debtor has no employees.

39. A mechanical counting of these factors is not necessary and a court may consider any or all of them in making a determination of bad faith. *In re Century/ML Cable Venture*, 294 B.R. 9, 35 (Bankr. S.D.N.Y. 2003); *In re Hampton Hotel Inv'rs, L.P.*, 270 B.R. 346, 359 (Bankr. S.D.N.Y. 2001).

40. In this case, however, the Debtor rings the bell on all 8 factors:

| C-TC Factor | Reference |
|---|---|
| The debtor has only one asset | Rule 1007 Aff (ECF Docket No. 3 at ¶3); ECF Docket  No. 10 SOFA; ECF Docket No. 9 Sched A/B |
| The debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors | ECF Docket No. 2. Schedule of 20 Largest Creditors: Other than Stack's Bowers, there are 13 non insider creditors with claims aggregating approximately $13,000 |
| The debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt | Pursuant to the PSA, Movant had the immediate right to direct the Escrow Agent to return the Domain Name to Stack's Bowers; Movant was about to exercise its rights before the filing. Kendrella Decl. |
| The debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action; | Debtor admits at ¶6 of the 1007 Aff (ECF Docket No. 3) that the Bankruptcy filing was precipitated by the dispute with Movant. There are no other creditors demanding repayment. |
| The timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights | Debtor filed the cases solely to prevent Movant from exercising its contractual right to direct the Escrow Agent to return the Domain Name to Movant . Kendrella Decl. |
| The debtor has little to no cash flow | The Debtor has admitted it has no income, customers, assets or business. Testimony of Mr. Perzow at 341 Meeting and ECF Docket No. 10 SOFA |
| The debtor can't meet current expenses including the payment of personal property and real estate taxes | The Debtor has no income to pay any expenses and no assets to liquidate other than the Domain Name |
| The debtor has no employees | Rule 1007 Decl. at ¶3 |

41. The Debtor satisfies each and every one of the C-CT Factors.

42. It is submitted that cause exists to dismiss or convert the case. Assuming the Court finds cause under §1112(b) the Court must dismiss or convert the case. *In re Adamo*, 2016 Bankr. LEXIS 694 at* 27 (Bankr. E.D.N.Y 2016); *In re FRGR Managing Member LLC*, 419 B.R. 576, 581 (Bankr S.D.N.Y. 2009).

43. The Court has the discretion to determine whether conversion or dismissal is appropriate. In general, upon finding cause, a court will convert, rather than dismiss a case, where there are assets to administer and retaining the case is in the interests of creditors and other parties in interest. *See, e.g., In re Kuvykin*, 2019 Bankr. LEXIS 631 (Bankr S.D.N.Y. 2019); *In re FRGR*, 419 B.R. at 581: *In re Adamo*, 2016 Bankr. LEXIS 694 at * 26.

44. It is submitted that, as this is a single asset case and the only substantial creditor in the case is Movant, dismissal, rather than conversion is appropriate in order to allow Movant to promptly exercise its rights under the PSA.

**Point II**
**The Purchase and Sale Agreement and Escrow Agreement Are Executory Contracts**
**Which The Debtor or a Trustee Must be Compelled to Immediately Assume or**
**Reject**

45. Assuming the case is not dismissed, the Debtor or a Chapter 7 Trustee (in the case of conversion) must be compelled to make an immediate decision on assumption or rejection of the PSA and Escrow Agreement.

46. Although there is no precise definition of an executory contract in the Bankruptcy Code, the Courts in this Circuit have generally adopted the approach that an executory contract "is one on which performance remains due to some extent on both sides." *In re Penn*

*Traffic Co.*, 524 F.3d 373, 378, 379 (2d Cir. 2008); *In re Lyondell Chem. Co.*, 2014 U.S. Dist. LEXIS 32899 at *11 (S.D. N.Y. 2014).

47. The PSA and Escrow Agreements are executory contracts. As set forth above and in the Kendrella Decl., in addition to the payment of money both sides had performance of obligations which were negotiated and included in the PSA and Escrow Agreement as important and integral provisions to protect the interests of the parties.

48. Movant did not make a loan to the Debtor as alleged in the Debtor's schedules. Nothing in the PSA provides for an extension of credit or loan of any money to the Debtor or for the repayment of any funds or credit advanced to the Debtor. The PSA and Escrow Agreements are the only agreements between the parties regarding the Domain Name. Kendrella Decl.

49. The PSA clearly and unequivocally provides that Movant agreed to sell the Domain Name to the Debtor pursuant to the terms of the PSA and Escrow Agreement for a specified price. The PSA specifically provides that title and ownership of the Domain Name was not transferred to the Debtor and would not be transferred unless and until the Purchase Price was paid to Movant.

50. The PSA and Escrow Agreement provide that the Domain Name was registered with the Escrow Agent to secure the payment of the Purchase Price and to provide the Debtor with the use of the Domain Name while making payments of the Purchase Price. Only upon completion of payment of the Purchase Price would title be transferred to the Debtor.

51. As of the Petition Date, the Debtors were in payment default under the PSA for a $300,000 payment.

52. Pursuant to the PSA, an additional payment of $200,000 became due on or about May 30, 2019 and additional post –petition payments will be coming due.

53. Other than the initial installment of $300,000 paid to Movant over one year ago, the Debtor has failed to make any payment to Movant on account of the Purchase Price. Kendrella Decl.

54. Based upon the Debtors current filings, the Debtor has (i) no business, (ii) no customers, (iii) no income, (iv) no assets (other than the Domain Name), (v) no ability to cure the pre-petition payment defaults under the PSA, (vi) no ability to make post-petition payments under the PSA, and (vii) no prospect of rehabilitating or confirming a Chapter 11 Plan.

55. In the event that the Debtor or a Chapter 7 Trustee determines to assume the PSA, the defaults must be cured or Movant must be provided with adequate assurance of a prompt cure and of future performance. Bankruptcy Code §365(b)(1)(A) and (C).

56. There is no evidence that the Debtor has any present ability to cure the pre-petition payment default under the PSA, make the post-petition payments under the PSA, or make any other payments under the PSA.

57. It appears that the Debtor's strategy is to preserve an option to pay Movant for the use of the Domain Name at some unspecified time in the future while the Debtor uses the Domain Name to try to build a business. If the Debtor is successful, perhaps the Debtor will then agree to pay Movant; if not, it will likely discard or abandon the Domain Name with all risk of loss falling on Movant.

58. The Debtor is impermissibly relying upon this Court to rewrite the PSA and Escrow Agreement for the sole benefit of the Debtor. The Supreme Court in *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, No. 17–1657, 203 L. Ed. 2d 876, 587 U.S. ___, ___ S.

Ct. ___, 2019 WL 2166392, at *9 (U.S. May 20, 2019) recently restated the long standing principal that a debtor in bankruptcy gets no greater rights under a contract than it would have absent bankruptcy and the counter-party to the contract gets no lesser rights. The Court stated::

> In preserving those rights, Section 365 reflects a general bankruptcy rule: The estate cannot possess anything more than the debtor itself did outside bankruptcy. See *Board of Trade of Chicago* v. *Johnson*, 264 U.S. 1, 15, 44 S. Ct. 232, 68 L. Ed. 533 (1924) (establishing that principle); §541(a)(1) (defining the estate to include the "interests *of the debtor* in property" (emphasis added). As one [**19] bankruptcy scholar has put the point: Whatever "limitation[s] on the debtor's property [apply] outside of bankruptcy[ ] appl[y] inside of bankruptcy as well. A debtor's property does not shrink by happenstance of bankruptcy, but it does not expand, either." D. Baird, Elements of Bankruptcy 97 (6th ed. 2014). So if the not-yet debtor was subject to a counterparty's contractual right (say, to retain a copier or use a trademark), so too is the trustee or debtor once the bankruptcy petition has been filed. The rejection-as-breach rule (but *not* the rejection-as-rescission rule) ensures that result. By insisting that the same counterparty rights survive rejection as survive breach, the rule prevents a debtor in bankruptcy from recapturing interests it had given up.
> 203 L. Ed. 2d at 888, 891-892.

59. The Debtor is stuck with the PSA and Escrow Agreement as written and the bundle of rights and obligations which go along with those agreements. *Walgreen Co. v. NXXI, Inc.*, 2014 Bankr. LEXIS 2853 (Bankr. S.D.N.Y. 2014) (court is powerless to rewrite the clear and unambiguous terms of a voluntary contract).

60. Moreover, in the event of an assumption, the contract is assumed *cum onere*. *Nat'l Labor Relations Board v. Bildisco and Bildisco (In re Bildisco and Bildisco)*, 465 U.S. 513, 531-32, 104 S. Ct. 1188, 79 L. Ed. 2d 482 (1984) ("Should the debtor-in-possession elect to assume the executory contract, however, it assumes the contract *cum onere*. . . .") (citation omitted); *In re MF Global Holdings Ltd.*, 466 B.R. 239, 241 (Bankr. S.D.N.Y. 2012) ("The trustee must either assume the entire contract, *cum onere*, or reject the entire contract, shedding obligations as well as benefits).

61. Thus, in order to assume the agreements the Debtor or a Chapter 7 Trustee must demonstrate an ability to cure the payment defaults and perform the PSA in order to continue with the contractual right to use and ultimately purchase the Domain Name. The Debtor (or a trustee) cannot pick and choose which provisions of the PSA are to be enforced, nor rely upon this Court to rewrite the PSA or Escrow Agreement. *Walgreen Co. v. NXXI, Inc.*, 2014 Bankr. LEXIS 2853 (Bankr. S.D.N.Y. 2014) (court is powerless to rewrite the clear and unambiguous terms of a voluntary contract)

62. The Debtor has not made a payment to Movant under the PSA in over a year. The Debtor has not launched its business; does not have a single customer; does not have a single dollar of sales, does not have any cash and does not have any assets other than the Domain Name. There is not a scintilla of evidence that the Debtor has the ability to cure and perform the PSA.

63. The Debtor cannot be permitted to string this Court and Movant along with tech speak, fast talk, and a baseless business plan.

64. The Debtor must be compelled to make a decision whether it has a viable business and demonstrate that it can pay for the use and ownership of the Domain Name.

65. Pursuant to Bankruptcy Code §365(d)(2), cause exists to compel a decision whether to assume and perform the PSA and Escrow Contracts or to reject them.

**Point III**

**The Automatic Stay Should be Modified to Permit Movant to Exercise State Law
and Contractual Rights to Recover the Domain Name**

66. In the event that the case is not dismissed and the PSA and Escrow Agreement are assumed by the Debtor or a Chapter 7 Trustee, such party must perform the terms of the PSA (or provide adequate assurance of performance), including curing the defaults, making scheduled payments, and complying with use limitations to continue the right to use the Domain Name and to have title and ownership transferred to it upon payment of the Purchase Price. Bankruptcy Code §365(b)(1)(A) and (C).

67. Upon a payment default Movant's remedy is to notify the Escrow Agent who is then required to take the appropriate action to release and return the registration for the Domain Name to Movant (Escrow Agreement §4(c)).

68. In the event that the PSA and Escrow Agreement are rejected, the agreements are deemed breached as of the commencement of these cases. *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, No. 17–1657, 203 L. Ed. 2d at 888,891-892 ("[A] debtor's rejection of an executory contract₃ in bankruptcy has the same effect as a breach outside bankruptcy."). The Supreme Court in *Mission Prod.* adopted the rejection interpretation, rather than the rescission rule of Bankruptcy Code §365. *Id.*.

69. In the event that the PSA and Escrow Agreements (i) are assumed and there is a post assumption payment default or (ii) are rejected and the Debtor or Chapter 7 Trustee refuses to surrender or consent to the transfer of the Domain Name to Movant, the automatic stay would arguably stay Movant's exercise of its rights to obtain the Domain Name under the PSA and Escrow Agreement

70. Bankruptcy Code § 362(d)(1) provides in pertinent part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a), such as by terminating, annulling, modifying or conditioning such stay --
>
> (1) for cause, including lack of adequate protection of an interest in property of such party in interest;

71. Under these circumstances, Movant seeks a modification of the automatic stay for cause to proceed to recover the Domain Name.

72. Cause is not defined but can include a filing made in bad faith and other equitable considerations. *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1285 (2d Cir. 1990); *Holt v. JP Morgan Chase Bank, N.A.*, 2019 U.S. Dist. LEXIS 7102 (S.D.N.Y. 2019); *In re 68 W. 127 St., LLC*, 285 B.R. 838 (Bankr. S.D.N.Y. 2002) (identifying the C-TC Factors set forth above).

73. Section 362(d) is mandatory, not permissive, meaning that upon a finding of cause, the Court shall grant relief from the stay. *In re Elmira Litho, Inc.*, 174 B.R. 892, 900 (Bankr. S.D.N.Y. 1994); *In re Touloumis*, 170 B.R. 825, 827 (Bankr. S.D.N.Y. 1994); *In re Kleinman*, 156 B.R. 131, 136 (Bankr. S.D.N.Y. 1993); *In re Diplomat Electronics Corp.*, 82 B.R. 688, 692 (Bankr. S.D.N.Y. 1988).

74. As set forth above, under the C-TC Factors, this filing of this case smacks of bad faith. This alone is a sufficient basis for relief under §362(d)(1).

75. In addition, cause exists to (i) effectuate the provisions of Bankruptcy Code §365, (ii) not grant the Debtor greater rights under the PSA than it would have under State Law, and (iii) not deprive Movant of its rights under the PSA and Escrow Agreement.

76. Simply, the Debtor cannot be permitted to change the terms of the PSA and Escrow Agreement. The Debtor cannot (i) retain the use of the Domain Name without paying the

Purchase Price on the schedule set forth in the PSA, and (ii) cannot obtain title and ownership of the Domain Name without paying the Purchase Price on the schedule set forth in the PSA.

77. The Debtor does not have title or ownership of the Domain Name and its right to continue using the Domain Name and obtain title and ownership of the Domain Name is contingent upon its performance of the clear and unambiguous terms of the PSA, including the payment in full of the Purchase Price.

78. As such, in the event that the PSA and Escrow Agreements (i) are assumed and there is a post assumption payment default according to the payment schedule in the PSA; or (ii) are rejected and there is a refusal to surrender the Domain Name, modification of the automatic stay for cause is necessary and appropriate to effectuate preserve the respective contractual rights and obligations of the parties under the PSA.

79. Absent such a modification, the Court would be rewriting the clear and unambiguous terms of the PSA and Escrow Agreement which would deprive Movant of its rights to the Domain Name and grant the Debtor a windfall.

80. Under these circumstances cause exists to modify the automatic stay in order to permit Movant to exercise its rights under the PSA and Escrow Agreement in order to recover the exclusive use and registration of the Domain Name.

**WHEREFORE,** Movant respectfully requests that this Court grant the Motion and enter an order in the form accompanying this motion (i) dismissing the Chapter 11 case or converting the Chapter 11 case to Chapter 7; (ii) compelling the Debtor or Chapter 7 Trustee to assume or reject the PSA and Escrow Agreement with Movant; (iii) modifying the automatic stay to permit Movant, upon a post assumption payment default under the PSA or upon the rejection of the PSA and Escrow Agreement, to exercise its rights and

remedies under the PSA and Escrow Agreement and State Law with respect to the

transfer of all ownership and use of the Domain Name back to Movant; and (iv) granting

Movant such other and further relief as the Court deems just and proper.

Dated: June 17 , 2019

**Teitelbaum Law Group LLC**

By:   /s Jay Teitelbaum_____
Attorneys for Stack's Bowers Numismatics,
LLC d/b/a Stack's Bowers Galleries
 1 Barker Avenue
 White Plains, New York 10610
 Tel. 914.437.7670
 E. Mail jteitelbaum@tblawllp.com