Teitelbaum Law Group LLC
Attorneys for Stack's-Bowers Numismatics, LLC
d/b/a Stack's Bowers Galleries                    Hearing Date: August 9, 2019
1 Barker Avenue                                    Hearing Time: 10:00 a.m.
White Plains, New York 10610
Tel. 914.437.7670
E. Mail jteitelbaum@tblawllp.com
Jay Teitelbaum, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------
In re:                                         :       Chapter 11
                                               :       Case No: 19-22721(RDD)
HAMPSTEAD GLOBAL, LLC,                         :
         Debtor                                :
-------------------------------------------------------

**REPLY IN SUPPORT OF MOTION FOR AN ORDER, (I) DISMISSING CHAPTER 11 CASE OR CONVERTING CHAPTER 11 CASE TO CHAPTER 7; (II) COMPELLING ASSUMPTION OR REJECTION OF EXECUTORY CONTRACT; AND (III) MODIFYING THE AUTOMATIC STAY TO PERMIT THE EXERCISE OF REMEDIES OF ASSUMED OR REJECTED CONTRACTS**

1.      Stack's-Bowers Numismatics, LLC, d/b/a Stack's Bowers Galleries ("**Movant**"), by its undersigned counsel Teitelbaum Law Group LLC, submits this reply (i) to the Debtor's Opposition dated August 2, 2019 (ECF Docket No. 24) (the "**Objection**") and the Declaration of Adam Perzow dated August 2, 2019 (ECF Docket No. 25) (the "**Perzow Decl.**"); and (ii) in further support of the motion by Movant filed as ECF Docket No. 15 (the "**Motion**") for an order (i) dismissing the Chapter 11 case or converting the Chapter 11 case to Chapter 7; (ii) compelling the Debtor or Chapter 7 Trustee to assume or reject the PSA[1] and Escrow Agreement; (iii) modifying the automatic stay to permit Movant, upon a post assumption payment default under the PSA or upon the rejection of the PSA and Escrow Agreement, to exercise its rights and remedies under the PSA and Escrow Agreement and State Law with

---

[1] Capitalized terms not otherwise defined herein are as defined in the Motion.

respect to the transfer of registration and use of the Domain Name back to Movant; and (iv) granting Movant such other and further relief as the Court deems just and proper.

2. The Objection and Perzow Decl. are legally and factually deficient and materially misleading.

3. Notwithstanding the Debtor's conclusory statements, this Chapter 11 Case is a two party dispute between the Debtor and Movant over a single asset - - the domain name, coins.com. (the "**Domain Name**"). Although the Debtor has scheduled two assets (the Domain Name and rarex.com) only the Domain Name has any value to the estate. Moreover, since forming more than 18 months ago, the Debtor has only debt with no operating business, no employees and no cash. The Debtor is trying to use this Court and the bankruptcy code as sword to force Movant to renegotiate the terms of the PSA to buy it more time to create something from nothing. The Debtor's opposition to the Motion rests on the sales pitch of Mr. Perzow and the assertion that Movant is motivated by "seller's remorse" and the opportunity for a windfall.

4. However, the Debtor has not provided a scintilla of proof as to its business model, its ability to pay creditors, or the value of the Domain Name. Moreover, to be crystal clear, the reason for the Motion is to collect the Purchase Price following the Debtor's breach of the PSA. Movant has no desire to renegotiate the PSA or retake the Domain Name. Movant simply wants to be paid the bargained for Purchase Price for the Domain Name and be done with Mr. Perzow. The alternative forms of relief requested in the Motion are appropriate to enforce the PSA.[2]

5. Although the Debtor acknowledged that Movant's claim under the PSA is the only reason this Chapter 11 case was filed, the Debtor contends that there are multiple claims

---

[2] At ¶28 of the Objection, the Debtor incorrectly alleges that Movant "argues for dismissal not conversion". This is wrong. The Motion seeks assumption or rejection of the PSA and either dismissal or conversion of the case. Movant seeks only to recover the Domain Name or the Purchase Price set forth in the PSA. As set forth in the Motion and below, as this case was filed in bad faith and is nothing more than a two party dispute, Movant asserts that dismissal is the more appropriate remedy.

2

and assets to be administered and that this is not a two party dispute. These assertions are belied by the Debtor's filings.

6.  The Debtor's Schedule E/F lists unsecured claims of $1,748,007.75, held by 17 parties. Movant's scheduled claim is $1.3 million.[3] Insider claims aggregate $435,000 with Josh Perzow (Mr. Perzow's brother) at $180,000; Barbara Etinson (Mr. Perzow's mother) at $150,000; and (iii) Ari Gati (upon information and belief an insider) at $105,000. That leaves 14 parties holding an aggregate of $13,007 in unsecured claims ranging from $5,750.00 to $10.00. As of August 6, 2019, not a single party in interest, other than Movant, has filed an appearance or a claim in this case. It is beyond dispute that the sole purpose of this case is for the benefit of Mr. Perzow to retain the Domain Name by renegotiating the PSA.

7.  Similarly, the assertion that the Domain Name is not the only asset to be administered by the Court is misleading at best. The Debtor's Schedule A identifies the Domain Name and rarex.com as the Debtor's assets with a combined value of $5 million. However, Mr. Perzow testified at the 341 meeting that the majority of the value is attributable to the Domain Name and that the Debtors purchased rarex.com from Mr. Gati in December 2018 for $15,000.00 (341 Meeting Recording @ 18 minutes 20 through 51 seconds). The Debtor's Schedule D identifies Latin Lending Group as a secured creditor with an alleged claim in the amount of $20,000 secured by rarex.com. The scheduled value of rarex.com is One Thousand Five Hundred Dollars ($1,500.00). It strains credulity to argue that rarex.com has any value to this estate or any relevance to the administration of this bankruptcy case.

8.  There is more than ample evidence to support the conclusion that this case is nothing more than a two party breach of contract dispute involving a single asset and that the

---

[3] As set forth in the Motion, Movant has filed a claim in the principal amount of $1.4 Million.

Debtor, in bad faith, has misrepresented or failed to disclose material facts relevant to the administration of this case.

9. At the 341 meeting Mr. Perzow testified under examination by the Assistant United States Trustee and counsel for Movant:

a. That the Debtor was formed in February 2018; (341 Meeting Recording @ 17 minutes 43 seconds);

b. That he is the sole member of the Debtor (341 Meeting Recording @ 1 minute 45 seconds);

c. That, at the time of formation, the Debtor received $180,000 from his brother, Josh Perzow, and $150,000 from his mother, Barbara Etinson (341 Meeting Recording @ 28 minutes 20 seconds through 29 minutes 40 seconds);

d. That the $330,000 from his family was allegedly received as loans, but not evidenced by any documents or promissory note and were to be repaid "whenever I pay it back, there is no maturity date" *Id;*

e. That Debtor never launched its business, has no employees, no operations and no revenue (341 Meeting Recording @ 11 minutes 59 seconds, and 23 minutes and 40 seconds through 24 minutes 40 seconds);

f. That rarex.com was purchased from Mr. Gati in December 2018 for $15,000 (341 Meeting Recording @ 18 min. 51 seconds);

g. That the scheduled $105,000 unsecured claim to Mr. Gati is for services provided by Mr. Gati who was responsible for the "coins.com strategy for the past year" (341 Meeting Recording @ 12 minutes 30 seconds) and for developing the

4

strategy to monetize rarex.com (341 Meeting Recording @ 14 min 45 seconds through 15 minutes 31 seconds);

h. That the scheduled value of coins.com and rareex.com of $5 million was not allocated between the two names, but the majority of it was attributable to coins.com (341 Meeting Recording @ 18 min 20 seconds through 18 minutes 50 seconds); no evidence was offered as to how he arrived at those values.

10. The Debtor's Official Form 204 includes the alleged obligations to Mr. Perzow's mother and brother despite the fact that Official Form 204 specifically provides that claims by any person or entity who is an insider as defined in 11 U.S.C. §101(31) are not to be included. In pertinent part, 101(31)(B) lists as insiders: directors, officers, and persons in control of the debtor and relatives of a director, officer or person in control of the debtor. Nowhere in any filing does the Debtor disclose the familial relationship of Josh Perzow and Barbara Etinson. That information had to be extracted from Mr. Perzow upon examination at the 341 Meeting.

11. As a matter of law, Josh Perzow and Barbara Etinson are insiders and the Form 204 filed by the Debtor is false and misleading. Moreover, the characterization of the obligations to these family members as loans as opposed to equity investments is suspect at best. There is no document evidencing any loan and Mr. Perzow admits that the funds are to be repaid "whenever he can". Neither Mr. Perzow nor Ms Etinson have appeared in the case or filed a claim. These family obligations, to the extent they exist, are subject to recharacterization as equity investments and should not be considered claims for purposes of the Motion. The Debtors schedules are misleading regarding these claims.

12. Similarly, the Debtor has not been forthcoming about multiple roles and relationships of Mr. Gati with the Debtor and Latin Lending. Based upon the schedules and Mr.

5

Perzow's testimony, we know that Mr. Gati, Latin Lending and Julie Aaron ($325.00 unsecured claim) share the same residential address at 2811 Colorado Avenue Apt 1. Santa Monica Ca. 90404[4]; that Mr. Gati allegedly sold rarex.com to the Debtor for $15,000.00; and that Mr. Gati's alleged $105,000 unsecured claim is allegedly for services rendered to develop rarex.com and the Domain Name. What we do not know is (i) whether Mr. Gati is a principal of Latin Lending and whether Mr. Perzow or any other insider is a principal of Latin Lending; (ii) whether Mr. Gati, a professional "angel investor"[5] has retained any upside equity stake in rarex.com or the Domain Name or the Debtor's commercialization of those names; (iii) since the debtor has no employees, in what capacity Mr. Gati provided services and whether he has any direct or indirect ownership stake in or control over the Debtor or any assets of the Debtor; and (iv) whether the Debtor's alleged Santa Monica office is in fact Mr. Gati's residence.[6]

13.    The so called "Sedo Valuation" and "Offer to Purchase" attached to the Perzow Decl. are further evidence of the Debtor's bad faith tactics. These documents are offered for the truth of the alleged value of the Domain Name to support the Debtor's seller's remorse argument and promise of payment in full in the future. However, neither document is admissible, relevant or probative. As noted above, at the 341 meeting, Mr. Perzow offered no evidence of the scheduled values of the Domain Name or rarex.com, but conveniently provides emails purportedly reflecting value in opposition to the Motion. These two emails from non-parties are inadmissible hearsay and should be disregarded by the Court. To the extent that the Court should consider the emails, they contain no indicia of reliability and should be given no

---

[4] Based upon Ms. Aaron's and Mr. Gati's social media websites, it appears that Ms. Aaron and Mr. Gati are engaged or married.

[5] On Mr. Gati's linkedin page he describes himself as "an active real estate and angel investor". Typically, angel investors advise their start ups and take equity stakes via convertible debt or other mechanisms.

[6] Mr. Perzow's 1007-2 Affidavit (ECF Docket No. 3) at ¶2 alleges that the Debtor has an address in Santa Monica California, but no address is scheduled in any filings. The only Santa Monica address in filings with this Court is that of Mr. Gati, Latin Lending and Ms. Aaron.

weight. The so called Sedo Valuation is a sales pitch by a broker seeking an opportunity to be engaged to sell the Domain Name. No proof of the qualifications of the broker as a valuation expert are offered. Even if the broker could qualify as an expert on valuation, the statement in the email are not proof of value. There is no analysis of how the range of value was derived and there is no opinion of value. Rather, the broker hedges every statement of value with "perhaps", "good chance" and "could be" and acknowledges that there may be "only one (possibly none)" interested buyer. Similarly, the so called Offer to Purchase is now nearly a year old and there is no indication it represents the author's current position. In fact, it does not even purport to be an offer to purchase; rather the email states that it is simply "our thoughts . . . on a structure. . . ."

14. The "Sedo Valuation" and "Offer to Purchase" are proof of nothing other than the Debtor's attempts to misdirect and mislead parties in interest and the Court. As noted earlier, regardless of the value of the Domain Name, Movant simply wants to be paid the Purchase Price under the PSA.

15. It is further submitted that Debtor's purported claims of value of at least $5 million are belied by the fact that the Debtor failed to pay Movant the second installment of $200,000 under the PSA and the Debtor cannot or will not pay the balance of the Purchase Price which is a small fraction of the alleged value.

16. The Debtor cannot, in equity and fairness, be permitted to exploit the bankruptcy process and the benefits of the PSA without incurring the obligations thereunder, including full financial disclosure and filing operating reports[7]. The Debtor cannot continue to try to use and/or market the Domain Name without providing Movant with the benefits of its bargain under the PSA. The Debtor cannot use this Court to renegotiate the PSA.

---

[7] No operating reports have been filed in this case.

17. As set forth in the Motion, virtually all of the C-TC Factors of bad faith are present and dismissal or conversion is appropriate.

18. In the alternative to dismissal or conversion, the evidence supports the conclusion that the PSA is an executory contract which must be cured and assumed or rejected. As set forth in the Motion, there are material obligations on both sides of the PSA, the failure of which would result in an Event of Default as defined in the PSA.

19. The Debtor argues that the PSA is not an executory contract. The Debtor contends that (i) Movant had no ongoing obligations; (ii) a executory contract cannot be based on unperformed negative covenants; (iii) an executory contract requires unperformed material obligations, which are obligations, the breach of which, triggers a right to terminate the contract; and (iv) Movant could not terminate the PSA for a breach of the negative covenants and therefore they are not material obligations.

20. Movant does not accept Debtor's arguments. Movant asserts that the law in this Circuit is that an executory contract "is one on which performance remains due to some extent on both sides." *In re Penn Traffic Co.*, 524 F.3d 373, 378, 379 (2d Cir. 2008); *In re Lyondell Chem. Co.*, 2014 U.S. Dist. LEXIS 32899 at *11 (S.D. N.Y. 2014). Most courts have not imposed the material obligation standard. However, even assuming *arguendo* that this Court were to assess the PSA by whether the unperformed obligations are material obligations; the Debtor's arguments that negative covenants cannot qualify as unperformed material obligations only obligations which give rise to a termination right are material obligations are not supported by the law and the Court would determine that the unperformed obligations under the PSA are material and that the PSA is an executory contract.

21. The determination of whether an obligation is material, *i.e.* the breach of which constitutes a material breach of the agreement, is governed by state law. Under New York law, a material breach is "one which would justify the other party to suspend his own performance, or a breach which is so substantial as to defeat the purpose of the entire transaction." *In Re Bradlees Stores,* 2001 U.S. Dist. LEXIS 14755 at *24 (S.D.N.Y. 2001). A right to terminate a contract for breach of an obligation is not the only basis to determine that the obligation is material.

22. Moreover, negative covenants can be material obligations. The cases cited by the Debtor for the proposition that a negative covenant is not a material obligation are inapposite. In *In re Schneeweiss,* 233 B.R. 28 (Bankr. N.D.N.Y. 1999), a Chapter 7 case, the court was asked to determine whether post petition payments due pursuant to the terms of a pre-petition personal service non-compete agreement were property of the estate. The court held that such payments do not constitute payments for services performed post petition because no services were being performed post petition. To the contrary, the court held that the payments were rooted in the debtor's pre bankruptcy affairs and therefore were property of the estate. In dicta, the court noted that such personal service covenants are not material obligations for purposes of an executory contract analysis because compliance with such covenants does not deprive the parties of the substantial benefits of their bargain. Similarly, in *In re Hirschhorn,* 156 B.R. 379 (Bankr. E.D.N.Y. 1993), a landlord sought to enforce a personal service non-compete provision which was ancillary to a sub-lease. The covenant prevented a doctor from practicing within a 6 block radius of the subject property for two years following termination of the sub-lease. The debtor was the doctor. The landlord filed an adversary proceeding to enforce the non-compete covenant. The debtor argued that the clause was not enforceable. The court first determined that the non-compete clause was enforceable under New York. Following the debtor's rejection of the sub-

lease during the bankruptcy, the court held that the lease was deemed breached, not terminated, and that following the rejection of the sub-lease and the vacatur of the premises, the parties reaped all of the benefits of the agreement. The court held further that the non-compete clause standing alone was not an executory contract as there were no mutual obligations.

23. In contrast, in this case, there are no personal service covenants, the PSA has not been rejected or terminated and neither party has received the benefits of the PSA. The negative covenants at issue were bargained for by the parties to protect the value of the Domain Name so that each party could receive the benefit of its bargain. (341 Meeting Record @ 30 minutes 57 seconds through 31 minutes 23 seconds). The covenants prevent against actions by either party which could encumber or damage the value of the Domain Name so that Movant could realize the full value of the Domain Name upon an Event of Default by the Debtor and the Debtor could realize the full value of the Domain Name upon payment of the Purchase.

24. These covenants remain unperformed until the Purchase Price is paid in full and title or ownership of the Domain Name passes to the Purchaser or there is a default and registration and use of the Domain Name is transferred to Movant. (PSA §§3, 5 and 7(iii)); and (iv)).

25. Movant has not been paid the Purchase Price and ownership and title to the Domain Name has not been transferred to the Debtor. The Debtor has only the limited right to use and exploit the Domain Name in accordance with the PSA. The negative covenants which the parties must continue to abide by are material to the continued performance under the PSA to ensure that each party receives the benefit of its bargain. Even assuming *arguendo* that the Debtor's breach of the use covenants does not trigger an immediate right to terminate the PSA[8],

---

[8] Movant does not accept the Debtor's interpretation of ¶12 of the PSA, but assumes it for the purposes of this Motion.

10

that breach gives Movant the right to prevent the prohibited actions and to prevent the Debtor from continuing to use the Domain Name until the breach is cured. The Debtor's continued use of the Domain Name is indisputably a material bargained for benefit under the PSA. Upon an Event of Default Movant has the right to cause the Domain Name to be re-registered to it so that Movant can use or resell the Domain Name. Protection against actions by the Debtor which would impair the value of the Domain Name under such circumstances is a material bargained for benefit under the PSA. Similarly, the Debtor has bargained for protections against Movant taking any action which could impair its right to use the Domain Name consistent with the PSA until the Purchase Price is paid. The negative covenants ensure that the parties get the benefit of their bargain and are therefore material.

26. The Debtor is impermissibly attempting to use this Court to rewrite the PSA and Escrow Agreement for the sole benefit of the Debtor. As set forth in the Motion, such a use of the bankruptcy process as a sword was most recently rejected by the Supreme Court in *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, No. 17–1657, 203 L. Ed. 2d 876, 587 U.S. ___, ___ S. Ct. ___, 2019 WL 2166392, at *9 (U.S. May 20, 2019). The Debtor is stuck with the PSA and Escrow Agreement as written and the bundle of rights and obligations which go along with those agreements. *Walgreen Co. v. NXXI, Inc.*, 2014 Bankr. LEXIS 2853 (Bankr. S.D.N.Y. 2014) (court is powerless to rewrite the clear and unambiguous terms of a voluntary contract).

27. The PSA is an executory contract with mutual material mutual obligations outstanding. Pursuant to Bankruptcy Code §365(d)(2), cause exists to compel a decision whether to assume and perform the PSA and Escrow Contracts or to reject them.

28.    Finally, the Debtor has failed to meet its burden under 362(g). Debtor's has offered no proof of value of the Domain Name. Debtor has offered no proof of equity in the Domain Name. Debtor admits that it has no income and no ability to make any adequate protection payments for the continued use of the Domain Name. Debtor has not refuted the C-TC Factors which demonstrate that the filing was made in bad faith.

29.    As such, in the event that the PSA and Escrow Agreements (i) are assumed and there is a post assumption payment default according to the payment schedule in the PSA; or (ii) are rejected and there is a refusal to surrender the Domain Name, modification of the automatic stay for cause is necessary and appropriate to effectuate preserve the respective contractual rights and obligations of the parties under the PSA.

**WHEREFORE,** Movant respectfully requests that this Court grant the Motion and enter an order in the form accompanying this motion (i) dismissing the Chapter 11 case or converting the Chapter 11 case to Chapter 7; (ii) compelling the Debtor or Chapter 7 Trustee to assume or reject the PSA and Escrow Agreement with Movant; (iii) modifying the automatic stay to permit Movant, upon a post assumption payment default under the PSA or upon the rejection of the PSA and Escrow Agreement, to exercise its rights and remedies under the PSA and Escrow Agreement and State Law with respect to the transfer of registration and use of the Domain Name back to Movant; and (iv) granting Movant such other and further relief as the Court deems just and proper.

Dated: August 6, 2019

                                              **Teitelbaum Law Group LLC**

                                              By:  /s Jay Teitelbaum
                                           Attorneys for Stack's Bowers Numismatics,
                                           LLC d/b/a Stack's Bowers Galleries
                                            1 Barker Avenue
                                            White Plains, New York 10610
                                            Tel. 914.437.7670
                                            E. Mail jteitelbaum@tblawllp.com