UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
In re:

|  |  |
|---|---|
|  | Chapter 11 |
| HAMPSTEAD GLOBAL, LLC, | Case No. 19-22721 (RDD) |

Debtor.

---------------------------------------------------------------X

## DEBTOR'S PLAN OF REORGANIZATION UNDER
## CHAPTER 11 OF THE BANKRUPTCY CODE

Hampstead Global, LLC, the above captioned debtor and debtor-in-possession (the "Debtor"), hereby proposes the following Plan of Reorganization pursuant to the provisions of Chapter 11 of the Bankruptcy Code.

## ARTICLE I
## DEFINITIONS

For the purposes of the Plan, the following terms shall have the respective meanings set forth below (such meanings to be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires):

1.1    *"Administrative Expense Claims"* shall mean a claim for any cost or expense of administration in connection with the Chapter 11 Case allowed under Section 503(b) of the Bankruptcy Code and entitled to priority under Section 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual, necessary costs and expenses of preserving the Debtor's estate and of operating the business of the Debtor, all allowances of compensation for legal or other professional services or reimbursement of costs and expenses under Sections 330, 331 and 503 of the Bankruptcy Code or otherwise allowed by the Court.

1.2     *"Administrative Professional Fee Claim"* shall mean any claim of a professional retained under the Bankruptcy Code subject to allowance under 11 U.S.C. §§ 328, 330 or an order of the Bankruptcy Court.

1.3     *"Allowed"* shall mean, whenever in the Plan the word "Allowed" precedes a defined term describing a Claim, that such Claim is an Allowed Claim of the type described.

1.4     *"Allowed Claim"* shall mean any Claim or portion of a Claim (a) which has been scheduled pursuant to Section 521(1) of the Bankruptcy Code, other than a Claim scheduled by the Debtor as contingent, unliquidated or disputed; or (b) proof of which has been filed pursuant to Section 501(a) of the Bankruptcy Code on or before the Bar Date, and as to which no objection to the allowance thereof has been interposed within the period of time fixed by the Bankruptcy Code, Bankruptcy Rules or an order of the Bankruptcy Court, or (c) as to which any objection has been determined by a Final Order of the Bankruptcy Court allowing such claim or any portion thereof.

1.5     *"Auction Date"* shall be six (6) months and five (5) Business Days following the Outside Payment Date.

1.6     *"Avoidance Actions"* shall mean any cause of action assertable under Sections 510, 542, 543, 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code or state law if made applicable under such Bankruptcy Code sections.

1.7     *"Ballot"* shall mean the form transmitted to creditors with the Plan and Disclosure Statement, on which they may vote to accept or reject the Plan pursuant to Bankruptcy Rule 3018 and Section 1126 of the Bankruptcy Code.

1.8     *"Bankruptcy Code"* shall mean Title 11 U.S.C. Sections 101 et seq., in effect on the Petition Date.

1.9     *"Bankruptcy Court"* shall mean the United States Bankruptcy Court for the Southern District of New York, and any court having jurisdiction to hear appeals therefrom.

1.10    *"Bankruptcy Rule(s)"* shall mean the Federal Rules of Bankruptcy Procedure as applicable to a case under the Bankruptcy Code and the Local Rules of the Bankruptcy Court, together with all amendments and modifications made from time to time thereto.

1.11    *"Bar Date"* shall mean the date that shall be fixed by Order of the Bankruptcy Court by which Proofs of Claim of various categories must be filed against the Debtor.

1.12    *"Broker"* shall mean Sedo or such other comparable domain name broker, as approved by Steven Lieberman, Esq., the trustee/ escrow agent.

1.13    *"Business Day"* shall mean any day other than a Saturday or Sunday or legal holiday as such term is defined in Bankruptcy Rule 9006.

1.14    *"Cash"* shall mean legal tender of the United States of America or Cash equivalents.

1.15    *"Chapter 11 Case"* shall mean the above-captioned case commenced by the filing of voluntary petition by Hampstead Global, LLC seeking relief under Chapter 11 of the Bankruptcy Code with the Bankruptcy Court on the Petition Date.

1.16    *"Claim"* shall mean a claim as defined in Section 101(5) of the Bankruptcy Code, including, without limitation, Claims arising under Section 502 of the Bankruptcy Code.

1.17    *"Claimant"* shall mean those Persons holding a Claim in the Chapter 11 Case.

1.18    *"Class"* shall mean a class of Holders of Claims or Equity Interests (as defined herein) described in Articles II and III of the Plan.

1.19    *"Closing Date"* shall mean give (5) Business Days after the Auction Date.

1.20    *"Confirmation"* shall mean the entry of the Confirmation Order.

1.21    *"Confirmation Date"* shall mean the date upon which the Confirmation Order is entered by the Bankruptcy Court.

1.22    *"Confirmation Hearing"* shall mean the hearing held by the Court, following notice, to determine whether or not to enter a Confirmation Order.

1.23    *"Confirmation Order"* shall mean the order of the Bankruptcy Court pursuant to Section 1129 of the Bankruptcy Code confirming the Plan.

1.24    *"Creditor"* shall mean: (i) a Person that has a Claim against the Debtor that arose at the time of or before the Petition Date concerning the Debtor; or (ii) a Person that has a Claim against the Debtor's estate of the kind specified in Sections 348(d), 502(f), 502(g), 502(h) or 502(i) of the Bankruptcy Code.

1.25    *"Debtor"* shall mean Hampstead Global, LLC.

1.26    *"Disbursing Agent"* shall mean the party that shall open and maintain a separate interest-bearing bank account in which all Cash received for purposes of distribution shall be deposited in accordance with Section 345 of the Bankruptcy Code and shall distribute payment under the Plan, which Disbursing Agent shall be Kirby Aisner & Curley, LLP.

1.27    *"Disclosure Statement"* shall mean the Debtor's Disclosure Statement which shall be filed, describing this Plan, as amended, supplemented, or modified from time to time, prepared and distributed in accordance with sections 1125 and 1126(b) of the Bankruptcy Code and Bankruptcy Rule 3018.

1.28    *"Disputed Claim"* shall mean any Claim (other than an Allowed Claim) (i) which is Scheduled pursuant to the Bankruptcy Code as disputed, contingent or unliquidated, or (ii) proof of which has been filed with the Bankruptcy Court and an objection to the allowance has been or is interposed within the period of time limitation fixed by the Bankruptcy Code, the

Bankruptcy Rules or an order of the Bankruptcy Court for the filing of such objections, and as to which such objection has not been determined by a Final Order of the Bankruptcy Court.

1.29    *"Disputed Claims Reserve"* shall have the meaning set forth in Section 5.4 of the Plan.

1.30    *"Distribution Date"* shall mean any date on which a distribution under the Plan is to be made to the Holders of Allowed Claims.

1.31    *"Effective Date"* shall mean the date which is fourteen (14) days after the date the Confirmation Order becomes a Final Order.

1.32    *"Equity Interest"* shall mean any equity interest in the Debtor represented by, related to, or arising from stock or other equity securities of the Debtor.

1.33    *"Executory Contract"* shall mean any of the contracts and unexpired leases to which any of the Debtor is a party or was a party as of the Petition Date and which is executory within the meaning of Section 365 of the Bankruptcy Code.

1.34    *"Final Order"* shall mean a Bankruptcy Court order or judgment which has not been reversed, stayed, modified, or amended and (i) as to which the time to appeal or seek review, rehearing, or certiorari has expired and as to which no appeal, petition for review, rehearing, or certiorari is pending or (ii) as to which any right to appeal or seek review, rehearing, or certiorari has been waived or (iii) which has been appealed, has been affirmed on appeal and as to which affirmation the time for further appeal has expired; *provided, however,* that no order or judgment shall be deemed not to be a Final Order solely because such order or judgment is subject to the filing of a motion for reconsideration pursuant to Section 502(e)(2) of the Bankruptcy Code or Bankruptcy Rules 3008 or 9024 or Rule 60 of the Federal Rules of Civil Procedure.

1.35    *"General Unsecured Claim"* shall mean any Claim that is not an Administrative Claim, Administrative Professional Fee Claim, Priority Tax Claim, Secured Claim or Other Secured Claim that arose prior to the filing of the Chapter 11 Case and includes, without limitation, Claims based upon pre-Petition Date trade accounts payable or a Claim based upon the rejection of an Executory Contract during pendency of the Chapter 11 Case.

1.36    *"Governmental Unit"* shall mean a governmental unit as such term is defined in Section 101(27) of the Bankruptcy Code.

1.37    *"Greenberg Firm"* shall mean Greenberg & Lieberman, LLC.

1.38    *"Holder"* means the Person holding the beneficial interest in a Claim or Equity Interest.

1.39    *"Impaired"* shall mean Impaired within the meaning of Section 1124 of the Bankruptcy Code.

1.40    *"Non-Tax Priority Claim"* shall mean any claim against the Debtor to the extent entitled to priority in payment under section 507(a)(4)-(6) of the Bankruptcy Code.

1.41    *"Other Secured Claim"* shall mean the Claim of an equipment lender whose Claim is secured by a lien on property in which the Debtor has an interest, which lien is valid, perfected and enforceable under applicable law, to the extent of the value of the Holder's interest in the Debtor's interest in such property, as determined by Section 506 of the Bankruptcy Code.

1.42    *"Outside Payment Date"* shall mean twelve (12) months from the Effective Date, after which time the Debtor shall be required to submit to the Sale Process.

1.43    *"Person"* shall mean any individual, corporation, partnership, association, indenture trustee, organization, stock company, venture, estate, trust, Governmental Unit or any political subdivision thereof, Equity Interest Holder, retirees, or any other entity.

1.44    *"Perzow"* shall mean Adam Perzow, the Debtor's principal and sole member.

1.45    *"Petition Date"* shall mean March 30, 2019.

1.46    *"Plan"* shall mean this Plan of Reorganization under Chapter 11 of the Bankruptcy Code, as it may be amended, supplemented, or modified in accordance with the terms hereof from time to time.

1.47    *"Plan Funder"* shall mean Adam Perzow.

1.48    *"Priority Tax Claim"* shall mean a Claim against the Debtor to the extent entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

1.49    *"Professionals"* shall mean those Persons: (a) retained by the Debtor pursuant to an order of the Bankruptcy Court in accordance with Sections 327 and 1103 of the Bankruptcy Code providing for compensation for services rendered prior to the Effective Date pursuant to Section 327, 328, 329, 330 and 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Section 503(b)(2) and (4) of the Bankruptcy Code.

1.50    *"Proof of Claim"* shall mean proof of claim within the meaning of Rule 3001 of the Bankruptcy Rules.

1.51    *"Pro Rata"* shall mean proportionally according to the total amount of Allowed Claims or Allowed Equity Interests in a particular Class.

1.52    *"Reorganized Debtor"* shall mean Hampstead Global, LLC after the Effective Date.

1.53    *"Sale Process"* shall be the agreed procedures set forth in Section 4.2 of this Plan, pursuant to which the Debtor is obligated to liquidate the *coins.com* domain name in the event

that it is unable to satisfy the distribution obligations under this Plan by the Outside Payment Date.

1.54    *"Secured Claim"* shall mean an Allowed Claim secured by a valid, properly perfected and enforceable mortgage, security interest and/or lien on property and assets owned by the Debtor, to the extent of the value of such Creditor's interest in the particular Debtor's estate's interest in such property.

1.55    *"Scheduled"* shall mean as set forth in the Schedules.

1.56    *"Schedules"* shall mean the Schedules of Assets and Liabilities and Statement of Financial Affairs filed by the Debtor, as they may be amended from time to time.

1.57    *"Stacks"* shall mean Stack's-Bowers Numismatics, LLC.

## ARTICLE II
### DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

All Claims, as defined herein and in Section 101(5) of the Bankruptcy Code against the Debtor, of whatever nature, whether or not Scheduled or liquidated, absolute or contingent, and all Equity Interests in the Debtor, whether resulting in an Allowed Claim or an Allowed Equity Interest or not, shall be bound by the provisions of the Plan and are hereby classified as follows:

2.1    <u>Classification of Claims</u>. Section 2.2 sets forth the designation of the Classes of Claims and Equity Interests. A Claim or Equity Interest is classified in a particular Class for voting and distribution purposes only to the extent that the Claim or Equity Interest qualifies within the description of the Class and is classified in a different Class or Classes to the extent any remainder of the Claim or Equity Interest qualifies within the description of that different Class or Classes. Unless otherwise provided, to the extent a Claim or Equity Interest qualifies for inclusion in a more specifically defined Class than a more generally defined Class, it shall be included in the more specifically defined Class. Each of the following sections of this Article II

provides explanations of the different Claim classifications. Administrative Expense Claims, Administrative Professional Fee Claims, United States Trustee fees payable under 28 U.S.C. Section 1930, and Priority Tax Claims have not been classified and are excluded from the Classes set forth in Section 3.2 in accordance with Section 1123(a)(1) of the Bankruptcy Code. The treatment to be provided for Allowed Claims or Equity Interests pursuant to this Plan and the consideration provided for herein shall be in full and final satisfaction, settlement, release and discharge of such respective Claims or Equity Interests.

2.2    <u>Classes</u>. For purposes of the Plan, those persons holding Claims against, or Equity Interests in, any of the Debtor are grouped in accordance with Section 1122 of the Bankruptcy Code as follows:

<u>Class 1</u> - shall consist of the Allowed Secured Claim of the Greenberg Firm.

<u>Class 2</u> - shall consist of the Allowed Secured Claim of Latin Lending Group.

<u>Class 3</u> - shall consist of the Holders of Non-Tax Priority Claims.

<u>Class 4</u> - shall consist of all other Allowed General Unsecured Claims.

<u>Class 5</u> - shall consist of the Allowed Equity Interest in the Debtor.

## <u>ARTICLE III</u>
## TREATMENT OF CLAIMS AND CLASSES UNDER THE PLAN

3.1  <u>Unclassified Claims</u>:

(a)    <u>Administrative Expense Claims</u>: Administrative Expense Claims include the actual and necessary costs and expenses incurred during the Chapter 11 Case, excluding the Professionals fee and expense Claims. Under the Plan, all Allowed Administrative Expense Claims incurred during the Chapter 11 Case shall be paid in full, in Cash, in such amounts as (i) are incurred in the ordinary course of business by the Debtor and personally guaranteed by Perzow; (ii) are Allowed by the Bankruptcy Court upon the later of the Effective Date, the date

upon which there is a Final Order allowing such Administrative Expense Claim or any other date specified in such Order; or (iii) may be agreed upon between the Holder of such Administrative Expense Claim and the Debtor.

(b)     Administrative Professionals Claims: All awards or allowances by the Bankruptcy Court of Professionals fees and expenses, or of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under Sections 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code, if granted, shall be paid in full in such amounts as allowed by the Bankruptcy Court (i) on the later of the Effective Date or the date such Professionals Claim becomes Allowed; or (ii) upon such other terms as may be mutually agreed upon between such Holder of an Allowed Professionals Claim and the Debtor or, on and after the Effective Date, the Reorganized Debtor. All Professionals' fees and expenses for services rendered in connection with this Chapter 11 Case and the Plan after the Confirmation Date, including, without limitation, those relating to the occurrence of the Effective Date and the resolution of Disputed Claims, shall be billed to the Reorganized Debtor, and paid by the Reorganized Debtor in the ordinary course, without the need for further Bankruptcy Court authorization or entry of a Final Order. If the Professionals cannot agree on the amount of post-Confirmation Date fees and expenses to be paid to such Professionals, such amount shall be determined by the Bankruptcy Court. The payment of the Debtor's Administrative Professional Claims has been personally guaranteed by Cary Perzow, the father of the Debtor's principal.

(c)     United States Trustee's Fees: Under the Plan, all United States Trustee statutory fees arising under 28 U.S.C. § 1930(a)(6) and 31 U.S.C. § 3717 shall be paid in full, in Cash, in such amount as they are incurred in the ordinary course of business by the Debtor or

Reorganized Debtor, as applicable. The Debtor or Reorganized Debtor shall be responsible, through the entry of a final decree closing the case for the payment of United States Trustee quarterly fees, and pursuant to 31 U.S.C. § 3717, any interest assessed on unpaid Chapter 11 quarterly fees charged, assessed at the interest rate in effect as determined by the Treasury Department at the date the charges become past due; however, if payment of the full principal amount is received within thirty (30) days of the date of the notice of initial interest assessment, the interest assessed will be waived.

(d)    <u>Allowed Priority Tax Claims</u>: The Holders of Allowed Priority Tax Claims pursuant to Section 507(a)(8) of the Bankruptcy Code, if any, shall be paid in full, in Cash, on the Effective Date.

3.2  <u>Classified Claims</u>

(a) <u>Class 1:</u> Class 1 consists of the Holder of the Allowed Secured Claim of the Greenberg Firm. The Holder of the Class 1 Allowed Secured Claim of the Greenberg Firm shall be paid in full upon release of the asset the Greenberg Firm is holding in escrow. The term of the underlying escrow agreement shall be extended such that Greenberg Firm shall continue to hold the *coins.com* domain name in escrow until such time as the Allowed Class 4 Claims are paid in full in accordance with this Plan. The Class 1 Claim is impaired under the Plan and the Holder is therefore entitled to vote on the Plan

(b) <u>Class 2:</u> Class 2 consists of the Holder of the Allowed Claim of Latin Lending Group. The Holder of the Class 2 Allowed Secured Claim shall be paid in full on or before the Closing Date. The Class 2 Claims are impaired under the Plan and the Holder is therefore entitled to vote on the Plan.

(c) <u>Class 3</u>: Class 3 consists of Holders of Allowed Non-Tax Priority Claims. The Debtor

shall pay to Holders of Class 3 Non-Tax Priority Claims the amount of their Allowed Claim in full and in Cash, on the Effective Date, in full and final satisfaction of its Claims as against the Debtor. Class 3 Claims are unimpaired under the Plan. The Holders are therefore not entitled to vote on the Plan and are deemed to accept the Plan.

(d) <u>Class 4:</u> Class 4 consists of the Holders of the Allowed General Unsecured Claims. The Holders of the Class 4 Claims shall be paid in full on or before the Outside Payment Date. Pending payment in full, Stacks shall receive quarterly payments of interest at 4.00% per annum, on such portions that are due and payable under the underlying Purchase and Sale Agreement between the Debtor and Stacks. In the event the Debtor is unable to remit balance due on the Class 4 Claim by the Outside Payment Date, the Sale Process shall be commenced, as set forth in Section 4.2 of this Plan, with the proceeds of the Sale Process used to pay the balance due on the Allowed Class 4 Claims in full, with interest. For the avoidance of doubt, the Holders of Class 4 Claims shall be paid interest until such date as their Allowed Class 4 Claim is paid in full hereunder. The Class 4 Claims are impaired under the Plan and therefore the Holders are entitled to vote on the Plan.

(e)     <u>Class 5</u>: Class 5 consists of the Holder of Equity Interest in the Debtor. The Class 5 Equity Interest Holder shall retain his Equity Interest in the Debtor. The Class 5 Equity Interest Holder is unimpaired and is therefore deemed to accept the Plan.

3.3     <u>Acceptance by Impaired Classes of Claims</u>. Classes 1, 2, and 4 shall have accepted the Plan if (i) the Holders (other than any Holder designated under Section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such class have voted to accept the Plan and (ii) more than one-half in number of the Holders (other than any Holder designated under Section 1126(c) of the Bankruptcy Code) of such

Allowed Claims actually voting in such Class have voted to accept the Plan.

3.4     Presumed Acceptance of the Plan. Class 3 is deemed unimpaired under the Plan, and therefore, are deemed to accept the Plan under Section 1126(f) of the Bankruptcy Code.

3.5     Cramdown. Confirmation of Plan Under Section 1129(b) of the Bankruptcy Code. The Debtor intends to seek confirmation of this Plan under the "cram down" provisions of Section 1129(b) of the Bankruptcy Code in the event that any Class of Impaired Creditors votes to reject this Plan.

3.6     Full and Final Satisfaction. Performance of all of the obligations hereunder shall be in full and final satisfaction, settlement, release and discharge of all Claims against and Equity Interests in the Debtor.

ARTICLE IV
PLAN IMPLEMENTATION

4.1     Means for Implementation. The Debtor proposes to fund the Plan from a capital infusion from the Perzow, individually, in the amount necessary to fund interest payments to all creditors through the Outside Payment Date, which shall be deposited with the Disbursing Agent prior to the Confirmation Hearing. The balance of the funds necessary for the distributions under the Plan shall either come from capital raised by the Debtor in connection with the launch of its business or from the sale of the Debtor's assets in accordance with this Plan.

4.2     Marketing and Sale Process

4.2(a)  If the Debtor is unable to make the balance of the distributions due under Section 3.2(d) by the Outside Date, the Debtor shall engage the Broker to market and sell the *coins.com* domain name for the highest and best price. In the event that the Debtor elects to retain a Broker other than Sedo, such Broker must be approved in writing by the Escrow Agent. Upon Closing, the proceeds of sale shall be distributed to holders of

Claims and Equity Interests in the same manner as provided for in Article III herein. The Broker shall be permitted a marketing period of no less than six (6) months from the Outside Payment Date with any public auction to be held no later than the Auction Date. The closing on the sale of the domain name shall occur no later than the Closing Date.

4.2(b) The sale of the *coins.com* domain, whether pursuant to a private sale or public auction, shall be free and clear of any and all Claims, liens, encumbrances, equities and Interests of any nature or kind (collectively, "*Liens*") and shall constitute a sale under sections 105, 363(b), 363(f), 1123(b)(4) and 1129 of the Bankruptcy Code.

4.2(c) In the event that a buyer cannot be produced by the Broker by the Auction Date, the Escrow Agent shall be permitted to release the *coins.com* domain name back to Stack's in full satisfaction of its Class 4 Claim and the Plan shall be deemed in default.

4.2(d)   Notwithstanding any of the foregoing, the Debtor and/or its principal shall have the absolute right to satisfy all Allowed Claims, through any means available, at any time up to the date of any public auction.

4.3    <u>Distribution of Cash</u>.    Except as otherwise provided in the Plan, including without limitation Article VI of this Plan, the Cash required to be distributed to holders of Allowed Claims under the Plan shall be distributed by the Disbursing Agent in accordance with Article V herein or, in the case of a disputed Claim, within fourteen (14) days after the order allowing such disputed Claim after the Effective Date.

4.4    <u>Post-Effective Date Management of the Reorganized Debtor.</u> As of the Effective Date, Adam Perzow shall manage the day-to-day operations of the Reorganized Debtor and shall hold the title of Chief Executive Officer of the Reorganized Debtor. Mr. Perzow shall not receive any salary or compensation until all of the payments due under the Plan are completed.

4.5    <u>Provisions Concerning Distributions</u>.

(a)    <u>Funding of Reserves</u>. To the extent not otherwise provided for herein or ordered by the Bankruptcy Court, the Debtor shall estimate appropriate reserves of Cash to be set aside in order to pay or reserve for the payment of Allowed Claims and expenses of the Debtor's estate prior to the Effective Date, and such Claims shall be paid as provided for in Article III of the Plan.

(b)    <u>Transmittal of Distributions and Notices</u>. Any property or notice which a Person is or becomes entitled to receive pursuant to the Plan shall be delivered by regular mail, postage prepaid, in an envelope addressed to that Person at the address indicated on a properly filed Proof of Claim or, absent such a Proof of Claim, the address that is Scheduled for that Person. The Distribution Date shall be the date of mailing, and the property distributed in accordance with this section shall be deemed delivered to such Person regardless of whether such property is actually received by that Person.

(c)    <u>Manner of Payments under the Plan</u>. Payments to be made on the Effective Date of the Plan shall be made by check drawn on a separate, interest bearing domestic bank account maintained by the Disbursing Agent.

(d)    <u>Fractional Cents</u>. Any other provision of the Plan to the contrary notwithstanding, no payments of fractions of cents will be made. Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent (up or down).

(e)    <u>Unclaimed Cash</u>. Except as otherwise provided herein, in the event any Claimant fails to claim any distribution within 120 days from the date of such distribution, such Claimant shall forfeit all rights thereto, and to any and all future payments, and thereafter the Claim for

which such Cash was distributed shall be treated as a disallowed Claim. In this regard, distributions to Claimants entitled thereto shall be sent to their last known address set forth on a Proof of Claim filed with the Bankruptcy Court or if no Proof of Claim is filed, on the Schedules filed by the Debtor or to such other address as may be designated by a Creditor. The Disbursing Agent, Debtor and reorganized Debtor shall use their collective best efforts to obtain current addresses for all Claimants. The Disbursing Agent shall notify the Debtor of all returned distributions. All unclaimed Cash shall be retained by the Reorganized Debtor.

(f)      Disputed Payments or Distribution. In the event of any dispute between and among Claimants (including Persons asserting the right to receive the disputed payment or distribution) as to the right of any Person to receive or retain any payment or distribution to be made to such Person under this Plan, the Disbursing Agent may, in lieu of making such payment or distribution to such entity, remit the disputed portion of the Claim into an escrow account, as ordered by a court of competent jurisdiction or as the interested parties to such dispute may otherwise agree among themselves. Notwithstanding anything to the contrary, the Disbursing Agent shall make distributions on account of the undisputed portion of a Claim to such Claimants.

(g)      Setoffs. Except as otherwise provided in the Plan, the Confirmation Order, or in agreements previously approved by Final Order of the Bankruptcy Court, the Debtor's estate or reorganized Debtor, as the case may be, may, pursuant to Section 553 of the Bankruptcy Code or applicable non-bankruptcy law, offset against any Claim and any distribution to be made on account of such Claim, any and all of the Claims, rights and causes of action of any nature that the Debtor or the estate may hold against the Holder of such Claim; provided, however, that neither the failure to effect such a setoff, the allowance of any Claim hereunder, any other action

or omission of the Debtor or the estate, nor any provision of this Plan shall constitute a waiver or release by the Debtor or the estate of any such Claims, rights and causes of action that the Debtor or the estate may possess against such Holder. To the extent the estate fails to set off against a Creditor and seek to collect a Claim from such Creditor after a distribution to such Creditor pursuant to the Plan, the estate shall be entitled to full recovery on its Claim against such Creditor.

**ARTICLE VI**
**RESOLUTION OF DISPUTED CLAIMS & RESERVES**

5.1    <u>Objections</u>. An objection to the allowance of a Claim shall be in writing and may be filed with the Bankruptcy Court by the Debtor or any other party in interest at any time within 90 days after the Effective Date, or within such other time period as may be fixed by the Bankruptcy Court.

5.2    <u>Amendment of Claims</u>. A Claim may be amended prior to the Effective Date only as agreed upon by the Debtor and the Holder of such Claim and as approved by the Bankruptcy Court or as otherwise permitted by the Bankruptcy Code and Bankruptcy Rules. After the Effective Date, a Claim may be amended as agreed upon by the Holder thereof and the Debtor to decrease, but not increase, the face amount thereof.

5.3    <u>Estimation of Disputed Claims.</u> The Debtor shall seek an order or orders from the Bankruptcy Court, estimating the maximum dollar amount of Allowed and Disputed Claims in each Class of Claims, inclusive of contingent and/or unliquidated Claims, or otherwise determining and fixing the amount of the Disputed Claims Reserve for each Class, and may seek to set the amount of any particular Claim for final allowance purposes pursuant to sections 105 and 502(c) of the Bankruptcy Code. This estimate shall be used to calculate and fix distributions to Holders of Allowed Claims and the amount of the respective Disputed Claims Reserve. Such a

procedure may also be utilized for Administrative Expense Claims, Priority Tax Claims and Priority Non-Tax Claims. In the event the Debtor seeks to estimate such Claims, Disputed Claims Reserves shall be established for each such category of Claims.

5.4     Disputed Claims Reserve. The Debtor shall reserve for each Holder of a Disputed Claim that property which would otherwise be distributable to such Holder were such Disputed Claim an Allowed Claim on the Effective Date, or such other property as the Holder of such Disputed Claim and the Debtor may agree upon (the "Disputed Claims Reserve"). The property so reserved for the Holder, to the extent such Disputed Claim is allowed, and only after such Disputed Claim becomes a subsequently Allowed Claim, shall thereafter be distributed to such Holder.

5.5     Distributions to Holders of Subsequently Allowed Claims. Unless another date is agreed on by the Debtor and the Holder of a particular subsequently Allowed Claim, the Debtor shall, within fourteen (14) days after a Final Order is entered by the Bankruptcy Court resolving any Disputed Claim, make a distribution to the Holder of the previously Disputed Claim consistent with the terms of the Plan in respect of such Holder's Allowed Claim as determined by the Bankruptcy Court.

5.6     Disputes Regarding Rights to Payments or Distribution. In the event of any dispute between and among Claimants (including Persons asserting the right to receive the disputed payment or distribution) as to the right of any Person to receive or retain any payment or distribution to be made to such Person under this Plan, the Disbursing Agent may, in lieu of making such payment or distribution to such entity, remit the disputed portion of the Claim into an escrow account, as ordered by a court of competent jurisdiction or as the interested parties to such dispute may otherwise agree among themselves. Notwithstanding anything to the contrary,

the Disbursing Agent shall make distributions on account of the undisputed portion of a Claim to such Claimants.

## ARTICLE VI
## EXECUTORY CONTRACTS

6.1    <u>Assumption of Executory Contracts and Unexpired Leases</u>.  The Debtor is not a party to any executory contracts or unexpired leases. As such, assumption or rejection elections under this Plan are not applicable.

## ARTICLE VII
## EFFECT OF CONFIRMATION

7.1    <u>Vesting of Property</u>. On the Effective Date, title to and possession of any and all property of the estate, real or personal, shall be re-vested in the Reorganized Debtor free and clear of all liens, Claims, interests and encumbrances of any kind (except for any liens created by purchase money security interests which are duly perfected and enforceable), subject to and except as otherwise provided in the Plan.

7.2    <u>Waiver of Claims</u>. As of the Confirmation Date, but subject to the occurrence of the Effective Date and only to the extent permitted by applicable law, and except as otherwise expressly provided in the Confirmation Order and/or this Plan, all Persons who have held, hold or may hold Claims against or Equity Interests in the Debtor or the estate shall be deemed, by virtue of their receipt of distributions and/or other treatment contemplated under the Plan, to have forever covenanted with each of the Debtor's respective present and former officers, directors, members, agents, employees, representatives, financial advisors, professionals, partners, accountants and attorneys not to (i) sue, or otherwise seek any recovery from any of the foregoing, whether for tort, fraud, contract, violations of federal or state securities laws, or otherwise, based upon any act or occurrence or failure to act taken before the Effective Date

arising out of the business or affairs of the Debtor, or (ii) assert any Claim, obligation, right, cause of action or liability which any such Holder of a Claim against or Equity Interest in the Debtor may be entitled to assert, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, based in whole or in part upon any act or omission, transactions or the occurrence taking place on or before the Effective Date in any way relating to the Debtor, the Chapter 11 Case, or this Plan.

7.3    <u>Payment of Estate Professionals for Post-Confirmation Date Services</u>. The reasonable compensation and out-of-pocket expenses incurred post-Effective Date by Professionals retained in the Chapter 11 Case for post-Effective Date services and paid by the Debtor within twenty (20) days after presentation of invoices for such professional services to the Debtor; provided, however, that if the Debtor and any Professionals cannot agree on the amount of post-Effective Date fees and costs to be paid to such Professionals, such amount shall be determined by the Bankruptcy Court.

**<u>ARTICLE VIII</u>**
**EVENTS OF DEFAULT**

8.1    <u>Events of Default</u>. The occurrence of any of the following events shall constitute an event of default under the Plan ("Event of Default"):

(a) The failure of the Debtor to make any payment required to be made under the Plan, which failure shall have remained uncured for a period of ten (10) days after the date such payment is required to be made, unless the time for such payment has been extended in accordance with the Plan.

(b) The failure of the Debtor to comply with any of the covenants contained in the Plan, which failure shall remain uncured for a period of ten (10) days after the Debtor has received written notice of such failure.

8.2 <u>Effect of Default</u>. In the event that the Debtor defaults under the provisions of the Plan, and such default is not cured, then, at the option of any creditor or the United States Trustee, a motion may be filed with the Bankruptcy Court seeking an order of the Bankruptcy Court compelling the Debtor to make such payment or act in a manner consistent with the provisions of the Plan or seeking the conversion of the Chapter 11 Case to a Chapter 7 proceeding.

**<u>ARTICLE IX</u>**
**<u>RESTRUCTURING AND DISCHARGE OF THE DEBTOR</u>**

9.1 <u>Discharge of the Debtor.</u> Occurrence of the Effective Date shall result in the discharge of any indebtedness or entitlement to interest or other such legal or equitable right to payment not specifically contemplated by the Plan as against the Debtor. Nothing in the Confirmation Order or the Plan shall effect a release of any Claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against released parties, nor shall anything in the Confirmation Order or the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against released parties for any liability whatever, including, without limitation, any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state or local authority, nor shall anything in the Confirmation Order or the Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the released parties.

9.2      _Exculpation_. Neither the Debtor, nor the Reorganized Debtor, nor any of their respective members, officers, directors, general partners, managing agents, owners, or employees (acting in such capacity) nor any professional person employed by the Debtor, the Reorganized Debtor, shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement, the Plan Support Agreement, or any other contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Chapter 11 Case or the Plan. From and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute and may be submitted as a complete defense to any claim or liability satisfied, discharged and released pursuant to the Plan; provided, however, that nothing in the Plan shall, or shall be deemed to, release the Debtor or Reorganized Debtor from, or exculpate the Debtor or Reorganized Debtor with respect to, their respective obligations or covenants arising pursuant to the Plan from willful misconduct, gross negligence, breach of fiduciary duty, malpractice, fraud, criminal conduct, unauthorized use of confidential information that causes damages, and/or ultra vires acts. If the Plan is confirmed containing releases of liability as to the Debtor and the Reorganized Debtor creditors will be unable to pursue any Claims that are discharged under the Plan, but creditors can pursue Claims against the Debtor or the Reorganized Debtor that may arise in the future, or pursuant to the Plan. Any such liability against the Debtor's professionals also will not be limited to their respective clients contrary to the requirement of 1.8(h)(1) of the New York State Rules of Professional Conduct, as promulgated in April, 2009.

9.3    <u>Injunction</u>. Except as otherwise expressly provided in the Plan, any and all entities who have held, hold or may hold Claims against or Equity Interests in the Debtor shall, as of the Effective Date, be enjoined from:

(a) commencing, conducting, or continuing, in any manner, any suit, action, or other proceeding of any kind (including, without limitation, in any judicial, arbitral, administrative or other forum) against the Reorganized Debtor arising out of any act or omission of the Debtor;

(b) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collection or otherwise recovering by any manner or means, whether directly or indirectly, or any judgment, award, decree, or order against the Reorganized Debtor with regard to such entities' Claim against the Debtor;

(c) creating, perfecting or otherwise enforcing, in any manner, directly or indirectly, any encumbrance of any kind against the Reorganized Debtor, the property of the Reorganized Debtor, or any successor-in-interest to the Reorganized Debtor;

(d) asserting any set off, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due the Reorganized Debtor, the property of the Reorganized Debtor, or any successor-in-interest to the Reorganized Debtor; and

(e) acting in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

9.4    <u>Professional Liability</u>.    In addition, no provision contained herein shall have the effect of limiting the liability of the professionals of the Debtors or the Reorganized Debtors to their clients contrary to the requirements of 1.8(h)(1) of the New York State Rules of Professional Conduct, as promulgated in April, 2009, or for fraud, gross negligence, willful misconduct, malpractice, criminal conduct or unauthorized use of confidential information that

causes damages, or ultra vires acts.

## ARTICLE X
## AVOIDANCE ACTIONS

10.1    As of and subject to the occurrence of the Effective Date, the Debtor and the Reorganized Debtor, for and on their respective behalves and the estate, will waive and release any Avoidance Actions, which are defined in the Plan as any cause of Action under Sections 510, 542, 543, 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code or state law if made applicable under such Bankruptcy Code section. The Debtor believes, after a thorough investigation and review with its counsel, that no Avoidance Actions exist.

## ARTICLE XI
## RETENTION OF JURISDICTION

11.1    <u>Claims Post-Effective Date</u>.    The Debtor and such other applicable parties in interest as set forth in this Plan reserve the right, as set forth in this Plan, to institute preference, fraudulent conveyance, and other litigation claims within the time period proscribed by the Bankruptcy Code, Bankruptcy Rules, other applicable law, or such time period as may be fixed by the Bankruptcy Court.

11.2    <u>Retention of Jurisdiction</u>. The Bankruptcy Court shall retain jurisdiction of the Chapter 11 Case:

(a)    To determine all controversies relating to, or concerning, the allowance of Claims upon objection to such Claims by any party in interest;

(b)    To determine requests for payment of Claims entitled to priority under Section 507(a)(2) of the Bankruptcy Code, including any and all applications for compensation or Professional Persons;

(c)    To determine and, if necessary, liquidate, any and all Claims arising from the

rejection of any Executory Contracts;

(d)      To determine any and all applications, adversary proceedings, and contested or litigated matters over which the Bankruptcy Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334;

(e)      To determine all disputed, contingent or unliquidated Claims;

(f)      To determine requests to modify this Plan pursuant to Section 1127 of the Code, or to remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order to the extent authorized by the Bankruptcy Code;

(g)      To make such orders as are necessary or appropriate to carry out the provisions of this Plan;

(h)      To resolve controversies and disputes regarding the interpretation or enforcement of the terms of this Plan; and

(i)      To enter a final decree closing the Chapter 11 Case.

## **ARTICLE XII**
## **GENERAL/MISCELLANEOUS PROVISIONS**

12.1    <u>Modification of the Plan</u>. The Debtor reserves the right, in accordance with the Bankruptcy Code, to amend or modify the Plan prior to the Confirmation Date or as soon as practicable thereafter. After the Confirmation Date, the Debtor may, subject to order of the Bankruptcy Court, and in accordance with Section 1127(b) of the Bankruptcy Code, remedy any defect or omission or reconcile any inconsistencies in the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan.

12.2    <u>Conditions to the Effective Date of the Plan</u>. The Plan shall not become effective unless and until the following conditions shall have been satisfied or waived:

(a)      the Confirmation Order in form and substance reasonably acceptable to the

Debtor, shall have been entered by the Bankruptcy Court and shall have become a Final Order; and

(b)    all actions, other documents and agreements necessary to implement the Plan shall have been effected or executed and delivered.

In the event that one or more of the conditions specified have not occurred on or before thirty (30) days after the Confirmation Date, upon notification submitted by the Debtor to the Bankruptcy Court, (a) the Confirmation Order shall be vacated, (b) no distributions under the Plan shall be made, (c) the Debtor and all Holders of Claims and Equity Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred and (d) the Debtor's obligations with respect to the Claims and Equity Interests shall remain unchanged and nothing contained herein shall constitute or be deemed a waiver or release of any Claim or Equity Interest by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

12.3    Withdrawal or Revocation of the Plan. The Debtor reserves the right to revoke or withdraw the Plan prior to the Effective Date. If the Debtor revokes or withdraws the Plan, then the result shall be the same as if the Confirmation Order was not entered and the Effective Date did not occur.

12.4    Conditions to Withdrawal, Modifications and Amendments. Any act to amend, modify, revoke or withdraw the Plan shall require the consent of the Debtor. The Bankruptcy Court shall have sole and exclusive jurisdiction over any disputes regarding the foregoing.

12.5    Notices. All notices and correspondence should therefore be forwarded in writing to:

If to the Debtor:        Hampstead Global, LLC
                         c/o Kirby Aisner & Curley, LLP
                         700 Post Road, Suite 237
                         Scarsdale, New York 10583
                         (914) 401-9500
                         Attn: Erica R. Curley, Esq.

12.6    <u>Post-Effective Date Powers</u>. After the Effective Date, the powers of the

Reorganized Debtor shall include, but not be limited to, the following:

(a)      Review of all Claims and proposed distributions to Creditors pursuant to the Plan;

(b)      Review and participation in all pending and further litigation before the

Bankruptcy Court;

(c)      Authority to make any objections to Claims, where appropriate, as well as

authority to commence adversary proceedings on behalf of the Debtor with respect to Avoidance

Actions under Sections 547 through 552 of the Bankruptcy Code; and

(d)      Such other responsibilities and obligations as may be vested in the Reorganized

Debtor or as may assumed pursuant to order of the Bankruptcy Court or pursuant to this Plan or

the Bankruptcy Code.

12.7    <u>Post-Confirmation Reports and Fees.</u> The Debtor shall be responsible for filing

post-confirmation disbursement reports with the Bankruptcy Court and shall pay all quarterly

fees required under 28 U.S.C. Section 1930 and 31 U.S.C. Section 3717 until the earlier of (a)

conversion or dismissal of the Chapter 11 Case or (b) entry of a final decree closing the Chapter

11 Case, and paying such fees as may be levied by the U.S. Trustee pursuant to 28 U.S.C.

Section 1930 as are assessed.

12.8    <u>Preservation of Insurance.</u> The discharge and release of the Debtor as provided in

this Plan shall not diminish or impair the enforceability of any insurance policies that may cover

Claims against the Debtor or other Persons.

12.9    <u>Payment Dates</u>. If any payment or act under the Plan is required to be made or falls on a date which shall be a Saturday, Sunday or a legal holiday, then the making of such payment or performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

12.10    <u>Applicable Law</u>. Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the law of the State of New York.

12.11    <u>Successors and Assigns</u>. The rights and obligations of any entity named or referred to in the Plan shall be binding upon and inure to the benefit of the successors and assigns of such entity.

12.12    <u>Reservation of Rights</u>. Neither the filing of this Plan, nor any statement or provision contained herein, be nor be deemed to be an admission against interest. In the event that the Effective Date does not occur, neither this Plan nor any statement contained herein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside the Chapter 11 Case.

12.13    <u>Severability</u>. Except as to terms which would frustrate the overall purpose of this Plan, should any provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of this Plan.

12.14    <u>Confirmation Order.</u> The Confirmation Order shall ratify all transactions effected by the Debtor during the period commencing on the Petition Date and ending on the Confirmation Date except for any acts constituting willful misconduct or gross negligence.

12.15    <u>Interpretation, Rules of Construction, Computation of Time, and Choice of Law.</u>

(a)      The provisions of the Plan shall control over any descriptions thereof contained in the Disclosure Statement.

(b)      Any term used in the Plan that is not defined in the Plan, either in Article I (Definitions) or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in (and shall be construed in accordance with the rules of construction under) the Bankruptcy Code or the Bankruptcy Rules. Without limiting the foregoing, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the Plan, unless superseded herein. The definitions and rules of construction contained herein do not apply to the Disclosure Statement or to any Exhibits to the Plan except to the extent expressly so stated in the Disclosure Statement or in such Exhibit to the Plan.

(c)      The words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan as a whole and not to any particular Article, Section, subsection or clause contained in the Plan, unless the context requires otherwise.

(d)      Unless specified otherwise in a particular reference, all references in the Plan to Articles, Sections and exhibits are references to Articles, Sections and Exhibits of or to the Plan.

(e)      Any reference in the Plan to a contract, document, instrument, release, bylaw, certificate, indenture or other agreement being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions.

(f)      Any reference in the Plan to an existing document or exhibit means such document or exhibit as it may have been amended, restated, modified or supplemented as of the Effective Date.

(g)      Captions and headings to Articles and Sections in the Plan are inserted for the

convenience of reference only and shall neither constitute a part of the Plan nor in any way affect the interpretations of any provisions hereof.

(h)     Whenever from the context it is appropriate, each term stated in either the singular of the plural shall include both the singular and the plural, and each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine and neuter.

(i)     In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

(j)     All exhibits to the Disclosure Statement are incorporated into the Plan, and shall be deemed to be included in the Plan, regardless of when filed.

12.16   No Admissions. Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by the Debtor with respect to any matter set forth herein, including, without limitation, any liability on or treatment of any Claim, or the propriety of a Claim's classification.

Dated: Scarsdale, New York
        August 7, 2019

                                        HAMPSTEAD GLOBAL, LLC
                                        Debtor-In-Possession


                                        By:____/s/ Adam Perzow_____
                                            Adam Perzow, Managing Member


                                        KIRBY AISNER & CURLEY, LLP
                                        Proposed Attorneys for the Debtor
                                        700 Post Road, Suite 237
                                        Scarsdale, New York 10583
                                        (914) 401-9500


                                        By: /s/ Erica R. Aisner_____
                                            Erica R. Aisner