| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>――――――――――――――――――――――――X<br><br>IN RE:<br><br>HAMPSTEAD GLOBAL, LLC,<br><br>                         Debtor.<br>――――――――――――――――――――――――X | Hearing Date: 10/7/19<br>Hearing Time: 10:00am<br><br><br><br>CH. 11<br>Case No. 19-22721-RDD |

**MOTION FOR AN ORDER HOLDING STACK'S BOWERS NUMISMATICS, LLC IN CONTEMPT FOR VIOLATION OF THE AUTOMATIC STAY**

HAMPSTEAD GLOBAL, LLC ("Debtor"), by and through its retained Litigation Counsel, Charles A. Higgs, Esq., hereby submits this memorandum of law in support of Debtor's Motion for an order holding Stacks Bowers Numismatics, LLC ("Creditor") in Contempt pursuant to Sections 105(a) and 362(a) of the Bankruptcy Code for violation of the automatic stay, declaring actions taken in violation of the stay void and imposing sanctions against Creditor in the form of punitive damages, actual damages, and attorney's fees and costs:

**PRELIMINARY STATEMENT**

Debtor makes this motion pursuant to Sections 362(a) and 105(a) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9020 seeking an order holding Creditor in contempt based upon Creditor's filing of a lawsuit in California[1] (the "California Action") against the Debtor's sole member and unnamed "Does 1-10" post-petition based entirely on the purchase and sale agreement for Debtor's purchase of the coins.com domain in violation of the bankruptcy stay set forth in Section 362(a) of the Bankruptcy Code. Debtor requests that an order be entered imposing sanctions against Creditor for Creditor's contempt in the form of punitive damages,

―――――――――――
[1] *Stack's-Bowers Numismatics, LLC v. Adam Michael Perzow and Does 1 through 10*, 19-SMCV-00875

actual damages, and attorney's fees and costs and that the Court further enter an Order determining the lawsuit to be void ab initio as filed in violation of the automatic stay. The California Lawsuit was filed on

The filing of the California Lawsuit by Creditor is one of many egregious acts by the Creditor during the pendency of this bankruptcy case, taken by Creditor actions with the intent of interfering with the Debtor's reorganization efforts. Creditor's filing of the California Action shows that Creditor is acting with complete disregard for the bankruptcy court process and the bankruptcy stay. It was not until minutes after the previous hearing in this bankruptcy case, that Debtor learned for the first time, not only that Creditor had filed the California Action, but also that Creditor sent a process server to the bankruptcy court on the day of the status conference with instructions to effectuate service of the California Action upon Adam Perzow, the Debtor's sole member. In fact, upon information and belief, at the directive of the Creditor, the process server was in fact present at the bankruptcy court on the day of the last bankruptcy status conference in this case.

It is important to note that it was at Creditor's request, made minutes before the hearing[2] that the parties agreed to adjourn the motion to a later date to allow the parties to explore possible settlement options. The Debtor agreed to Creditor's adjournment request in a gesture of good faith, based upon Creditor's representation to Debtor that it appeared that settlement was achievable[3]. Importantly, when Debtor agreed to Creditor's suggestion that the parties agree to adjourn the hearing, Debtor was entirely unaware that Creditor had filed the California Action and that a process server was present at the bankruptcy courthouse to effectuate service of the

---

[2] The hearing on Creditor's motion to dismiss the case, as well as the initial case management conference
[3] It is my understanding that this representation was also made by Creditor's Counsel in Court at the status hearing.

California Action on Mr. Perzow who was present that day on behalf of the Debtor. It was not until immediately after the hearing that Debtor learned of the California Action and the presence of the process server at the bankruptcy court; had Debtor been aware of these facts prior to the hearing, Debtor would never had agreed to the adjournment and Debtor certainly would have raised the concerns expressed in this Contempt Motion at the bankruptcy hearing. Undoubtably, Creditor purposely failed to disclose the existence of the California Action, the presence of the process server, and the fact that a process server was present in the courthouse to the Bankruptcy Court at the last status conference, because Creditor surely knew that the California Action was a violation of the automatic stay. Creditor deliberately withheld the information regarding the California Action from everyone, including the Court, until after the hearing had been completed. In fact immediately after the status conference had been completed, Creditor disclosed the existence of the California Action and the presence of the process server to the Debtor, further demonstrating that Creditor had purposely concealed the information regarding the California Action, from the Bankruptcy Court.

### CREDITOR'S FILING OF A LAWSUIT AFTER COMMENCEMENT OF THE DEBTOR'S BANKRUPTCY CASE CONSTITUTED A VIOLATION OF THE AUTOMATIC STAY

Debtor commenced this Chapter 11 bankruptcy case on March 30, 2019 (the "Petition Date"), resulting in the Debtor immediately receiving the protections of the automatic stay set forth in Section 362(a) of the Bankruptcy Code. "The automatic stay under 11 U.S.C. § 362(a) is what it says: an automatic statutory injunction that came into effect upon the commencement of this chapter 11 case. It embodies Congress's determination that automatically staying all activity to the extent set forth in § 362(a)—including, as most relevant here, "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or

proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title," 11 U.S.C. § 362(a)(1), and "any act to obtain possession of property of the estate or property from the estate or to exercise control over property of the estate," 11 U.S.C. § 362(a)(3)—is a fundamental protection not only of debtors in bankruptcy cases, but also of debtors' estates and creditors." *In re Congregation Birchos Yosef*, 535 B.R. 629, 633 (Bankr. S.D.N.Y. 2015).

On May 10, 2019, more than a month after the Debtor's Petition Date, Creditor commenced a lawsuit against Debtor's sole member in the Superior Court of the State of California for the County of Los Angeles (the "California Action"). The California Action seeks relief based entirely on the purchase and sale agreement for Debtor's purchase of coins.com from the Creditor, and for the sole purpose of imposing leverage on the Debtor and its estate, in circumvention of the Bankruptcy Process and the Automatic Stay. Creditor was made aware of the bankruptcy petition as soon as it was filed and the bankruptcy docket reflects that Creditor filed a notice of appearance in Debtor's bankruptcy case on April 30, 2019, prior to Creditor's commencement of the California Action. Creditor commenced the California Action after the Petition Date in violation of the automatic stay. Not only was the California Action filed in violation of the automatic stay, but the contents of the California action are also entirely without merit and meant solely to assert leverage on the estate via deliberate circumvention of the Bankruptcy process. The California Action seeks relief that is in complete contradiction of the terms of the Contract. So as to keep the terms of the now sealed PSA confidential, the Debtor simply cites the relevant sections for the court to look at so as to showcase just how frivolous the California action truly is, and to what extent Stacks went in circumventing the Bankruptcy case and apply leverage against the Debtor.

In particular, Section 7(b)(ii) (Buyer's Representation and Warranties), and Section 8 (Entire Agreement), of the PSA clearly demonstrate that the California Action is not only entirely without merit and was filed for the sole purpose of harassing the Debtor and not with any expectation of obtaining good faith relief against the Debtor's sole member, who is nominally named as a defendant, but also is so clearly frivolous and aimed at attacking the Debtor (based on the clear language and disclaimers in the cited sections) that it heightens the level of bad faith, and interference, employed by Stacks to a whole new level. Taken in whole, the only contract that exists is the PSA between Debtor and Stacks, and as per the relevant sections cited, Stacks' only expectation was that Debtor had the money to make the initial payment (which it made) and nothing more, and the parties clearly acknowledge that they were relying on nothing more than what the contract states and that the parties have waived "all" reliance or inducement claims of "any kind". Furthermore, neither Stacks, nor Mr. Perzow, are in any other contract with Stacks.

While Creditor did not specifically name Defendant in the California Action, the California Action is based entirely on the contract entered into between the Debtor and Creditor for the purchase of Coins.com (the "Contract"). Additionally, the California action names Debtor's sole member, Adam Perzow and "Does 1-10" as Defendants. As the only two parties to the Contract are the Debtor and Creditor, it is clear that the true purpose of the lawsuit was to harass and intimidate the Debtor and as an attempt by Creditor to obtain control of the Coins.com domain name, which is property of the bankruptcy estate (and in circumvention of the Bankruptcy court). Furthermore, the California Lawsuit named "Does 1-10" and repeatedly refers to "Defendants", plural. Debtor is a single member LLC and there are no other parties to the Contract other than Debtor and Creditor, as such, although referred to as "Does 1-10" it is clear that the unnamed Defendant in the lawsuit is the Debtor.

"Under well-established case law, the fact that, nominally, [an] action [is] against the Debtor's principal therefore is of no legal effect. Because of the principals' identity of interest here with the Debtor, the automatic stay applies to protect them…." *In re Congregation Birchos Yosef,* 535 B.R. 629, 633 (Bankr. S.D.N.Y. 2015) *citing Queenie, Ltd. v. Nygard Int'l,* 321 F.3d 282, 288 (2d Cir. 2003); *In re North Star Contracting Corp.,* 125 B.R. 368, 370-71 (S.D.N.Y. 1991); *In re Lomas Fin. Corp.,* 117 B.R. 64, 67-8 (S.D.N.Y.1990); *In re Delphi Corp.,* Case Number 05-4481-rdd, modified bench ruling dated May 22, 2007 [Doc. 7995]. "If that were not the case, there would be such a hole in the automatic stay that it would have no force. Parties in interest in bankruptcy cases could walk right through it simply by suing the debtor's principals for actions which they took in that capacity." *In re Congregation Birchos Yosef*, 535 B.R. at 634.

"Where the stay has been violated, any proceedings or actions described in § 362(a)(1) are void and without legal effect if they occur after the automatic stay takes effect." *In re Killmer*, 513 B.R. 41, 49 (Bankr. S.D.N.Y. 2014) (C.J. Morris) *citing E. Refractories Co. Inc. v. Forty Eight Insulations Inc.,* 157 F.3d 169, 172 (2d Cir.1998); *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 527 (2d Cir.1994); *48th St. Steakhouse, Inc. v. Rockefeller Grp., Inc. (In re 48th St. Steakhouse, Inc.),* 835 F.2d 427, 431 (2d Cir. 1987); *In re Bell,* 1995 WL 17819381, at *2 (Bankr. S.D.N.Y. Dec. 29, 1995). Additionally, a party that violates the automatic stay is subject to damages and other sanctions. "Only knowledge of the existence of the automatic stay and a deliberate act in violation of it are required. Thus, for actual damages to be imposed, "[s]uch an act need not be performed with the specific intent to violate the stay." *In re Congregation Birchos Yosef,* 535 B.R. at 534 *quoting In re Sucre,* 226 B.R. 340, 346 (Bankr.S.D.N.Y.1998). Additionally, the Court may impose punitive damages against a Creditor where the stay violation was a result of conduct carried out in bad faith, with malice, or in a particularly egregious manner.

*See In re Jean-Francois*, 532 B.R. 449, 458 (Bankr. E.D.N.Y. 2015). Here Creditor's filing of the California Action with knowledge of Debtor's bankruptcy, along with Creditor's pattern of bad faith actions throughout this bankruptcy action, demonstrate that Creditor's stay violation was done in bad faith and with malice, with the primary purpose of harassing and intimidating the Debtor and as an act to collect a pre-petition debt and as a means of obtaining possession of property of the bankruptcy estate. Further demonstrating that Creditor has acted in an egregious manner and with complete disregard for the bankruptcy stay is the fact that after the previous hearing in this bankruptcy case, Debtor learned that Creditor sent a process server to the bankruptcy court at the last hearing in this bankruptcy case with instructions to serve Debtor's sole member with the California Action.

In addition to the sanction powers set forth in Section 362(k) of the Bankruptcy Code[4], the Bankruptcy Court also has the power to impose sanctions for stay violations taken against Corporate entities under Section 105(a) of the Bankruptcy Code. "Bankruptcy courts have the inherent power to supervise and control its own proceedings and to sanction a litigant for bad-faith conduct or for disobeying the court's orders." *In re Bambi*, 492 B.R. 13, 190 (Bankr. S.D.N.Y. 2013) *collecting cases.* "Courts may also use civil contempt pursuant to § 105(a) and Federal Rule of Bankruptcy Procedure 9020 to "to compel a reluctant party to do what a court requires of him." *In re Bambi*, 492 B.R. at 191 *quoting Badgley v. Santacroce,* 800 F.2d 33, 36 (2d Cir.1986). The facts before the Court demonstrate that Creditor was aware of Debtor's bankruptcy case and the existence of the automatic stay. That despite being aware of the bankruptcy stay, Creditor has intentionally disregarded the stay by commencing the California Action and that Creditor has not taken any steps to comply with the automatic stay. Creditor's stay violation has damaged the

---

[4] Section 362(k) provides for an automatic award of damages for stay violations taken against individuals,

Debtor by disrupting Debtor's reorganization efforts, forcing Debtor and Debtor's counsel to unnecessarily spend time addressing Creditor's actions, by causing Debtor to incur additional legal fees and costs, and by leaving Debtor in a position of wondering what other steps the Creditor might take to circumvent the bankruptcy process.

## PUNITIVE DAMAGES ARE APPROPRIATE

Punitive damages are appropriate where Creditor's actions in violating the automatic stay violation is done in bad faith, with malice, or in a particularly egregious manner. In determining the amount of the punitive damage award, the Court must award punitive damages that are "reasonable in their amount and rational in light of their purpose to punish what has occurred and to deter its repetition." *In re Jean-Francois*, 532 B.R. 449, 459 (Bankr. E.D.N.Y. 2015) *quoting Vasbinder v. Scott,* 976 F.2d 118, 121 (2d Cir.1992). "The primary purpose of punitive damages awarded for a willful violation of the automatic stay is to cause a change in the creditor's behavior...." *In re Jean-Francois*, 532 B.R. 449, 460 (Bankr. E.D.N.Y. 2015). Punitive damages also serve to encourage parties to seek stay relief from the bankruptcy court, instead of making their own determination as to whether the stay applies. See *In re Jean-Francois,* 532 B.R. at 460.

Here the filing of the California Action in violation of the automatic stay was done in bad faith, with malice, and in an egregious manner. First, Creditor was well aware of the bankruptcy stay when it filed the California Action. Second, despite the fact that it filed the California Action on May 10, 2019, Creditor failed to disclose the filing of the California Action until months later. By failing to disclose the existence of the California Action, which was clearly filed in violation of the automatic stay, Creditor stay violation has likely caused Debtor to suffer significant damages. Since the filing of this Bankruptcy Case Debtor has been in discussions with a number of companies, including publicly traded companies, regarding a potential partnership with the

Debtor. The Debtor has engaged in these negotiations and discussions, without any knowledge of the California Action, undoubtably the California Action has severely interfered with the Debtor's negotiations during this bankruptcy. Any company or investor group exploring a partnership or deal with the Debtor will have done its due diligence of looking into the Debtor, unbeknownst to the Debtor that due diligence would have resulted in disclosure of the California Action, which is not only completely frivolous, as it is entirely without merit, but which was also filed in clear violation of the automatic stay. The filing of the California Action has interfered with the Debtor's reorganization efforts and has undoubtably caused Debtor to suffer significant damages.

Regardless of whether the Creditor withdraws the California Action at this point, the damage has been done, as once filed there can be no certainty that the California Action has not downloaded, copied, or otherwise distributed by unknown third parties. Creditor's filing of the California Action has not only caused damage to the Debtor's past attempts to maximize the value of the property of the estate but has also caused damage also to Debtor's future efforts to obtain a deal that maximizes the value of the estate. Lastly, it is significant that Creditor purposely concealed the California Action from the Bankruptcy Court, the U.S. Trustee, and the Debtor at the last bankruptcy status conference. Creditor failed to disclose the existence of the California Action to the Court or the parties at the bankruptcy status conference but then immediately after the status conference had completed, Creditor disclosed the existence of the California Action to the Debtor. The fact that the Creditor also felt it appropriate to send a process server to the Bankruptcy Court to serve Debtor's sole member with the California Action, speaks volumes about the Creditor's total disregard for the bankruptcy process. The fact that Debtor's member, Mr. Perzow as a member of the Debtor is actively involved in the Debtor's reorganization efforts should be encouraged. Debtor's member, Mr. Perzow should be able to feel comfortable attending

Bankruptcy status conferences and other hearings in this bankruptcy case without having to worry about whether the Creditor has a process server lurking around the bankruptcy courthouse in wait, ready to spring out and serve Mr. Perzow with a summons and complaint in some frivolous action.

In light of the above and the substantial damages that have been caused by the Creditor's filing of the California Action, the bankruptcy court should impose substantial punitive damages on the Creditor due to the significant damage caused by Creditor's on-going efforts to interfere with Debtor's reorganization efforts.

## CONCLUSION

For the reasons set forth above, Debtor requests that the Court enter an order holding Creditor in contempt for violating the automatic stay, deeming the actions taken by Creditor in violation of the automatic stay to be void ab initio, imposing actual and punitive damages against the Creditor along with attorney's fees and costs, and granting such other and further relief as the Court deems just and proper for Creditor's stay violation and for Creditor's on-going efforts to interfere with Debtor's reorganization efforts..

Dated: September 3, 2019  
New York, NY

/S/ Charles A. Higgs  
Charles A. Higgs, Esq.  
Law Office of Charles A. Higgs  
Litigation Counsel for the Debtor  
450 Lexington Avenue, FL4  
New York, NY 10017  
(917) 673-3768  
Charles@FreshStartEsq.com