Teitelbaum Law Group LLC
Attorneys for Stack's-Bowers Numismatics, LLC
d/b/a Stacks Bowers Galleries
1 Barker Avenue
White Plains, New York 10610
Tel. 914.437.7670
E. Mail jteitelbaum@tblawllp.com
Jay Teitelbaum, Esq.

Hearing Date: October 7, 2019
Hearing Time: 10:00 a.m.
Objection Deadline: September 30, 2019

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------
In re:                                    :    Chapter 11
                                          :    Case No: 19-22721(RDD)
HAMPSTEAD GLOBAL, LLC,                     :
                    Debtor                 :
------------------------------------------------------

## OBJECTION AND MEMORANDUM OF LAW IN OPPOSITION TO DEBTORS' MOTION FOR AN ORDER FINDING STACK'S- BOWERS NUMISMATICS IN CONTEMPT

     1.      Stacks-Bowers Numismatics, LLC, d/b/a Stack's Bowers Galleries ("**Stacks**"), by its undersigned counsel Teitelbaum Law Group LLC, and upon the accompanying declarations of Jay Teitelbaum (the "**Teitelbaum Decl.**") and Richard Spencer (the "**Spencer Decl.**"), for its objection to the Debtor's motion for an order pursuant to Sections 105 and 362(k) of Title 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**") and Bankruptcy Rule 9020 (ECF Docket No. 41) (the "**Motion**"), as supplemented by the Debtor's Supplemental Memorandum of Law (ECF Docket No. 44) (the "**Supplemental Memo**")[1] finding Stacks in contempt for violating the automatic stay in connection with the commencement of an action captioned

---

[1] Although captioned as a supplemental memorandum of law, there is not a single case or other legal authority set forth in the Supplemental Memo.  The Supplemental Memo is a procedurally improper, unsworn statement of alleged facts signed by counsel and should not be considered by the Court.  However, as the statements in the Supplemental Memo are so blatantly false and inflammatory, in the event that the Court should consider the pleading, Stacks has addressed the baseless, false and misleading allegations and conclusions set forth therein in its objection and in the accompanying declarations of Richard Spencer and Jay Teitelbaum.

*Stacks-Bowers Numismatics, LLC v. Adam Michael Perzow, a/k/a Adam Perzow, an Individual and DOES 1 through 10, Inclusive,* Case No. 19SM CV00875 in the Superior Court of the State of California, County of Los Angeles (the "**Action**").

### Preliminary Statement

2.      This case is Mr. Perzow's *redux* of *In re Heath Global, Inc.,* Case No. 12-10511. This case is a two party dispute concerning a single asset over which Mr. Perzow will litigate for the sake of delay and without regard for the outcome to try to preserve value himself.

3.      The predicate for the Action against Mr. Perzow is that he (i) knowingly and intentionally misrepresented facts to Stacks to induce Stacks to enter into the PSA; (ii) had no intention of Hampstead honoring the terms of the PSA; and (iii) caused Hampstead to breach the PSA.  The claims asserted are ***only*** against Mr. Perzow for fraud based upon his tortious conduct. There are no claims against the Debtor or property of the estate or for breach of the PSA.

4.      The Debtor has filed a series of false and misleading pleadings, starting with the Petition and ending with the Supplemental Memo, to conceal the fact that this entire case was filed in bad faith.[2]  The Motion is nothing more than an attempt to strong arm Stacks into consenting to the terms of an otherwise unconfirmable plan filed by the Debtor on August 8, 2019 (ECF Docket No. 36) (the "**Plan**").

---

[2] The Debtor also filed a motion to extend the exclusive period as ECF Docket No. 45, which Stacks will separately address. However, the Court should be aware that prior to the filing of the ECF 45, in response to a question from Debtor's counsel as to whether Stacks would consent to an extension of exclusivity, Jay Teitelbaum, responded yes and believed that he would be receiving a proposed stipulation.  Rather, it appears Mr. Perzow and his counsel determined to file another unnecessary, false, and inflammatory pleading. Given the Debtor's decision to proceed via litigation, Stacks intends to oppose the motion on the ground that the Debtor's plan is to modify the PSA and such a plan cannot be confirmed. The Debtor has provided no proof and cannot meet its burden under §1121(e) (3) (A).

5.      The premise of the Motion is that, as a matter of law, the fact that Mr. Perzow is the principal of the Debtor means the automatic stay applies to him and the Action.    The Motion is contrary to the express language of Bankruptcy Code §362(a) and the case law including *Queenie, Ltd. v. Nygard Int'l, 321 F.3d 282, 287 (2d Cir. 2003).*

6.      The automatic stay, as a matter of law, ***does not*** encompass actions against non-bankrupt parties; but may be extended by the Court to apply to actions against third parties following a fact sensitive inquiry and a finding of unusual circumstances. *Teachers Ins. & Annuity Assn of Am. v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986); *Marcelino v. Mon Cher 57 Inc., 2019 U.S. Dist Lexis 100176 *6-8 (S.D.N.Y. 2019); N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC,* 564 B.R. 192, 195 (S.D.N.Y. 2016); *DeSouza v. Plusfunds Group, Inc.*, 2006 U.S. Dist. LEXIS 53392 at **5-6 (S.D.N.Y. 2006).

7.      The Debtor has failed to meet its burden of proof on the motion. *Marcelino v. Mon Cher 57 Inc., 2019 U.S. Dist Lexis 100176 *6-8 (S.D.N.Y. 2019)*The only affidavit or form of evidence in support of the Motion is the affidavit of counsel attaching documents. The Debtor has submitted no evidence in support of the Motion that the Debtor has a viable Chapter 11 case, let alone proof of unusual circumstances sufficient to support the extraordinary relief of extending the automatic stay to Mr. Perzow and the Action. *DeSouza v. Plusfunds Group, Inc.*, 2006 U.S. Dist. LEXIS 53392 at **5-6 (S.D.N.Y. 2006).

8.      On the other hand, the record of this case demonstrates Mr. Perzow is wholly irrelevant, if not detrimental, to this reorganization - - assuming *arguendo* that there is even anything to reorganize.

3

9.    Based upon the record before this Court, the Debtor has no operating business, no revenue, and since April 2018 has been unable to raise even $1 to make the second payment due under the PSA.

10.    This case was filed for one reason only- - to stop Stacks from enforcing its rights under the PSA so that Mr. Perzow can try to preserve the Domain Name for his benefit as an equity owner.

11.    If the Domain Name is worth $5 Million or more as alleged by Mr. Perzow, it can be readily sold by an auctioneer or trustee to pay all creditors in full, pay a dividend to equity and the case can be closed. There is no need for Mr. Perzow or his penchant for litigation.

12.    There is no legal or factual basis to conclude that the Action was commenced or prosecuted in bad faith, with malice or willful disregard for the automatic stay.

13.    The Motion, like this case, was filed in bad faith, without any supporting evidence, and for an improper purpose. The Motion should be denied

**Statement of Facts of the Case**

14.    The Debtor and Stacks entered into a certain Purchase and Sale Agreement, dated as of April 30, 2018 (the "**PSA**").

15.    The Debtor, Stacks and Greenberg & Lieberman, as Escrow Agent, entered into a certain Escrow Agreement, dated as of May 1, 2018 (the "**Escrow Agreement**").

16.    The Effective Date of the PSA was April 30, 2018 (PSA page 1).

17.    The Debtor was to pay the Purchase Price of $___ as follows: (i) an "Initial Payment" of $___ 5 business days after the Effective Date (PSA §2(a)); (ii) payment of $___ ten months after the Effective Date; $___ thirteen months after the Effective Date; $___ sixteen

months after the Effective Date; and $____twenty five months after the Effective Date (PSA §2(b)). [3]

18.     Debtor delivered only the Initial Payment under the PSA[4]. (341 Meeting @ 7 minutes 53 seconds and 8 minutes 40 seconds).

19.     Following receipt of the Initial Payment, Movant caused the registration of the Domain Name to be transferred to the Escrow Agent pursuant to the terms of the Escrow Agreement and, as of the Petition Date, the Domain Name was held by the Escrow Agent pursuant to the Escrow Agreement. (341 Meeting @ 9 minutes 20 seconds).

20.     Section 3 of the PSA specifically provides:

"For the avoidance of doubt, *only upon the payment in full of the Purchase Price in accordance with Section 2*, will the registration of the Domain Name (as well as all Intellectual Property rights associated with the Domain Name) be transferred to and registered in the name of the Buyer, concurrently by such action, all right, title and interest of any kind associated with the Domain Name, including but not limited to all intellectual property rights, and all trademark rights, to the extent such rights exist, shall automatically pass to the Buyer."

(Emphasis added)

21.     PSA Section 7(iii) provides in pertinent part:

 "*For the avoidance of doubt, except for the use rights described in Section 5, the Buyer shall have no ownership or other interest in the Domain Name until the Purchase Price is paid in full*."

(Emphasis added)

22.     The Debtor started this case with a false and misleading petition and schedules which misstated the nature and amount of Stacks claim and which attempted to conceal the fact

---

[3] Dollar amounts have been redacted in accordance with consent order entered as ECF Docket No. 39.

[4] At the 341 Meeting of the Debtor held on April 24, 2019(the "**341 Meeting**"), Mr. Perzow testified on behalf of the Debtor. There is no transcript of the 341 Meeting. Movant obtained from the U.S. Trustee an audio recording of the meeting and references to "341 Meeting @ __ minutes __ seconds" are to Mr. Perzow's testimony at the 341 Meeting.

that this was a single asset two party dispute between Stacks and the Debtor over the Domain Name.  The Debtor continues to file false, baseless and inflammatory pleadings.

23.    The Debtor's Schedule A lists the $300,000 Initial Payment to Stacks under the PSA as a Deposit and asset of the Debtor. Pursuant to the express terms of the PSA, including §§ 2 and 12, the Initial Payment was a non-refundable payment of the Purchase.   The Scheduling of the Initial Payment as anything other than that put the entire PSA at issue in this case. A copy of the ECF Docket No. 9 is attached to the Teitelbaum Decl. as **Exhibit A.**

24.    The Debtor's petition and Schedule F identifies Stacks claim as a $1.3 million balance on an unsecured loan. (Teitelbaum Decl., **Exhibit A**). As of the Petition Date, the balance due to Stacks was calculated by simple subtraction (the Purchase Price less the Initial Payment). The balance due was $1.4 million. The Debtor falsely scheduled the amount as $1.3 Million and then repeatedly tried to defend that amount at the 341 Meeting thereby putting the entire PSA at issue. (341 Meeting @ 10 minutes 3 seconds and 19 minutes 6 seconds). Stacks has filed a proof of claim in the amount of $1.4 Million.

25.    In addition, there is no legal or factual basis for the contention that the amount due to Stacks is an unsecured loan balance. At the 341 Meeting, Mr. Perzow testified that there was no promissory note between the Debtor and Stacks and that the only documents evidencing the transaction between Stacks and the Debtor are the PSA and Escrow Agreement. (341 Meeting 9 minutes 6 seconds). Nowhere in the PSA or the Escrow Agreement is the amount due to Stacks identified as anything but the Purchase Price for the Domain Name.  No funds were loaned to the Debtor.

26.    The Debtor's Schedule A/B (Teitelbaum Decl., **Exhibit A**) identifies the Domain Name as an asset owned by the Debtor and that the value of the Domain Name with another

domain name identified as [www.rarex.com](www.rarex.com) is $5 million or more. Mr. Perzow testified at the 341 Meeting that the Debtor does not have an appraisal or any basis for such a valuation, that the majority of the value is attributable to the Domain Name and that the rarex.com domain name was purchased from Mr. Gati in December 2018 for $15,000.00 (341 Meeting @ 18 minutes 20 seconds).

27.     Moreover, despite the express language in the PSA that the Debtor has no ownership or registration rights or interests in the Domain Name, Mr. Perzow repeatedly testified at the 341 Meeting that the Debtor was the owner of the Domain Name. (341 Meeting @ 7 minutes 17 seconds and 20 minutes 50 seconds). Once again the terms and conditions of the PSA were put into issue by Mr. Perzow's false and baseless claims.

28.     The Debtor's Schedule D identifies Latin Lending Group as a secured creditor with an alleged claim in the amount of $20,000 secured by the rarex.com domain name.  Upon information and belief, Latin Lending is Mr. Gati. The scheduled value of rarex.com is One Thousand Five Hundred Dollars ($1,500.00). It strains credulity to argue that rarex.com has any value to this estate or any relevance to the administration of this bankruptcy case.

29.     The Debtor's Statement of 20 Largest Creditors (ECF Docket No. 2) (Teitelbaum Decl., **Exhibit B**) identifies 18 creditors in total, including (i) Stacks at the incorrect amount of $1.3 Million, (ii) Josh Perzow at $180,000, (iii) Barbara Etinson at $150,000, (iv) Ari Gati at $105,000, and (v) 13 others with claims ranging from $5,750 to $10.00 and aggregating approximately $13,000. The Debtor's statements, schedules and Mr. Perzow's 1007 Affidavit fail to identify Josh Perzow and Barbara Etinson, as the bother and mother of Adam Perzow. In fact, when questioned by the U.S. Trustee about the Etinson claim, Mr. Perzow did not identify Ms. Etinson as his mother. It was only upon further examination by counsel to Stacks that this

relationship was disclosed. (341 Meeting @ 15 minutes 29 seconds and 29 minutes 15 seconds). Josh Perzow and Barbara Etinson are statutory insiders of the Debtor. (Bankruptcy Code §101(31) (B) (vi)). Pursuant to the specific instructions on Official Form 204, these claims should not have been included in the list of 20 Largest Creditors. It is clear that the Debtor included these insider and friendly claims to give the appearance of other significant creditors being impacted by the case.

30.     Moreover, at the 341 Meeting, Mr. Perzow testified that the amounts scheduled as due to Josh Perzow and Barbara Etinson (i) were allegedly advanced to the Debtor at the time of the start-up of the Debtor in February 2018 (341 Meeting Recording @ 17 minutes 43 seconds); (ii) are not evidenced by any promissory note or other writing (341 Meeting @ 28 minutes 25 seconds and 29 minutes 15 seconds); (iii) are not subject to any stated maturity or repayment date or terms (341 Meeting Recording @ 17 minutes 43 seconds); and (iv) are to be repaid with 10% interest "whenever they are repaid" (*Id)*. To the extent these funds were actually provided to the Debtor, the characterization of the amounts due to family members as debt as opposed to equity is highly suspect and requires independent review.

31.     The Debtors statements, schedules and 1007 Affidavit do not identify the actual relationship with or basis of the scheduled $105,000 claim for Ari Gati. Mr. Perzow testified at the 341 Meeting that not only did he purchase the rarex.com domain name from Mr. Gati, but Mr. Gati provided services to the Debtor for about a year and the amount scheduled was unpaid compensation. (341 Meeting @15 minutes 30 seconds). However, there was no explanation as to Mr. Gati's title or role or compensation structure or why he worked for a year without pay. The scheduled claims for Mr. Gati do not appear to be supported by any documentation, are highly suspect and require independent review.

32.     Mr. Perzow testified that the Debtor has not launched its business, has no operations, no revenue and no employees. (341 Meeting @ 11 minutes 59 seconds, 23 minutes 40 seconds and 24 minutes 35 seconds and Mr. Perzow's 1007 Affidavit (ECF Docket No. 3 at ¶3)).

33.     As to the issue of confidentiality with respect to the PSA, Stacks does not agree that the PSA or any of the information therein is the type of information which could or should be considered confidential, proprietary or a trade secret or subject to any intellectual property protections such as patents or copyrights. Moreover, while Stacks acknowledges that the PSA contained a confidentiality provision, Mr. Perzow, by his actions waived any applicable contractual confidentiality.

 a.  In its initial filings with this Court, Mr Perzow knew that the balance due to Stacks was $1.4 million but caused the Debtor to schedule the balance due to Stacks under the PSA as $1.3 million, defended the scheduled amount at the 341 Meeting, thereby putting the terms of the PSA, including the Purchase Price at issue.

 b.   In its initial filings with this Court, the Debtor intentionally misrepresented that the Initial Payment was a deposit and an asset of the Debtor, thereby putting the PSA at issue.

 c.  In its initial filings with this Court, the Debtor scheduled the Domain Name as owned by the Debtor, contrary to the provisions of the PSA, thereby putting terms of the PSA, including the issue of ownership, at issue.

 d.  In its initial filings with the Court, the Court, the Debtor scheduled claims of $1 million against Stacks for alleged breaches of the PSA and testified at the 341

about such alleged claims, thereby putting the terms of the PSA, including the Debtor's and Stacks rights and obligations under the PSA at issue (341 Meeting @ 25 minutes 54 seconds).

e.   During the 341 Meeting Mr. Perzow testified about, among other things (i) his understanding of the terms, legal effect and Debtor's rights  under the PSA including his assertion that the Debtor owned the Domain Name (341 Meeting @ 7 minutes 17 seconds and 20 minutes 50 seconds), (ii) that the Domain Name was registered with and in the possession of the Escrow Agent (341 Meeting @ 9 Minutes 20 seconds), (iii) alleged claims asserted or to be asserted by the Debtor against Stacks under the PSA (341 Meeting @ 10 Minutes 3 seconds and 25 minutes 54 seconds), (iv) the specific amount of the Purchase Price (341 Meeting @ 8 minutes 50 seconds), and (vi) his defense of the $1.3 million incorrect scheduled balance due to Stacks (341 Meeting @ 8 minutes 50 seconds and 19 minutes 6 seconds).

f.   During the course of the 341 Meeting, Mr. Perzow consented to the U.S. Trustee receiving a copy of the PSA and a copy of the PSA and Escrow Agreement was provided to the U.S. Trustee without objection or any assertion of confidentiality (341 Meeting @ 31 minutes 50 seconds).

g.   At no time during the 341 Meeting did Mr. Perzow assert that any aspect of the PSA was confidential or request that the record of the proceedings be sealed or that the PSA be subject to a confidentiality order.

34.   As evidenced by the latest operating report for August 2019 filed as ECF Docket No. 43, there is still no income, no cash and no business.

35.     Once the insiders and friend/lender (i.e. Mr. Gati) of Mr. Perzow are eliminated, the only creditors of the Debtor are Stacks at $1.4 Million, and 13 others with claims ranging from $5,750 to $10.00 and aggregating approximately $13,000.

36.     As of the date of the filing of this objection, Stacks is the only party which has filed a notice of appearance and/or a proof of claim.

37.     This case was filed to avoid a two party dispute.

38.     The Plan filed by the Debtor is predicated upon the same premise as the plan in *In re Heath Global, Inc.,* a forced modification of the terms of the PSA.  As the Court held in *Heath Global,* the Debtor cannot modify the terms of the PSA in a plan absent the consent of Stacks.  Simply, there is no confirmable plan and no business to reorganize.

39.     As set forth in the Spencer Declaration, the unsupported allegations and conclusions regarding the Action are baseless and false.

40.     As set forth in the Teitelbaum Declaration, the unsupported and scurrilous allegations regarding the August 9 hearing are false.

**Facts of Heath Global**

41.     In 2012, Mr. Perzow, the sole principal of Heath Global, Inc. ("**Heath**"), filed a Chapter 11 case in the Southern District of New York (the "**Heath Chapter 11**"). The Heath Chapter 11 was assigned to Judge Chapman.  *In re Heath Global, Inc.,* Case No. 12-10511.

42.     The facts of the Heath Chapter 11 are addressed herein as they are identical to the facts of this case and is a "badge of fraud" evidencing Mr. Perzow's fraudulent business model and intention to defraud Stacks into executing the PSA.

43.     The facts of *In re Heath* are: (i) Heath entered into a purchase and sale agreement to purchase a domain name with an initial payment due and the balance to be paid over time; (ii)

Heath and the seller also executed an escrow agreement pursuant to which the registration of the domain name was held until the purchase price was paid in full; (iii) Heath made **only** the first payment and then defaulted; and (iv) when the seller refused to renegotiate the terms of the purchase agreement and sought to enforce its contractual remedies, Mr. Perzow filed the Heath Chapter 11. *In re Heath Global, Inc.* 492 B.R. 650, 652-654 (S.D.N.Y. 2013), *reargument denied,* 2013 U.S. Dist. Lexis 180683 (S.D.N.Y. 2013).[5]

44.     Seller commenced an adversary proceeding seeking a declaratory judgment that the purchase agreement had been terminated pre-petition. The parties each moved for summary judgment. The bankruptcy court granted seller's motion, holding that the purchase agreement was an option contract which had been terminated pre-petition. *Id.* On appeal, the District Court reversed, holding that the seller had not completed the termination pre-petition, that the purchase agreement was not an option contract, and that the purchase agreement was a binding agreement to sell the domain name for the purchase price to be paid pursuant to the schedule set forth in the agreement. *Id.* at 660. The matter was remanded to the bankruptcy court for further proceedings, including a determination as to whether the purchase agreement was an executory contract and/or a secured loan transaction. *Id.* at 657-658; 2013 U.S. Dist. Lexis 180683 at *5-6 (S.D.N.Y. 2013).

45.     On remand, on June 4, 2014, Judge Chapman rejected Heath's argument that Heath had granted the Seller a security interest in the domain name to secure the repayment of the purchase price as a loan. Judge Chapman found:

> . . . I am left with the question of what this agreement is and what the Debtor's rights are under the agreement.

---

[5] A copy of the District Court Decision and decision on reargument setting forth the facts of the case is attached to the Teitelbaum Decl. as Exhibit C.

At the outset of the case, and it is significant, I think, to note that this occurred at the outset of the case, the Debtor took the position in its Schedules and other pleadings that this was a secured transaction.

And I believe that the reason that position was taken was because with a secured transaction, a typical secured transaction, you have the ability to cure missed payments.

You have a mortgage, you have monthly payments that were due, you missed them. You go into default.

If you couldn't cure those through a Plan, there would be no point. And I think that was -- and I'm speculating somewhat, but I'm guessing that that, understandably, might have been one of the drivers behind characterizing the agreement as a secured transaction.

**The agreement is not a secure[d] transaction. In order for there to be a secure[d] transaction, among other things, there would have to be something that remotely resembles a security agreement, and there is not.**

**And there would also have to be a pledge, if you will, of property and the liening up of property that's owned by the Debtor.**

**The domain name does not fit the bill. The domain name is in escrow. The Debtor does not have title to the domain name. The Debtor cannot pledge something that it does not own as security, so it's not a secure[d] transaction.**

A copy of the transcript of Judge Chapman's decision is attached to the Teitelbaum Decl. as

**Exhibit D**. Tr. at pp 5-7 (emphasis added).

46.     Counsel for Heath also attempted to argue that the purchase agreement was an executory contract.  Judge Chapman rejected the argument based on judicial estoppel; but further stated that the agreement is "not an executory contract under the Countryman analysis" because the only obligations remaining were the payment of money and negative covenants which did not "elevate the contract to the level of being an executory contract." Tr. at p.8, lines 16-25. [6]

---

[6] Stacks recognizes that Judge Chapman's statement on this point may impact its MTD/Compel; however, Judge Chapman did not squarely rule on whether the purchase agreement would be an executory contract under the approach advocated in the MTD/Compel and adopted in several

47.     Importantly, Judge Chapman further analyzed the agreement stating "Even if the contract were to be characterized as an executory contract, I don't believe that it is capable of being cured and assumed or assumed and cured." Tr. at p. 9, lines 1-4. Judge Chapman provided a detailed analysis:

> In effect, the Debtor would have this contract be turned into an open-ended agreement in which it contracted to purchase the domain name pursuant to a set schedule, determined that it could not perform by making the payments that were due, and then, by affecting the filing in a way that precluded the Debtor from the - - I'm sorry, the counterparty from terminating, in essence gives the Debtor an open ended, if you will, agreement, in which at the end of the day it tenders the contemplated payments on some time schedule, and then gets the domain name. And that's not what Mr. Magner contracted for.

> And I believe that to construe 108 that way, and the provisions of the Code that deal with the assumption and assignment of executory contracts, would really create a very large loophole in the way this is supposed to operate, and give the Debtor, who is party to an executory contract, far more power than anything that's contemplated by the Bankruptcy Code.

> **So, notwithstanding the infirmities in the drafting of the opinion, I believe that this is a unique situation in which you have an un-terminated agreement that is either not executory, or, if it is executory, it's not capable of being assumed and cured.**

> What bolsters my view, as I struggled to figure out exactly what this was, I thought, well, is it a claim?

> Is this like a situation in which a widget manufacturer sells a debtor widgets, and then doesn't pay, and then the widget manufacturer, in the debtor's bankruptcy, there's an agreement, but they have a claim because the debtor has the widgets and the widget manufacturer doesn't have the money.

> **The difference is that the Debtor here doesn't have the widget. The widget is in escrow, and the Debtor is not entitled -- was not entitled to have the widget until it received payments. The payments that were bargained for were payments on those specific dates, which have come and gone.**

---

cases in this Circuit- - that an executory contract "is one on which performance remains due to some extent on both sides." *In re Penn Traffic Co.*, 524 F.3d 373, 378, 379 (2d Cir. 2008); *In re Lyondell Chem. Co.*, 2014 U.S. Dist. LEXIS 32899 at *11 (S.D. N.Y. 2014).

> **Therefore, there is a failure of consideration and there's a contract that is incapable of being further performed in the absence of some kind of a waiver by Mr. Magner.**

Tr. at pp. 10 - 11, lines 1-14 (emphasis added).

48.    Finally, Judge Chapman rejected Heath's attempt to cure the payment defaults and revise the contract pursuant to a chapter 11 plan.

> Now, I acknowledge that in the latest rounds of pleadings, and I believe we're one week away from the deadline set for the filing of the Plan, the notion is that the agreement would be assumed, cured, sold, et cetera.

> But, in order to do that, there has to be rights that reside in the Debtor, which the Debtor can address in the Plan.

> **And for the -- I think I count five different levels of reason that I've just articulated to you, I don't believe that there are any such remaining rights that could be dealt with by a Plan.**

Tr.at p. 11, lines 15-25 (emphasis added).

> I recognize that it's a harsh result, but this case has always been about a harsh result. It's always been in the absence of a settlement, one party or the other, and we've been at this for about two years.

Tr.at p. 12, lines 1-4.

49.    Following that ruling, Heath negotiated a settlement with seller.

50.    Judge Chapman's analysis and conclusions on virtually identical facts are relevant in this case. Heath (i) could not, as a matter of law, cure the payment defaults or modify the terms of the purchase agreement in a plan; (ii) could not confirm a plan which proposed a modification of the purchase agreement unless the counterparty consented, and (iii) had no ownership interest in the domain until payment in full of the purchase price.

### The Action

51.    Upon learning of Mr. Perzow's history in Heath, Stacks concluded and believed that Mr. Perzow knowingly and intentionally misrepresented material facts to induce Stacks to enter into the PSA and that this was part of a pattern or practice of Mr. Perzow to defraud

parties to sell assets to a shell which he controlled and which he knew could not and would not pay the purchase price.

52.    Stacks determined after consultation with counsel that Mr. Perzow's representations were outside the scope of his duties as an officer of the Debtor and there were separate claims against Mr. Perzow for fraud in the inducement in connection with the PSA.

53.    Debtor's argument that the Action is frivolous and was commenced in bad faith is without reference to applicable law and without any evidentiary support.

54.    First, there is a basis for a separate action against Mr. Perzow. The principal of an entity may be determined to be acting outside the scope of his duties and held personally liable for fraudulent statements which induce a party to enter into a contract and the principal does not have an indemnity claim for such liability. *See generally In re Dynegy Inc.,* 486 B.R. 585, 594 (Bankr. S.D.N.Y. 2013); *In re Trump Hotels Shareholder Derivative Litig.,* 2000 U.S. Dist. LEXIS 13550 at *54 (S.D.N.Y. 2000) (under Delaware law, corporation is prohibited from indemnifying officer or director breach of the duty of loyalty to the corporation or its stockholders, for acts or omissions not in good faith or involving intentional misconduct or for any transaction for which the director derived an improper personal benefit); *Grika v McGraw,* 2016 N.Y. Misc. LEXIS 5026 (N.Y. Sup. Ct. 2016) (New York Business Corporation Law §402(b) prohibits company from providing indemnity for bad faith, intentional misconduct, a knowing violation of the law, or actions taken for personal financial profit).  *See also* Spencer Decl.

55.    In the Action, Stacks alleges that Mr. Perzow hid is true identity to delay Stacks learning of his prior actions in the Heath Chapter 11, misrepresented his professional background to add credibility to his personal ability to carry out the transaction, misrepresented

16

that he had access to resources sufficient to permit Hampstead to pay the Purchase Price on the agreed upon schedule, and misrepresented that he would cause the Debtor to pay the Purchase Price.

56.     Second, as set forth in the Spencer Decl., Stacks has not sued the Debtor and does not seek any recovery against any property of the estate. The Action is solely against Mr. Perzow for his separate tort. (Spencer Decl. ¶18).

57.     The Debtor's claims regarding the "John Doe" pleading is a red herring. As set forth in the Spencer Decl., Stacks followed standard California pleading practice and included "Does" in the caption.  This is a practice employed in virtually all civil cases in California to address potential statute of limitations issues for unknown defendants which are subsequently identified and added to the action. As with "John Doe" practice in this Circuit, California pleading does not permit parties to use a "John Doe" defendant as a substitute for naming and joining known and identified parties. *See, e.g., Ceara v. Deacon*, 916 F.3d 208, 214 (2d Cir. 2019). (Spencer Decl ¶¶ 13-17).

58.     The unsupported allegations and conclusions in the Debtor's Motion and Supplemental Memo are readily refuted.

   a.   As set forth in the Spencer Decl., this is an action only against Mr. Perzow for compensatory damages in the amount of $1.4 million based upon Mr. Perzow's fraudulent inducement of Stacks to enter into the PSA. There is no breach of contract claim and the reference to a $10 million claim is Stacks' claim for exemplary and punitive damages. (Spencer Decl. ¶¶ 28-29).

   b.   The reference to Hampstead as a defendant in the body of the complaint is admitted to be a typographical error; but more importantly not of any legal

significance as Hampstead is neither a named defendant nor the subject of any demand for relief. The Debtor is not a defendant and no claims are asserted against any property of the estate or for breach of contract with the Debtor. (Spencer Decl. ¶¶ 24-26, 28-29).

c.  The allegation that Stacks prosecuted the Action after the filing of the Motion is false. The Debtor's intentional failure to attach Stacks' application, which the Debtor references, is a fraud on the Court. As set forth in the Spencer Decl., Stacks filed an application to extend the time to serve the summons and complaint to maintain the status quo. California, like New York's CPLR 306-b and Fed. R. Civ. P 4(m) requires service of the summons within a specified time after the action is commenced to avoid dismissal. As Perzow had been evading service of the complaint, the sole purpose of the application was to extend the time to effect service until after this Motion was determined to avoid dismissal of the Action. (Spencer Decl. ¶23). No action was taken against the Debtor, the estate or even Mr. Perzow.

d.  As set forth in the Spencer Decl., the PSA was not appended to the Action because Stacks did not assert a breach of contract claim under the PSA. Under California law Stacks was not required to attach the contract in support of its fraud claim against Mr. Perzow. Stacks neither admits nor agrees that the PSA was confidential at the time the Action was commenced. (Spencer Decl. ¶¶30-31).

59.  The Debtor also contends that the Action is barred by Sections 7(b) (ii) and 8 of the PSA. First, Section 7(b)(ii) is a representation that the "Buyer is prepared to pay the Initial Payment in immediately available funds by the date indicated herein". Since there is no dispute

that the Initial Payment was made and that the complaint in the Action credits the amount received against the damages claimed, Debtor's reference to this section is irrelevant.

60.     Second, Section 8 is a general merger and integration clause which provides, in pertinent part:

> This Agreement, including the attached Escrow Agreement . . .constitutes the sole and entire agreement of the parties with respect to the subject matter contained herein, and supersedes all prior and contemporaneous understandings, agreements, representations and warranties, both written and oral, with respect to such subject matter. The parties also waive any and all reliance and inducement claims of any kind. . . .

61.     As set forth in the Spencer Decl., under California law, such a merger and integration clause does not preclude a claim against a principal of the entity for fraudulent inducement as alleged in the Action. This is also the case under New York law. *See Wall v. CSX Transp., Inc*., 471 F.3d 410,417 (2d Cir. 2006) (New York also permits the use of parol evidence to prove a claim of fraud in the inducement, even where the written contract contains an integration or merger clause. *Deerfield*, 68 N.Y.2d at 956, 502 N.E.2d at 1004, 510 N.Y.S.2d at 89; *Hobart v. Schuler*, 55 N.Y.2d 1023, 1024, 434 N.E.2d 715, 716, 449 N.Y.S.2d 479, 480 (1982) (commenting that even "a merger clause is generally insufficient to bar parol evidence of a fraudulent misrepresentation")); *Alpha Capital Anstalt v. Oxysure Sys*., 252 F. Supp. 3d 332, 341 (S.D.N.Y. 2017) (same). Spencer Decl. ¶¶ 19-21.

62.     The Action is neither frivolous nor brought for an improper purpose. The Action was commenced to hold Mr. Perzow accountable for his independent fraudulent conduct.

### The Motion

63.     The Debtor has the burden of proof to demonstrate unusual circumstances supporting an extension of the automatic stay to a non-debtor. *Marcelino v. Mon Cher 57 Inc.,* 2019 U.S. Dist Lexis 100176 *6-8 (S.D.N.Y. 2019)

64.     There is no affidavit of anyone with any personal knowledge of a single fact in support of the Motion. There is no evidence of a single allegation in the Debtor's Memorandum of Law or Supplemental Memo.

65.     There is no evidence of any actual damages to the Debtor.

66.      Mr. Higgs submits an affidavit attaching pleadings, a memorandum of law and the Supplemental Memo. Mr. Higgs was not present in Court on August 9 nor was he a party to any conversations between attorneys Teitelbaum and Aisner. Mr. Higgs is not a fact witness.

67.     There is no evidence as to how the Debtor intends to confirm a Chapter 11 plan other than by modifying the terms of the PSA.

68.     There is no evidence that there is any business to reorganize.

69.     There is no evidence that the Action has impacted the reorganization or how it has or will irreparably harm the estate. In both the Memorandum of Law and the Supplemental Memo, the Debtor's counsel states:

> By failing to disclose the existence of the California Action, which was clearly filed in violation of the automatic stay, ***Creditor stay violation has likely caused*** Debtor to suffer significant damages. Since the filing of this Bankruptcy Case Debtor has been in discussions with a number of companies, including publicly traded companies, regarding a potential partnership with the Debtor. The Debtor has engaged in these negotiations and discussions, without any knowledge of the California Action, ***undoubtedly the California Action has severely interfered*** with the Debtor's negotiations during this bankruptcy.

(Memo of Law at pp.8-9).(emphasis added)

> While the Debtor was unaware of the California Action until it was disclosed after the bankruptcy status conference on August 9th, ***the California Action is public record and therefore would have been discovered*** by any of the companies or potential investors that the Debtor has been in discussions with throughout this bankruptcy regarding possible investment, partnership or sale. ***Debtor believes that the California Action has already caused several parties the Debtor was in discussions with to cease discussions*** with the Debtor, resulting in substantial damages to the Debtor in the form of lost opportunity.

(Supplemental Memo at p.5). (Emphasis added)

20

70.    Such statements in a memorandum of law are evidence of nothing. Moreover, even assuming such rank speculation was contained in an affidavit by Mr. Perzow, they are not evidence of anything.  Indeed, even assuming arguendo that Mr. Perzow has had conversations with anyone (a statement for which there is no evidence), and such persons were concerned about the Action, common sense dictates that at least one such person would have asked Mr. Perzow about the Action. So, either Mr. Perzow is misrepresenting the fact that he has had conversations to raise funds to support a Chapter 11 Plan, or he is misrepresenting the reasons such discussions have not materialized into a deal, or he is misrepresenting that he did not know about the Action prior to August 9.

71.    Finally, the Action does not explain why Mr. Perzow has been unable to raise $1 to pay the Purchase Price between April 2018 and May 10, 2019 (the date the Action was commenced).  If Mr. Perzow is correct in his belief that publicly available information would affect his credibility, then this Court should also consider that the publicly available decision in *In re Heath Global* shined a less than favorable light on how Mr. Perzow does business.

## Argument

### The Automatic Stay Does Not Apply To The Action

72.    The Motion assumes that any action against the principal of a debtor is barred by the automatic stay. That is not the law. Rather, it is an exception to the law made only after an evidentiary finding by a court of unusual circumstances sufficient to justify an extension of the automatic stay to such non-party.

73.    The starting point must be Bankruptcy Code §362(a) which operates as a stay against the debtor and property of the debtor and does not encompass actions against non-bankrupt parties. *Teachers Ins. & Annuity Assn of Am. v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986);

*N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC,* 564 B.R. 192, 195 (S.D.N.Y. 2016); *DeSouza v. Plusfunds Group, Inc*., 2006 U.S. Dist. LEXIS 53392 at \*\*5-6 (S.D.N.Y. 2006).

74. In *DeSouza, supra*, the court held that "in unusual situations, however, "a court may extend the automatic stay to non-bankrupt co-defendants of the debtor." *DeSouza,* 2006 U.S. Dist. LEXIS 53392 at \*\*5-6. Extending the stay based upon unusual circumstances requires a fact sensitive inquiry which results in a determination by the bankruptcy court that the action against the non-debtor would "pose a serious threat to the debtor's reorganization efforts" or "danger of imminent, irreparable harm to the estate or the debtor's ability to reorganize". *Id. at* \*\*7-8 (citing *CAE Indus. Ltd*., 116 B.R. 31, 34 (Bankr. S.D.N.Y. 1990) "In the absence of evidence which demonstrates any impact upon the debtor's reorganization effort, the stay cannot be extended to a solvent co-defendant" and *In re United Health Care Org.,* 210 B.R. 228, 233 (S.D.N.Y. 1997)).

75. Similarly, the court in *Velasquez v. Metro Fuel Oil, Corp.,* 2012 U.S. Dist Lexis 166486 at \*4 (E.D.N.Y. 2012), citing *Queenie, Ltd. v. Nygard Int'l, 321 F.3d 282, 287 (2d Cir. 2003),* and relying upon *DeSouza, supra,* declined to extend the stay to a non-debtor alleged joint tortfeasor holding:

> The Second Circuit has provided three examples of unusual circumstances: (1) a claim to establish an obligation of which the debtor is a guarantor; (2) a claim against a debtor's insurer; and (3) cases where "there is such identity" between the debtor and co-defendant that the debtor "may be said to be the real party defendant." *Id. at 288* (citation omitted). However, "a 'stay clearly cannot be extended to the non-debtor' under the unusual-circumstances test 'where the debtor and non-debtor co-defendant 'are joint tortfeasors . . . .'"

76. In *Marcelino v. Mon Cher 57 Inc.,* 2019 U.S. Dist Lexis 100176 \*6-8 (S.D.N.Y. 2019) the District Court held:

**Moreover, as the court in *DeSouza* noted, "[t]he plain language of *§ 362(a)(1)* limits the extension of an *automatic stay* to a 'proceeding against the debtor,' and courts will generally not extend the *automatic stay* of proceedings pursuant to *§ 362(a)(1)* to non-debtor co-defendants."** *DeSouza, 2006 U.S. Dist. LEXIS 53392, 2006 WL 2168478, at *2* (citations omitted). There are occasions, however, where "unusual circumstances" will warrant an extension of the *automatic stay* to non-bankrupt co-defendants of the debtor. . . . As articulated by the Second Circuit in *Queenie, Ltd.*, the essence of this exception is "whether there are 'strong ties' between the non-debtor and the debtor such that a judgment against the non-debtor 'will have an immediate adverse economic consequence for the debtor's estate or the liability of the non-debtor will be imputed to the debtor by operation of law.'" *Id.* (quoting *Queenie Ltd., 321 F.3d at 287*). In addition, the stay is extended if failure to do so would pose "a serious threat to the debtors' reorganization efforts." *DeSouza, 2006 U.S. Dist. LEXIS 53392, 2006 WL 2168478, at *2* (citation omitted).   But courts are also obligated to consider whether an extension of the stay to the non-bankrupt defendants "would work a hardship on plaintiffs, by giving an unwarranted immunity from suit to solvent codefendants. . . .

**The non-bankrupt defendants "bear the burden to demonstrate that an extension of the stay is warranted based upon the unusual circumstances impacting [the bankrupt defendants'] reorganization effort." *DeSouza, 2006 U.S. Dist. LEXIS 53392, 2006 WL 2168478, at *2***

(emphasis added).

77.    In addition as the Court in *Velasquez v. Metro Fuel Oil, Corp.,* 2012 U.S. Dist Lexis 166486 at *4 determined, unusual circumstances cannot be based upon the acts of a joint tortfeasor with the debtor.   Mr. Perzow cannot hide from his own tort.

78.    In this case, the Debtor has not offered a scintilla of evidence as to how the Action poses a serious threat to the Debtor's reorganization or how it or a judgment against Mr. Perzow has or will have an immediate and adverse impact on the Debtor or any asset of the Debtor.

79.    According to the Plan, payment of creditors is contingent upon a sale of the Domain Name or a capital infusion based upon the value of the Domain Name. Mr. Perzow's statement that he will use personal assets to fund a plan appears to refer to payment of administrative expenses and otherwise minimal payments to buy 12 to 18 months to sell the

Domain Name or raise capital. Moreover, there is no evidence of the amount of the payments or feasibility, including proof of financial ability to make any payment.

80.     There is no evidence as to Mr. Perzow's solvency or the impact a judgment against him may have on his ability to fund these undisclosed amounts. The hollow statements in the Plan are made only to try to buy time for Mr. Perzow.

81.     Mr. Perzow has not alleged or demonstrated any unique ability to obtain financing or a purchaser. To the contrary, Mr. Perzow, by filing the Chapter 11 admits that he has been incapable of obtaining financing or a locating a purchaser for the Domain Name since April 2018. Mr. Perzow is quick to blame the economic environment and Stacks for his inability to close a deal (341 Meeting @ 24 minutes 34 seconds); however, his refusal to acknowledge any responsibility is telling.

82.     It is submitted that Mr. Perzow is not necessary to this Chapter 11.  Given that the debt in this case (even including insider claims) is a fraction of the alleged value of the Domain Name, if this bankruptcy case is to proceed, an auctioneer or trustee can more efficiently and objectively review the claims and sell the Domain Name in a fraction of the time and pay creditors in full.

83.     Finally, the cases cited in the Motion are readily distinguishable and do not support the Motion.

- In *In re Congregation Birchos Yosef,* 535 B.R. 629, 633 (Bankr. S.D.N.Y. 2015), this Court found that the commencement of religious proceedings against the principals of the debtor was for the sole purpose of intimidating the principals of the debtor (and their families) and to interfere with the bankruptcy case. The court found an identity of interest between the claims asserted in the religious

proceeding which, among other things, sought to restrain the principals of the debtor from exercising their duties as fiduciaries to the estate and the bankruptcy proceeding.

- The court in *Gucci, Am., Inc. v. Duty Free Apparel, Ltd.,* 328 F. Supp. 2d. 439, 441 (S.D.N.Y. 2004) refused to extend the stay to a non-debtor, and distinguished both *In re North Star Contracting Corp.,* 125 B.R. 368 (S.D.N.Y. 1991) and *In re Lomas Fin. Corp.,* 117 B.R. 64 (S.D. N.Y. 1990) which are relied upon by the Debtor on the ground that such cases found unusual circumstances based upon an identity of interest arising from the estate's obligation to indemnify the non-debtor parties. No such indemnity is alleged or evidenced in this case.

- Finally, the Debtor relies upon this Court's bench ruling in *In re Delphi Corp. Case No. 05-44481.* A copy of the ruling is attached to the Teitelbaum Decl. as **Exhibit E**. In that case, this Court found that the automatic stay, which had been previously extended to apply to executives of Delphi, applied to another executive who was admittedly "being sued only for what Delphi allegedly did, as a representative." (Ruling at p. 6). This Court determined that the automatic stay extended to the executive based upon an identity of interest between the debtor and non-debtor where the plaintiff admitted that he was being sued only in his representative capacity and would be indemnified by the debtor. (Ruling at p. 5). The Action is against Mr. Perzow in his individual capacity for his separate and independent fraudulent misrepresentations.

## There Is No Basis For Actual Or Other Damages

84.     In order to recover damages for a violation of the automatic stay, the Debtor has the burden of proving (i) a willful violation of the automatic stay; and (ii) damages. *In re Manchanda*, 2016 Bankr. LEXIS 2056 at *15 (Bankr. S.D.N.Y. 2016); *In re Sturman*, 2011 U.S. Dist. LEXIS 109599, 2011 WL 4472412, at *3 (S.D.N.Y. 2011)(where no injury results from the violation of the automatic stay, an award of damages is clearly inappropriate).

85.     A violation is willful if the debtor proves that the party took a deliberate act when the party knew the stay was in effect. *Id.*

86.     As set forth above, as a matter of law, the automatic stay does not extend to claims against non-debtors, but can be extended by an order of the Court based upon the requisite factual findings of unusual circumstances.

87.     Absent extraordinary circumstances such as in *In re Congregation Birchos Yosef*, it cannot be that, as a matter of law, acts taken against a non-debtor prior to the entry of an order extending the automatic stay can be deemed a willful violation of the automatic stay.

88.     In *In re Congregation Birchos Yosef* the parties commenced a religious proceeding against principals of the debtor post-petition intending to affect the bankruptcy case and knowing the effect of such a proceeding on the principals of the debtor and for the express purpose of interfering with the bankruptcy process by threatening and intimidating the principals and their families within their community, and obtaining a religious injunction against the principals carrying out their fiduciary duties in the bankruptcy case. That is a far cry from commencing a civil fraud action against Mr. Perzow.

89.     Cases cited by Debtor, such as *In re Jean Francois*, 532 B.R. 449 (Bankr. E.D.N.Y. 2015) and *In re Sucre*, 226 B.R. 340 (Bankr. S.D.N.Y. 1998) (Motion at pp 6-8) also do not support Debtor's claims. Both cases involved ***post-petition actions against a debtor***. In

*In re Jean Francois,* the lender evicted the debtor after the lender knew that the debtor had filed a bankruptcy case. *In re Sucre* involved post-petition wage garnishment of the debtor's wages.

90.    The Debtor has not offered any evidence to meets its burden of proof for an order extending the automatic stay to Mr. Perzow or that the stay has been violated.

91.    The Debtor has not offered any evidence in support of its claim that Stacks acted in bad faith, with malice or with a principal purpose of harassing the Debtor in connection with the Action.

92.    The Debtor has not offered any evidence in support of its allegation that Stacks has acted in a manner which presents a "pattern of bad faith actions in the bankruptcy".

93.    The Debtor has not offered any evidence in support of any actual damage. Conclusory statements and speculation about possible or likely damage is irrelevant and inadmissible.

94.    Stacks denies that it violated the automatic stay or acted in bad faith, maliciously or with any improper purpose in connection with the Action, the PSA or the Bankruptcy and denies that the estate has a claim for any damages.

95.    There is no basis for any award of damage.

### Conclusion

96.    The Motion is without a legal or factual basis. The Debtor has not met its burden of proof. The Motion is an attempt to distract the Court from the fact that there is no reorganization in prospect and from Mr. Perzow's unethical business conduct which, among other things evidences his lack of fitness as the principal of a debtor in possession.   The evidence is that Mr. Perzow, in at least two separate transactions: (i) entered into a contract for the purchase of a domain name with no intention of paying the agreed upon price; (ii) obtained

the use of a domain name without paying for it; (iii) breached the contract by failing to make the scheduled payments; and (iv) filed a chapter 11 case for leverage and delay when the seller refuses to renegotiate the terms of the contract.

97.    The claims asserted in the Action are against only Mr. Perzow based upon Mr. Perzow's alleged fraudulent misrepresentations to Stacks to induce Stacks to enter into a contract which Mr. Perzow had no intention of directing the Debtor to perform and knew the Debtor could not perform.

98.    The Action against Mr. Perzow for his fraudulent conduct does not implicate the automatic stay and there is no basis to extend the automatic stay to a non-debtor or the Action.

**WHEREFORE,** Stacks respectfully requests that the Motion be denied.

Dated: September 30, 2019

**Teitelbaum Law Group LLC**

By:   /s Jay Teitelbaum
Attorneys for Stack's Bowers Numismatics,
LLC d/b/a Stacks Bowers Galleries
1 Barker Avenue
White Plains, New York 10610
Tel. 914.437.7670
E. Mail jteitelbaum@tblawllp.com

**Table of Cases**

*Alpha Capital Anstalt v. Oxysure Sys.*, 252 F. Supp. 3d 332, 341 (S.D.N.Y. 2017) ................... 21

Bankruptcy Code §362(a) .......................................................................................................... 23

*Ceara v. Deacon*, 916 F.3d 208, 214 (2d Cir. 2019) .................................................................. 18

*Deerfield*, 68 N.Y.2d at 956, 502 N.E.2d at 1004, 510 N.Y.S.2d at 89.................................... 20

*DeSouza v. Plusfunds Group, Inc.*, 2006 U.S. Dist. LEXIS 53392 at **5-6 (S.D.N.Y. 2006) . 3, 4, 23

*DeSouza, supra* ..................................................................................................................... 23, 24

*Grika v McGraw*, 2016 N.Y. Misc. LEXIS 5026 (N.Y. Sup. Ct. 2016)...................................... 17

*Gucci, Am., Inc. v. Duty Free Apparel, Ltd.*, 328 F. Supp. 2d 439, 441 (S.D.N.Y. 2004) .......... 27

*Hobart v. Schuler*, 55 N.Y.2d 1023, 1024, 434 N.E.2d 715, 716, 449 N.Y.S.2d 479, 480 (1982) ...................................................................................................................................... 20

*In re Congregation Birchos Yosef* ........................................................................................... 29

*In re Congregation Birchos Yosef*, 535 B.R. 629, 633 (Bankr. S.D.N.Y. 2015)........................ 26

*In re Delphi Corp. Case No. 05-44481* ................................................................................... 27

*In re Dynegy Inc.*, 486 B.R. 585, 594 (Bankr. S.D.N.Y. 2013) ................................................ 17

*In re Heath Global, Inc.* 492 B.R. 650, 652-654 (S.D.N.Y. 2013), *reargument denied*, 2013 U.S. Dist. Lexis 180683 (S.D.N.Y. 2013) ................................................................................. 12

*In re Heath Global, Inc.*, Case No. 12-10511 ................................................................. 2, 11, 12

*In re Jean Francois*, 532 B.R. 449 (Bankr. E.D.N.Y. 2015) .................................................... 29

*In re Lomas Fin. Corp.*, 117 B.R. 64 (S.D. N.Y. 1990)............................................................ 27

*In re Lyondell Chem. Co.*, 2014 U.S. Dist. LEXIS 32899 at *11 (S.D. N.Y. 2014) ................... 14

*In re Manchanda*, 2016 Bankr. LEXIS 2056 at *15 (Bankr. S.D.N.Y. 2016) ............................ 28

*In re North Star Contracting Corp.*, 125 B.R. 368 (S.D.N.Y. 1991) ......................................... 27

*In re Penn Traffic Co.*, 524 F.3d 373, 378, 379 (2d Cir. 2008) ................................................ 14

*In re Sturman*, 2011 U.S. Dist. LEXIS 109599, 2011 WL 4472412, at *3 (S.D.N.Y. 2011)....... 28

*In re Sucre*, 226 B.R. 340 (Bankr. S.D.N.Y. 1998) ................................................................. 29

*In re Trump Hotels Shareholder Derivative Litig.*, 2000 U.S. Dist. LEXIS 13550 at *54 (S.D.N.Y. 2000) ........................................................................................................................ 17

*Marcelino v. Mon Cher 57 Inc.*, 2019 U.S. Dist Lexis 100176 *6-8 (S.D.N.Y. 2019) .. 3, 4, 21, 24

*N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 564 B.R. 192, 195 (S.D.N.Y. 2016) ......................................................................................................................................... 3, 23

*Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003) ........................................... 3, 24

*Teachers Ins. & Annuity Assn of Am. v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986).................... 3, 23

*Velasquez v. Metro Fuel Oil, Corp.*, 2012 U.S. Dist Lexis 166486 at *4................................... 25

*Velasquez v. Metro Fuel Oil, Corp.*, 2012 U.S. Dist Lexis 166486 at *4 (E.D.N.Y. 2012)......... 24

*Wall v. CSX Transp., Inc.*, 471 F.3d 410,417 (2d Cir. 2006).................................................... 20