EXHIBIT D

```
 1              UNITED STATES BANKRUPTCY COURT
               SOUTHERN DISTRICT OF NEW YORK
 2
    IN RE:                      .    Case No. 12-10511-scc
 3                              .    Chapter 11
    HEATH GLOBAL, INC.,         .
 4                              .    One Bowling Green
              Debtor.           .    New York, New York  10004
 5                              .
                                .    June 9, 2014
 6    . . . . . . . . . . . . . .    12:04 p.m.
                                .
 7    JIM MAGNER,               .    Adversary Proceeding
                                .    Case No. 12-01664-scc
 8              Plaintiff,       .
                                .
 9    vs.                       .
                                .
10    HEATH GLOBAL, INC.,       .
                                .
11              Defendant.      .
     . . . . . . . . . . . . .  .
12
```

13    TRANSCRIPT OF HEARING ON SECOND MOTION FOR SUMMARY JUDGMENT
      FILED BY EDUARDO J. GLAS ON BEHALF OF JIM MAGNER; MOTION FOR
14    SUMMARY JUDGMENT ON BEHALF OF DEFENDANT HEATH GLOBAL, INC.,
       BEFORE THE HONORABLE SHELLEY C. CHAPMAN, UNITED STATES
15                       BANKRUPTCY JUDGE

16   APPEARANCES:

17   For the Debtor:          Delbello Donnellan Weingarten
                                Wise & Wiederkehr, LLP
18                            By: Jonathan S. Pasternak, Esq.
                              One North Lexington Avenue
19                            White Plains, New York  10601
                              (914) 681-0200
20
     Also Present:            McCarter & English, LLP
21                            By:  Eduardo J. Glas, Esq.
                              245 Park Avenue, 27th Floor
22                            New York, New York  10167
                              (212) 609-6844
23

24

25

---



2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

```
 1  Appearances continued:

 2  Also Present:              Adam Perzow (by phone)

 3  Audio Operator:            Court Personnel

 4
    Transcription Service:     Esquire
 5                             1384 Broadway, 19th Floor
                               New York, New York 10018
 6                             (212) 687-8010

 7
    Proceedings recorded by electronic sound recording;
 8  transcript produced by transcription service.

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```



2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

```
1                  (Time Noted:  12:04 p.m.)

2             THE COURT:  Okay, so I've read everything,

3    multiple, multiple, multiple times.  This round, previous

4    rounds.  We've been at this for a long time.

5             So, I have some thoughts.  But is there anything

6    that anyone would like to say that's not reflected in all of

7    the papers?

8             MR. GLAS:  Can I answer, Your Honor?

9             THE COURT:  Sure.

10            MR. GLAS:  Eduardo Glas, from McCarter and

11   English.

12            THE COURT:  Yes.

13            MR. GLAS:  On behalf of Mr. Magner.  I'm planning

14   to rely on the papers, Your Honor.

15            THE COURT:  Okay.

16            MR. GLAS:  I think the papers are pretty

17   comprehensive.

18            THE COURT:  Okay, thank you.

19            MR. PASTERNAK:  We were almost going to say, Your

20   Honor, it would be great if you just came in and made a

21   ruling.

22            THE COURT:  Okay.

23            MR. PASTERNAK:  Because we both feel that we've

24   really adequately briefed the issues for Your Honor.

25            THE COURT:  Okay.
```



ESQUIRE
DEPOSITION SOLUTIONS

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

1         MR. PASTERNAK: But if you have questions, of

2 course --

3         THE COURT: You've briefed the issues extensively,

4 repeatedly, repetitively.

5         MR. PASTERNAK: Exhaustively.

6         THE COURT: Exhaustively. And I've spent a great

7 deal of time thinking about this.

8         MR. PASTERNAK: Thank you.

9         THE COURT: I don't have a prepared script, but

10 I'm prepared to go down all of the arguments and give you a

11 disposition that I think will be detailed enough so that you

12 will have an adequate basis on which to go up on appeal,

13 which I assume that, you know, one of you is going to do. I

14 mean, that's the thing about this case, which has been clear

15 from the very beginning, in the absence of a negotiated

16 settlement, it's up or down.

17         And in that kind of a situation, it's nice that

18 there be a settlement, but you folks clearly have declined my

19 suggestions, invitations, encouragements to settle.

20         So I'm going to give you a ruling, and I think

21 that, you know, you're going to end up -- there's a --

22 whether or not you appeal is up to you.

23         So, let's start with what the District Court did

24 and did not do.

25         All the District Court did, in my view, was the


ESQUIRE
DEPOSITION SOLUTIONS

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

following two things:

One, agreed with me that there was no termination
pre-petition. That's clear that that's what the District
Court did.

Secondly, the District Court disagreed with me and
said that this was not an option agreement.

My view in my previously issued decision was that
it was an option agreement. That was clearly rejected by the
District Court, and I respect that view, and we're now here
on remand to determine, as the District Court put it, what
rights -- remaining rights the Debtor has under the
agreement.

The District Court did not discuss cure. The
District Court did not discuss whether or not the contract
was executory, and specifically left that, I think, to me to
decide.

My recollection is that in an earlier round of
pleadings, not the current set, there was some back and forth
over whether or not the District Court determined that this
was a secured transaction, because I believe that the
District Court used the words "to secure performance."

But the District Court did not determine that this
was a secured transaction.

So, we go back to now I am left with the question
of what this agreement is and what the Debtor's rights are



2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

1 under the agreement.

2         At the outset of the case, and it is significant,
3 I think, to note that this occurred at the outset of the
4 case, the Debtor took the position in its Schedules and other
5 pleadings that this was a secured transaction.

6         And I believe that the reason that position was
7 taken was because with a secured transaction, a typical
8 secured transaction, you have the ability to cure missed
9 payments.

10        You have a mortgage, you have monthly payments
11 that were due, you missed them.  You go into default.

12        If you couldn't cure those through a Plan, there
13 would be no point.  And I think that was -- and I'm
14 speculating somewhat, but I'm guessing that that,
15 understandably, might have been one of the drivers behind
16 characterizing the agreement as a secured transaction.

17        The agreement is not a secure transaction.  In
18 order for there to be a secure transaction, among other
19 things, there would have to be something that remotely
20 resembles a security agreement, and there is not.

21        And there would also have to be a pledge, if you
22 will, of property and the liening up of property that's owned
23 by the Debtor.

24        The domain name does not fit the bill.  The domain
25 name is in escrow.  The Debtor does not have title to the



1   domain name. The Debtor cannot pledge something that it does

2   not own as security, so it's not a secure transaction.

3         In an earlier argument, I pressed Mr. Pasternak

4   quite hard on this point, and Mr. Pasternak said it's not an

5   executory contract.

6         This gets us to the question of: Is it an

7   executory contract?

8         And the first ground on which Mr. Magner says it's

9   not an executory contract is that the Debtor is judicially

10   estopped.

11         I believe that's correct.

12         Mr. Pasternak, I think, as a good lawyer would,

13   says, "No, no, no, I was arguing in the alternative." And

14   that's not a basis for judicial estoppel, or any other kind

15   of estoppel, but I think there's more to it.

16         I think that the position was taken in the

17   Schedules, in the initial filing, in many pleadings, and in

18   argument. And I certainly would never want to back anyone

19   into a corner, but I think it was properly recognized that it

20   had to be one or the other.

21         Now that the sands have shifted a little bit, to

22   take the position that it's an executory contract, there is

23   prejudiced involved in that because the case proceeded in

24   reliance on the position that it wasn't an executory

25   contract.



ESQUIRE
DEPOSITION SOLUTIONS

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

1        Had there been any sense that there was some sort
2   of pleading in the alternative at the stage of my first
3   opinion, I would have disposed of that issue and said that I
4   would have gone through all of the different permutations of
5   what it could be.
6        So I believe that the Debtor is estopped at this
7   point to seek to characterize the contract as an executory
8   contract.
9        However, I want to take it several steps further,
10  because I don't think that's the only basis on which I can
11  and should rest my ruling.
12       Even if the Debtor were not estopped to maintain
13  that this is an executory contract, I find that the contract
14  is not an executory contract under the standard *Countrymen*
15  analysis.
16       The only performance of any substance whatsoever
17  that's yet to occur with respect to this contract is the
18  payment of money.
19       In the latest round of pleadings, the Debtor
20  pointed to various what I would characterize as negative
21  covenant-type performances as an indicator that, in fact,
22  there was performance due on both sides.
23       I don't believe that those so-called obligations
24  elevate this contract to the level of being an executory
25  contract.

ESQUIRE
DEPOSITION SOLUTIONS

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

1    I want to go further.

2    Even if the contract were to be characterized as

3 an executory contract, I don't believe that it is capable of

4 being cured and assumed or assumed and cured.

5    And I would also note, with respect to each of

6 these areas, including the estoppel point, that there was

7 nothing that prevented the Debtor during the first 60 days of

8 the case from obtaining clarification on this point, seeking

9 an extension of time to cure, or otherwise seeking to deal

10 with the 108 point.

11    The reasons that I don't believe the contract is

12 capable of being assumed and cured are -- I'll state them in

13 the alternative.

14    One, as I said at the outset, I don't believe that

15 the District Court's opinion dealt with cure in 108.  And I

16 do not agree with the Debtor's conflating of 108 as it deals

17 with termination, which the District Court clearly ruled

18 required a second notice and 108 as it deals with cure, so

19 that the time in which the Debtor would have been able to

20 cure has since lapsed.

21    If I'm wrong, and, in fact, the District Court

22 intended to encompass the cure provisions of 108, along with

23 the termination provisions, I get to the additional point

24 that the defaults in the contract are not capable of being

25 cured because they are time of the essence type defaults.



ESQUIRE
DEPOSITION SOLUTIONS

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

1    In effect, the Debtor would have this contract be
2  turned into an open-ended agreement in which it contracted to
3  purchase the domain name pursuant to a set schedule,
4  determined that it could not perform by making the payments
5  that were due, and then, by affecting the filing in a way
6  that precluded the Debtor from the -- I'm sorry, the counter-
7  party from terminating, in essence gives the Debtor an open-
8  ended, if you will, agreement, in which at the end of the day
9  it tenders the contemplated payments on some time schedule,
10  and then gets the domain name.  And that's not what Mr.
11  Magner contracted for.

12    And I believe that to construe 108 that way, and
13  the provisions of the Code that deal with the assumption and
14  assignment of executory contracts, would really create a very
15  large loophole in the way this is supposed to operate, and
16  give the Debtor, who is party to an executory contract, far
17  more power than anything that's contemplated by the
18  Bankruptcy Code.

19    So, notwithstanding the infirmities in the
20  drafting of the opinion, I believe that this is a unique
21  situation in which you have an un-terminated agreement that
22  is either not executory, or, if it is executory, it's not
23  capable of being assumed and cured.

24    What bolsters my view, as I struggled to figure
25  out exactly what this was, I thought, well, is it a claim?



1  Is this like a situation in which a widget manufacturer sells
2  a debtor widgets, and then doesn't pay, and then the widget
3  manufacturer, in the debtor's bankruptcy, there's an
4  agreement, but they have a claim because the debtor has the
5  widgets and the widget manufacturer doesn't have the money.

6          The difference is that the Debtor here doesn't
7  have the widget.  The widget is in escrow, and the Debtor is
8  not entitled -- was not entitled to have the widget until it
9  received payments.  The payments that were bargained for were
10 payments on those specific dates, which have come and gone.

11         Therefore, there is a failure of consideration and
12 there's a contract that is incapable of being further
13 performed in the absence of some kind of a waiver by Mr.
14 Magner.

15         Now, I acknowledge that in the latest rounds of
16 pleadings, and I believe we're one week away from the
17 deadline set for the filing of the Plan, the notion is that
18 the agreement would be assumed, cured, sold, et cetera.

19         But, in order to do that, there has to be rights
20 that reside in the Debtor, which the Debtor can address in
21 the Plan.

22         And for the -- I think I count five different
23 levels of reason that I've just articulated to you, I don't
24 believe that there are any such remaining rights that could
25 be dealt with by a Plan.


ESQUIRE
DEPOSITION SOLUTIONS

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

1        I recognize that it's a harsh result, but this

2  case has always been about a harsh result.  It's always been

3  in the absence of a settlement, one party or the other, and

4  we've been at this for about two years.

5        If I'm wrong, I will rely on the District Court to

6  tell me that I'm wrong.

7        The reason that I thought it was important to give

8  you a decision today, is because if I take this under

9  advisement it's going to go into a queue, which is

10  unfortunately long at this point for the first time in my

11  four years of being on this job.  I have a queue of decisions

12  that probably total about 1,000 pages of writing.

13        And I felt that it was wrong for both of you to

14  have to wait for me to get to this and be kind of hanging out

15  there, and only then commence an appellate process.

16        So, my attempt here is to be sufficiently

17  detailed, so that if there are to be ensuing appeals, the

18  District Court and/or ultimately the Circuit Court will

19  understand the basis of my ruling.  And that's why I've

20  proceeded as I have here today.

21        MR. PASTERNAK:  So, we'll take the ruling from the

22  transcript of today's hearing?

23        THE COURT:  Yes, and you can give me a -- work

24  together to provide an order, and you can annex the

25  transcript as exhibit A, and the order can recite that motion



ESQUIRE
DEPOSITION SOLUTIONS

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

1  granted, motion denied, for the reasons set forth on the

2  record as reflected in the transcript attached hereto.

3            MR. PASTERNAK:  Debtor has a Plan filing deadline,

4  Your Honor, of next Monday.

5            THE COURT:  Right.

6            MR. PASTERNAK:  What do you suggest the Debtor do?

7            THE COURT:  Well, I don't -- I'm not in the

8  practice of giving legal advice.

9            MR. PASTERNAK:  Right.  Take that under

10  advisement.

11            THE COURT:  So, you know, I'm not dismissing the

12  case.

13            MR. PASTERNAK:  No, I mean, we're going to have to

14  appeal and see what happens there.  But --

15            THE COURT:  And if it were the other way, Mr. -- I

16  mean, we wrangled procedurally, and Mr. Glas convinced us

17  that, in fact, his view was that he couldn't appeal the

18  District Court's decision on the option issue until there was

19  this ruling.

20            So now you have rulings that comprise, I think,

21  the full panoply of possibilities as to what this contract

22  is, and, therefore, in terms of an appeal, if you need a

23  finding with respect to this being suitable for an

24  interlocutory appeal, I think that's appropriate and I would

25  give you such a finding in the order.


ESQUIRE
DEPOSITION SOLUTIONS

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

1          MR. PASTERNAK:  Very well, Your Honor.

2          THE COURT:  Now, Mr. Glas undoubtedly is not in

3    such a hurry to go to the District Court, but Mr. Pasternak,

4    I would understand if you were.

5          But, the case remains pending.  There is a

6    deadline to submit a Plan.

7          The request to lift the automatic stay for the

8    purpose of issuing a termination notice is denied.

9          And if there's any sense that there's something to

10   be worked out, that would be -- I would welcome the news.

11         MR. PASTERNAK:  I'm sure, Your Honor.  Thank you.

12         THE COURT:  Okay.

13         MR. PASTERNAK:  Thank you very much.

14         THE COURT:  Thank you.

15         MR. GLAS:  Thank you.

16              (Time noted:  12:24 p.m.)

17

18

19

20

21

22

23

24

25

 ESQUIRE

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

1

2                          CERTIFICATE

3

4

5      I, Randel Raison, certify that the foregoing is a

6  correct transcript from the official electronic sound

7  recording of the proceedings in the above-entitled matter, to

8  the best of my ability.

9  

10  _____              June 11, 2014

11  Randel Raison

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**ESQUIRE**
DEPOSITION SOLUTIONS

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com