KIRBY AISNER & CURLEY LLP
*Attorneys for the Debtor*
700 Post Road, Suite 237
Scarsdale, New York 10583
(914) 401-9500
Dawn Kirby, Esq.
Erica Aisner, Esq.

*Hearing Date: December 16, 2019*
*Hearing Time: 10:00 a.m.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
In re:                                                                    Chapter 11

HAMPSTEAD GLOBAL, LLC,                               Case No. 19-22721 (rdd)

                                   Debtor.
-----------------------------------------------------X

## SECOND SUPPLEMENT TO THE DEBTOR'S OPPOSITION TO MOTION OF STACK'S – BOWERS NUMISMATICS, LLC'S MOTION SEEKING AN ORDER (I) CONVERTING THE CASSE TO CHAPTER 7 OR DISMISSING THE CASE; (II) COMPELLING ASSUMPTION OR REJECTION OF EXECUTORY CONTRACT; AND (III) MODIFYING THE AUTOMATIC STAY

Hampstead Global, LLC, the above-captioned debtor and debtor-in-possession, by its counsel Kirby Aisner & Curley LLP, as and for a second supplement (the "Second Supplement") to its Opposition to the motion (the "Motion") of Stack's-Bowers Numismatics, LLC ("Stacks") seeking an order (I) converting or dismissing the case, (ii) compelling assumption or rejection of executory contract and (III) modifying the automatic stay to permit the exercise of remedies of assumed or rejected contracts, respectfully sets forth as follows:

1. In brief recap, the Debtor's first Supplement addressed the newly discovered California Complaint filed by Stacks against the Debtor and its principal post-petition which was concealed from this court on their motion to dismiss. Since the Supplement,

Stacks' has continued pursuing the California Action despite the Debtors insistence that Stacks is knowingly compromising the Debtors rehabilitation efforts.

2. Namely, the California Complaint concedes the domain was sold "on credit" to the Debtor in a debtor/creditor relationship between Stacks and the Debtor. Stacks admission is consistent with Debtors position throughout this case. The Debtor listed Stacks' claim as a loan in its petition, and as a sale with financing extended by Stacks to the Debtor (Motion to Dismiss, ¶ 44). However, Stacks takes a materially inconsistent position with this Court in its motion to dismiss filings. Thus, the California Complaint contains judicial admissions affirming Debtor's core position in this case. Stacks cannot take a contrary position.

3. The conclusion that the domain was sold on credit in a debtor/creditor relationship is of course supported by the LOI and PSA annexed as exhibits E and F. The binding LOI, the predecessor to the PSA, is titled a "secured purchase and sale agreement", and the PSA is titled "Purchase and Sale Agreement for Coins.com domain name". Further, Sections 5 and 6 of the LOI demonstrate in their wording that the PSA's intent is that the sale would be consummated upon the close of escrow which it did when the Debtor paid Stacks $300,000 and the domain name transferred from Stacks, at which point the domain name was PURCHASED, and as the California Complaint admits the remainder of the purchase price was "on credit". What's evidenced in the LOI and PSA is that it's not purchased upon payment in full, but rather, that the sale takes place upon payment of the initial $300,000 and the transfer of the domain to escrow. The Debtor now owes money for the domain name and the PSA states in section 3 that coins.com is being held by a <u>custodian in trust for the benefit of Buyer</u>.

4. Even though the Debtor contends the contract was never executory, the transfer of the domain name to escrow solidifies the issue. Upon transfer of the registration of the domain to the trustee/escrow, Stacks had no <u>material</u> obligations remaining under the PSA. This affirmative obligation of the domain transfer to escrow was the only <u>material</u> act required by Stacks, meaning if they failed to transfer the domain it would be a breach significant enough to go to the heart the PSA and be material. Even though Stacks can still theoretically breach the PSA in a few ways (i.e. breach confidentiality, the mutual cooperation clause, objection to misuse of the domain name, etc.), these provisions are: a) not affirmative obligations and b) immaterial, and cannot lead to a material breach. Thus the PSA cannot be considered executory as only one side has any material obligations remaining, which is solely the payment of money from Debtor to Stacks.

5. The California Complaint is the **<u>reason</u>** the Debtor has been unable to advance this case and satisfy its creditors. In essence, the $10,000,000 California Complaint's existence, and particularly because it is external from the dominion of the bankruptcy court and not under one consolidated roof, has deprived the Debtor of a single coordinated effort in its rehabilitation to pay the creditors, and has materially interfered with any potential investor, lender, re-financier or partner making the case toxic.  The Debtor has a fiduciary duty to disclose the California Complaint alleging $10 million in fraud damages and other relief against the Debtor to any 3rd party.  This has already had the effect of hurting the Debtor in a variety of potential deals, and the Debtor has been suppressed in its ability to obtain new financing, nor use the domain as collateral for that refinancing (as the Debtor has significant equity in the domain beyond Stacks claim), while the lawsuit hangs over the Debtor's head, and also because it is outside of the

Bankruptcy Court's jurisdiction. Stacks is preventing the Debtor from emerging from chapter 11 and has prejudiced the Debtor's entire case.   Stacks has been unwilling to dismiss the California Complaint, despite the Debtors repeated demand to do so. Its failure to withdraw the California Complaint makes it clear that Stacks' intent is not to merely to get satisfaction of its debt but rather to interfere with the Debtor in attempt to enrich itself. Furthermore, at the August hearing, when the parties agreed in front of this Court to adjourn the hearing in good faith toward settlement, Stacks failed to disclose the existence of the lawsuit until after the adjournment. The fact that Stacks not only failed to remove the California lawsuit since then, but subsequently filed two extensions, speaks to the good faith they implied to the Court and the Debtor upon the initial continuance.  The California Complaint must be immediately withdrawn and Stacks must be held accountable for compromising the entirety of this case.

6. Stacks has now conceded they are a lender, and as a lender they are held to an even higher standard in dealing with how they collect a debt from Debtor under the premise of lender liability. Because Stacks' purposeful actions have effectively blocked the Debtor from obtaining new financing or investors to pay Stacks and other creditors within this case, while at the same time arguing the domain name should be returned to Stacks for nonpayment, the Debtor is investigating significant lender liability claims against Stacks despite Debtor's desire to be focusing on its business instead.

7. In this Second Supplement, the Debtor would like to emphasize to the Court the value of the coins.com domain name.  Stevan Lieberman, the current custodian of the domain name, provided a valuation which includes his CV, a discussion of the various valuation methods for domain names, an analysis of the facts relating to coins.com, and

finally a valuation. Mr. Lieberman values coins.com at wholesale to be worth $6-8 million, and at retail $20-$30 million. A copy of the Lieberman Valuation is annexed as **Exhibit A**. Mr. Lieberman has also confirmed Debtors plan to pay the creditors by refinancing and using the domain as collateral is feasible due to the domain's value.

8. The other reason the Debtor filed this Second Supplement is to remind the Court that coins.com is not the Debtor's only business venture. This is most certainly not a two-party dispute, as demonstrated by the Debtor's Schedules, in its opposition to the motion to dismiss, and in its previously Plan of Reorganization.

9. Rarex.com is the Debtor's second line of business and has significant equity and time invested in its business plans, IP, team and assets (the Rarex domain and related IP) that it is also now unable to be advanced until the California Complaint is withdrawn. The Debtor's other business plan, Rarex will be the first global exchange to owners of rare assets, such as art, iconic real properties, numismatic rare coins, antiques and other collectibles can offer fractional ownership to everyday retail customers. A copy of the Rarex business plan is annexed as **Exhibit B**, as well as copies of emails/texts between Stacks' president Brian Kendrella and Debtor, annexed as **Exhibit C**, evidencing Stacks was keenly aware Rarex was merged into Debtor, and Stacks also hoped to participate in the Rarex.com venture. In another misguidance of this Court, Stacks alleges coins.com was Debtor's sole asset in their motion to dismiss despite their awareness of Rarex.

10. A reasonable person might conclude that Stacks' intentional omission of the California Complaint during the last hearing before this Court was intended to mislead this Court. While Stacks alleges fraud in the California Complaint, no such allegation is made before this Court. If Stacks believes it was defrauded by the Debtor wouldn't it

have disclosed that serious allegation to this Court? It did not. Probably in an effort to hide its contrary position taken in the California Complaint. By concealing from the Debtor and this Court the very existence of the $10,000,000 lawsuit filed in May two months prior, it's evident that Stacks intentionally hid its existence due to the nature of the contrary admissions, allegations and remedies it was seeking in the California Complaint which are inconsistent and contrary with the positions taken in the motion to dismiss. Accordingly, due to Stacks' concealment and bad faith, its motion to dismiss should be deemed fatal.

11. Accordingly, the Debtor urges this Court to deny the motion to dismiss in its entirety.

12. The Debtor knows this Court has thoroughly reviewed all of its previous submissions on these issues and appreciates the opportunity to submit this last update and summary.

Dated: Scarsdale, New York
   December 9, 2019

               KIRBY AISNER & CURLEY, LLP
               *Attorneys for the Debtor*
               700 Post Road, Suite 237
               Scarsdale, New York 10583
               (914) 401-9500


               By: */s/ Dawn Kirby*
                 Dawn Kirby