

August 8, 2019

From: Stevan Lieberman
To: Adam Perzow adamperzow@gmail.com
Re: Coins.com

Table of Contents

Introduction
Qualifications
Domain Name Valuation
Domain Names Valued based on Intellectual Property Parameters
- Quantitative Methods of Valuing a Intellectual Property /Domain names / Portfolios
- Costs Approach - How Much did it Cost to Obtain the Domain Name?
- Income Approach
- Market Approach - Domain Name Sales
- The Valuation Facts
Conclusion

## Introduction

Greenberg & Lieberman has been both the custodian of and escrow agent for Coins.com and the associated transaction. We have been asked to opine about the value of the domain name.

## QUALIFICATIONS

General Education and Degrees: Stevan H. Lieberman participated in Bell Laboratories Boy Scouts 2000 program from 1981-1982 where he learned the programming language Pascal (he previously taught



Greenberg
& Lieberman, LLC
"The Voice to Simplify Innovation Law."

Stevan H. Lieberman - MD, DC
Michael L. Greenberg - MD
Debora J. McCormick - DC

himself 6502 Assembly language starting in 1977 and assisted in managing a bulletin board with friends), received a Bachelor of Arts degree from Adelphi University in 1987; Paralegal Certificate, New School, New York, NY 1989; International Institute of Human Rights. Strasbourg, France, July l992 Certificat d'Assiduite; Internship with the Electronic Privacy Information Center (EPIC); Juris Doctorate from the District of Columbia School of Law in 1994; Real estate broker's license in 2002.

Experience: Stevan H. Lieberman is admitted to practice before the District of Columbia and Maryland state, federal and appeals courts and the United States Supreme Court. He is a member of the District of Columbia and Maryland Bar Associations, intellectual property sections, and the American Bar Association, intellectual property subsection. Mr. Lieberman has practiced in the area of intellectual property since 1994, with a focus on Internet law since 1996. He is an attorney / board member for the Internet Commerce Association (ICA) (http://www.internetcommerce.org/), a non-profit trade organization representing domain name investors and developers and the direct search industry. Mr. Lieberman and his partner Michael Greenberg founded the law firm Greenberg & Lieberman, LLC in 1996.

As part of his practice, he regularly represent many of the largest and most successful people and entities within the domain name industry. Mr. Lieberman has provided (a) domain name escrow services for domain name transfers since 2000, (b) contract preparation and review of all types of domain name ventures, (c) Uniform Domain Name Resolution Policy (UDRP) arbitration prosecution and defense representation, (d) state and federal litigation representation for all types of intellectual property (patents, trademarks, copyrights, and domain names), and (e)

PATENTS • TRADEMARKS • COPYRIGHTS • INTERNET
DOMAIN NAMES • REPRESENTATION • LITIGATION
ARBITRATION • LICENSING

1775 Eye Street NW, Suite 1150 | Washington DC 20006
202-625-7000 | 888-275-2757 toll free | 202-625-7001 fax
www.APLegal.com | info@APLegal.com



general representation and negotiation services. Greenberg & Lieberman, LLC also provides patent, trademark, copyright prosecution and licensing representation.

<u>Publications/Speeches</u>

**Speeches**

1. Guest Speaker: Webinar Whizzbangsblog discussing the legal side of domaining, July 15, 2014.
2. Guest Speaker / Participant: NameCon.com domain name conference re: .COM is Dead, Long Live .COM!, January 14, 2014.
3. Speech: "Get a Second Life -- Copyright in Virtual Worlds" (The Copyright Society of the U.S.A, New York, NY), May 5, 2008.
4. Lecture: "The Process for Trademark Registration," Montgomery County Bar Association IP & Tech Law Section, October 9, 2007.
5. CLE Lecture: "Patents, Trademarks, Copyrights, Trade Secrets, and Domain Names for the Non Intellectual Property Attorney," Montgomery County Bar, October 17, 2007.
6. Guest Speaker: UK Domain Channel, February 2, 2007.
7. Web Broadcast: Online radio / pod cast discussion about the state of the domain name industry defensive actions and the measures domainers can take to protect their rights, Webmaster Radio, September 20, 2006.

8. CLE lecture: "Overview of Intellectual Property," Montgomery County Maryland Bar, March 11, 2003.
9. Lecture: "Trademarks -- Everything from Searching to Filing to Litigating," Montgomery County Bar Association IP & Tech Law Section, October 2, 2002.
10. Lecture: "Why You Need A Website & What To Do To Get One," Montgomery County Maryland Bar, March 7, 2001.
11. Lecture: "Don't Get Caught By the Net," Montgomery County Maryland Bar, October 10, 2000.

**Publications**

12. "Generic Words as Domain Names," Stevan Lieberman & Debora McCormick, DNJournal.com, April 1, 2008.
13. "Stick 'em Up! Self Defense Against Reverse Domain Name Hijacking," Stevan Lieberman & Debora McCormick, DNJournal.com, May 16, 2006.
14. "Domain Names, Trademarks and the Dispute" - Stevan Lieberman, DNJournal.com, April 22, 2004
15. Mr. Lieberman has been interviewed and quoted in numerous newspaper, magazine and online articles regarding the Internet, domain names and virtual worlds which can be easily located by

way of a search through Google. One notable article appeared in the ABA Journal: Stephanie Frances Ward, "Fantasy Life, Real Law," ABA Journal (March 2007).

Cases in Which Mr. Lieberman Gave Testimony or was Deposed as an Expert within the last Four Years.

1. *Marchex, Inc v. NameDevelopment Ltd., Rothschild Trust Cayman Lt., ZRN Nominees (0049) Ltd. and The SSV Trust,* Case No. 50 133 T 00249 06 (American Arbitration Association International Centre for Dispute Resolution) September 27, 2006. Mr. Lieberman submitted an expert report on behalf of Name Development Ltd. on the subject of how to evaluate domain names singularly and as part of a domain portfolio, as well as critiquing methodology used in Plaintiff's expert report.
2. *In re Steve Zimmer Paige, Jubber v. Search Market Direct, Inc., Stephen S. May, et al.*, Bankruptcy Case No. 05-34474. Mr. Lieberman submitted an expert report on behalf of Stephen S. May on the subject of domain name transactions during late 2005/early 2006 and testified about the same.

A Domain Name is a Form of Intellectual Property

A Domain Name may be a valuable asset. According to the IRS and the United States Court of Appeals for the Ninth Circuit ("9th Circuit"), Domain Names are a type of intellectual property. See *Kremen v. Cohen*, 337 F.3d 1024, 1034 (9th Cir., 2007). In the United States Court of Appeals for the Fourth Circuit ("4th



Greenberg
& Lieberman, LLC
"The Voice to Simplify Innovation Law."

Stevan H. Lieberman - MD, DC
Michael L. Greenberg - MD
Debora J. McCormick - DC

Circuit") Domain Names are the subjects of one or more contracts and are not considered to be property. New Jersey generally follows New York law. It has been held in New York that "electronic records that were stored on a computer and were indistinguishable from printed documents [are] subject to a claim of conversion. . ." *Thyroff v. Nationwide Mut. Ins. Co.*, 8 N.Y.3d 283, 293, 864 N.E.2d 1272, 832 N.Y.S.2d 873 (N.Y., 2007). Although New Jersey has not determined the status of Domain Names, it most likely will follow New York and California and hold Domain Names to be intellectual property. [1]

**Domain Name Valuation**

There are several known methods of domain valuation all of which take into account basic accounting, economic, and financial principles. The costs of obtaining and maintaining a domain name include: registrations fees, maintenance fees, website creation, promotion costs (if one chooses to develop the domain), regular business costs and legal fees associated with the domain names protection and the promotion and use of a website. All of these costs are included in the historical cost of the domain name and / or portfolio (hereinafter "domain"). The cost of a domain, which is not the same as its value, depends on factors other than the income derived from the domain.

---

[1] It should be pointed out, in *Kremen v. Cohen*, 337 F.3d 1024, 1034 (9th Cir., 2007) "[t]hat [domain names are][] stored in electronic form rather than on ink and paper is immaterial."

PATENTS • TRADEMARKS • COPYRIGHTS • INTERNET
DOMAIN NAMES • REPRESENTATION • LITIGATION
ARBITRATION • LICENSING

1775 Eye Street NW, Suite 1150 | Washington DC 20006
202-625-7000 | 888-275-2757 toll free | 202-625-7001 fax
www.APLegal.com | info@APLegal.com



Greenberg
& Lieberman, LLC
"The Voice to Simplify Innovation Law."

Stevan H. Lieberman - MD, DC
Michael L. Greenberg - MD
Debora J. McCormick - DC

The cost of a domain can be allocated over its estimated economic useful life. This process, known as amortization, can be calculated using the straight-line method, an accelerated method such as the double-declining-balance method, the sum-of-the-years' digits method, or the income-forecast method. The domain's maximum economic life is unforeseeable, however at the time of the writing of this document valuation by different evaluators within the industry ranges anywhere between 3-50x (3x would be three (3) times the monthly ebitda) depending on the domain, its income, it's genericness, the maintenance costs beyond registrations associated with the income and other factors on a case by case basis. Such a wide range of values is often set by the evaluator based on their 'gut instinct' as well as their knowledge of the industry and in the end is merely a guess. Similarly, the online valuation tools just 'guess' at the value and are more often than not incorrect. For example, a review of recent domain name sale: voice.com to block one (Eos) went for $30mm and their voice.com coin will concomitantly have enormous value. The wide range in the sales amount, the valuations individual and programmatic make it clear that within the domain name industry there is no clear valuation method that works and accordingly one must look outside of the industry for a more reasoned approach.

**Domain Names Valued based on Intellectual Property Parameters**

As indicated above most states and the IRS consider domain names to be a type of intellectual property. The outlier jurisdiction, the 5th circuit (Virginia) considers them the subject of a contract. The

PATENTS • TRADEMARKS • COPYRIGHTS • INTERNET
DOMAIN NAMES • REPRESENTATION • LITIGATION
ARBITRATION • LICENSING

1775 Eye Street NW, Suite 1150 | Washington DC 20006
202-625-7000 | 888-275-2757 toll free | 202-625-7001 fax
www.APLegal.com | info@APLegal.com



valuation of contracts is similar to that of intellectual property with a substantial focus being that of the income derived from the contract.

Intellectual property and domain names may be amortized. The Internal Revenue Code allows for the amortization deduction of capitalized costs of specifically defined intangible property. The allowable deduction is computed by amortizing the adjusted basis of the intangible property over a 15-year period. Although the Internal Revenue Code has not specifically included domain names, it has included other types of intellectual property in its scope of intangible Property covered by the statute (such intangibles include both intellectual property and contractual rights).

In addition to amortization deductions, the Internal Revenue Code provides for depreciation deductions as well. In essence, this deduction allows for a systematic valuation of the domain over its foreseeable useful life. By depreciating a domain, the taxpayer, is assessing how much that domain is really worth. Usually, the taxpayer's experience of what the domain's useful life should be is adequate for depreciation deduction computation unless the industry norm indicates otherwise. Accounting valuation is most appropriate for taxation purposes and filings with governmental agencies however to my knowledge has never been used as a sales valuation method.

<u>Quantitative Methods of Valuing a Intellectual Property /Domain names / Portfolios</u>

There are three primary quantitative valuation methods which include: the cost approach, the income approach, and the market approach.



Greenberg
& Lieberman, LLC
"The Voice to Simplify Innovation Law."

Stevan H. Lieberman - MD, DC
Michael L. Greenberg - MD
Debora J. McCormick - DC

Costs Approach - How Much did it Cost to Obtain the Domain Name?

The cost approach argues that the cost of obtaining the Domain Name is proportionate to the economic value of the domain during its foreseeable useful life. Under the cost approach, the fair market value of a domain equals (the cost of reproduction or replacement) minus (physical depreciation) minus (functional obsolescence – which in this case allocates the sale and loss through legal depredation) minus (economic obsolescence – the change in technology (it has been speculated that ICANN's dumping of hundreds of new gTLD's on the market has severely depreciated the value of all but the very best and high value domains)). The cost approach does not take into account direct correlation between the value of a domain and the prevailing economic conditions of the corresponding industry or the fact that every domain name is unique, which is seen by most experts as a severe flaw in this model.

Income Approach

The next method of valuing domain is the income approach, which is considered to be the most accurate method of domain valuation. This approach concerns itself with the future cash flows derived from the domain based on past income of each particular domain name. Because it involves future assessments of economic benefits, this approach appears to be a speculative method of domain name valuation. However, any actual income from the domain can be used to extrapolate the expected value over the foreseeable life

PATENTS • TRADEMARKS • COPYRIGHTS • INTERNET
DOMAIN NAMES • REPRESENTATION • LITIGATION
ARBITRATION • LICENSING

1775 Eye Street NW, Suite 1150 | Washington DC 20006
202-625-7000 | 888-275-2757 toll free | 202-625-7001 fax
www.APLegal.com | info@APLegal.com

of the domain. This cash flow analysis is based on the health of the economy, profitability, competition, legal depredation, economic depredation, change in technology and capital requirements. The health of the economy is exemplified by government actions (in particular the Internet Corporation Assigned Names and Numbers' ("ICANN's) modification of the rules pertaining to domain names) such as, though clearly not limited to: the addition of new Generic Top Level Domain Names (GTLDs), modifications to domain name arbitration processes, Congressional action associated with domain name laws and of course the regular fluctuations in the economy, discretionary fiscal policy, changes in governmental expenditures, inflation, and budget deficits.

This income approach also known as Monetization is broken up into a number of subsets including pay per click (PPC), affiliate marketing, lead generation, arbitrage and targeted buildouts. PPC advertising is the most prevalent and easiest to achieve (and also the lowest income producer). A PPC domain is valued based on the amount of traffic it achieves, as well as the ease in which it can obtain a high "click through rate" (CTR). Current valuation for generic ppc domains is in the area of 15x to 20x times the monthly income (with a very small number going as high as 50x according to the sales charts found at dnjournal.com) and for trademark domains (domains that might be considered confusingly similar to another entities trademark) are in the area of 3-7x. These multiples fluctuate wildly with the market.

Affiliate marketing (also a low-income producer) is currently paying between 1% and at most 15% of the income from the profits of the primary site with most incomes in the 2-5% range.

Stevan H. Lieberman - MD, DC
Michael L. Greenberg - MD
Debora J. McCormick - DC

Lead generation is the sale of unique requesters information to end user companies who hope to turn those leads into client is much more work, but has a higher income yield. Lead generation takes three forms; that of affiliate lead gen where the owner of the domain sells the traffic from the domain(s) to a lead gen company, Template lead gen sales where leads are obtained from a templated site and then sold to a lead gen company for resale and lead gen direct sales to end users. The latter is essentially one form of a targeted build out and often requires traffic driving skills (arbitrage) as well making this a very complicated business model.

Arbitrage is the process of driving traffic (usually by buying it from third parties) to webpages that already have a monetization method and hopefully increasing the income of that page or pages more than the cost of the driving of the traffic.

Targeted build outs for the sale of a related good or service is the use of the domain name(s) as a full business. This is the best use of a domain, but also requires the most skill and is the most work.

Market Approach - Domain Name Sales

The third quantitative method of domain valuation is the market approach otherwise known as resale or flipping. Here, the value of a domain is what a willing buyer would pay a willing seller for similar property. Inherent in this approach are four assumptions: "(1) the existence of an active market (lately the market has been limpid based on extrapolation of depredations based on the new gTLD programs); (2) past transactions

1775 Eye Street NW, Suite 1150 | Washington DC 20006
202-625-7000 | 888-275-2757 toll free | 202-625-7001 fax
www.APLegal.com | info@APLegal.com



Greenberg
& Lieberman, LLC
"The Voice to Simplify Innovation Law."

Stevan H. Lieberman - MD, DC
Michael L. Greenberg - MD
Debora J. McCormick - DC

of comparable property; (3) [free and open] access to pricing information is rather limited; and (4) an arm's length transaction between [the buyer and seller.]" The biggest obstacle to this approach is comparability. As previously noted, each domain name is unique making the finding of a similar product that is comparable enough extremely difficult. Some factors which help to establish comparability are: similar industry characteristics of the two products evinced by the word or words in the domain, similar profit histories of the two domains, comparable market share or market share potential, equal responses to changes in technology, similar barriers to income potential, and similar growth prospects of the two products associated with the domains. Because of the difficulty in finding comparable domains the market approach of domain valuation can be very difficult, if not impossible to apply.

Based on the above factors, a number of jurisdictions have ruled that no value can be placed on a domain based on possible re-sale as it is unknown what a buyer will pay until the buyer actually pays the amount making the domains into virtual 'lottery tickets." In *Weitzman v. Weitzman,* Family Law No. 108690 the court specifically stated that domain names "are akin to just a lottery ticket, just a stab in the dark. And maybe somebody would want xyz.com some day and be willing to pay for it, but until that day comes, it is -- I think the term used, "vapor," which the court deems as correct. They're meaningless without a willing buyer at a given time to negotiate a market price." Accordingly, this method is not recommended.

PATENTS • TRADEMARKS • COPYRIGHTS • INTERNET
DOMAIN NAMES • REPRESENTATION • LITIGATION
ARBITRATION • LICENSING

1775 Eye Street NW, Suite 1150 | Washington DC 20006
202-625-7000 | 888-275-2757 toll free | 202-625-7001 fax
www.APLegal.com | info@APLegal.com



**The Valuation Facts**

The sale of crypto.com sale was valued at $12 to 20mm last year. Including the assets under crypto.com the company worth is rumored to be over $1b. The company has released two crypto coins. The coins were branded in February and March 2019 respectively. One, crypto.com coin is worth 400 million[2], the other 100 million[3] As previously noted the voice.com sale to block.one (Eos) sold at $30mm.[4] Coinbase has a value as $8b plus as a consumer play. Coins.com as a global consumer gateway can plug into their infrastructure and be worth $1b on its own. stable coins are becoming and will be the huge play in consumer markets. Facebook and Libra as well as other company's looking to do similar systems. There are also over 200 ongoing stable "coin" projects.[5] All of this leads to the fact that coins is becoming the mainstream brand in general and solidifying itself as the de facto word for crypto currencies. There is something in the area of 41 Billion dollars in Bitcoin alone and 100 billion if you add Litecoin, Monero and Ethereum which are the best know of the crypto currencies.[6] If you therefore assume that coins.com is representative of this particular vertical it can be compared to similar domains in other industries. The toy industry accounts for roughly 20 billion a year[7] and toys.com sold for 13 million just a few years ago which put the domain at .65% of the total value of the industry in one year. .65% of 100 billion is of course 65,000,000.

[2] https://coinmarketcap.com/currencies/crypto-com-chain/
[3] https://coinmarketcap.com/currencies/crypto-com/
[4] https://www.coindesk.com/block-one-pays-30-million-for-a-domain-name
[5] https://medium.com/cementdao/how-many-stablecoins-are-there-aa39d201ac12
[6] https://www.investopedia.com/tech/how-much-worlds-money-bitcoin/
[7] https://www.npd.com/wps/portal/npd/us/news/press-releases/2018/toy-sales-globally-and-in-the-us-both-grow-by-1-percent-in-2017-reports-the-npd-group/

1775 Eye Street NW, Suite 1150 | Washington DC 20006
202-625-7000 | 888-275-2757 toll free | 202-625-7001 fax
www.APLegal.com | info@APLegal.com



This is of course too much for a domain name that has yet to be built out, however a valuation of 30%-40% on the retail market and 25% of that for the whole sale is eminently reasonable.

**Conclusion**

Based on all of the above factors I would use the Market approach for Coins.com. This would place the wholesale value of the domain name Coins.com at somewhere between 4-6 Million and the Retail value to an end user such as Facebook with the ability to invest and do something substantial with the domain name somewhere between 20-30 Million.

I have provided this valuation in my capacity as custodian and escrow agent of the domain name coins.com and if called upon I would so testify.

Dated this 8 day of August 2019.

____________________________
Stevan H. Lieberman