KIRBY AISNER & CURLEY, LLP
*Attorneys for the Debtor*
700 Post Road, Suite 237
Scarsdale, New York 10583
(914) 401-9500
Dawn Kirby, Esq.
Erica R. Aisner, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re:

HAMPSTEAD GLOBAL, LLC,

                            Debtor.
-------------------------------------------------------------X

Chapter 11
Case No. 19-22721 (RDD)

# DEBTOR'S DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE FOR THE DEBTOR'S PLAN OF REORGANIZATION

## I. INTRODUCTION

Hampstead Global, LLC, the above captioned debtor and debtor-in-possession (the "Debtor" or "Hampstead") submits this Disclosure Statement[1] pursuant to Section 1125(b) of Title 11, United States Code, 11 U.S.C. §§ et seq. (the "Bankruptcy Code") and Rule 3017 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), in connection with the First Amended Plan of Reorganization dated January 24, 2020 (the "Plan") to all known holders of claims against or interests in the Debtor in order to adequately disclose information deemed to be material, important and necessary for the Debtor's creditors to make a reasonably informed judgment about the Plan. A copy of the Plan is attached hereto as **Exhibit "A."** All capitalized

---

[1] Unless otherwise defined herein, capitalized terms used in this Disclosure Statement shall be defined as set forth in the Plan.

terms used but not defined in this Disclosure Statement shall have the respective meanings ascribed to them in the Plan unless otherwise noted.

The Bankruptcy Court has scheduled the hearing on confirmation of the Plan for_____ _____, **2019 at 10:00 a.m**. Under Section 1126(b) of the Bankruptcy Code, only Classes of Claims that are "impaired" under the Plan, as defined by Section 1124 of the Bankruptcy Code, are entitled to vote on the Plan. **Holders of Claims in Classes 3 and 5 are not required to vote on the Plan and are conclusively presumed to have accepted the Plan because their Claims are not impaired. Holders of Claims in Classes 1, 2, and 4 are impaired, inasmuch as they will receive a lesser amount on account of their Allowed Claims than they would be entitled to under applicable law. A Class is impaired if its legal, contractual or equitable rights are altered or reduced. This means that a creditor or class whose rights are impaired will receive less than they would have received, and at a later date, than they would have in the absence of the Chapter 11 Case. Accordingly, Holders of Claims in Classes 1, 2, and 4 are entitled to vote. Pursuant to Section 1126 of the Bankruptcy Code, the Plan must be accepted by more than one half in number and two-thirds in amount of those voting of at least one class of impaired creditors in order for the Plan to be confirmed.**

NO REPRESENTATIONS CONCERNING THE DEBTOR ARE AUTHORIZED BY THE DEBTOR OTHER THAN AS SET FORTH IN THIS STATEMENT. ANY REPRESENTATIONS WHICH ARE OTHER THAN AS CONTAINED IN THIS STATEMENT SHOULD NOT BE RELIED UPON BY YOU, AND ANY SUCH REPRESENTATIONS SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR, KIRBY AISNER & CURLEY, LLP, 700 POST ROAD, SUITE 237, SCARSDALE, NEW

YORK 10583, ATTENTION: ERICA R. AISNER, ESQ., WHO IN TURN SHALL DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR SUCH ACTION AS MAY BE DEEMED APPROPRIATE. THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. FOR THE FOREGOING REASON, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY, ALTHOUGH GREAT EFFORTS HAVE BEEN MADE TO BE ACCURATE.

THIS DISCLOSURE STATEMENT CONTAINS A SUMMARY OF CERTAIN PROVISIONS OF THE PLAN. WHILE THE DEBTOR BELIEVES THAT THE SUMMARY IS FAIR AND ACCURATE, SUCH SUMMARY IS QUALIFIED TO THE EXTENT THAT IT DOES NOT SET FORTH THE ENTIRE TEXT OF THE PLAN. REFERENCE IS HEREBY MADE TO THE PLAN FOR A COMPLETE STATEMENT OF THE TERMS AND PROVISIONS THEREOF. **IF ANY INCONSISTENCIES EXIST BETWEEN THE PLAN AND THIS DISCLOSURE STATEMENT, THE PLAN SHALL CONTROL.**

THE STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED IN THIS DISCLOSURE STATEMENT. THE DELIVERY OF THIS DISCLOSURE STATEMENT SHALL NOT, UNDER ANY CIRCUMSTANCES, CREATE AN IMPLICATION THAT THERE HAS BEEN NO CHANGE IN ANY FACTS SET FORTH IN THIS DISCLOSURE STATEMENT SINCE THE DATE HEREOF.

AMENDMENTS TO THE PLAN THAT DO NOT MATERIALLY AND/OR ADVERSELY CHANGE THE TREATMENT OF CLASSES MAY BE MADE TO THE PLAN PRIOR TO CONFIRMATION. SUCH AMENDMENTS MAY BE APPROVED BY THE

COURT AT THE CONFIRMATION HEARING WITHOUT ENTITLING MEMBERS OF ANY CLASSES WHOSE TREATMENT IS NOT ADVERSELY CHANGED TO WITHDRAW ANY VOTES TO ACCEPT OR REJECT THE PLAN.

THE COURT HAS APPROVED THIS DISCLOSURE STATEMENT BY ORDER DATED _____, 2020 AS CONTAINING ADEQUATE INFORMATION UNDER THE PARTICULAR CIRCUMSTANCES OF THIS CASE. APPROVAL OF THE DISCLOSURE STATEMENT, HOWEVER, IS NOT TO BE CONSTRUED AS AN ENDORSEMENT OF THE PLAN BY THE BANKRUPTCY COURT. CONFIRMATION OF THE PLAN BY THE BANKRUPTCY COURT WILL BE CONSIDERED AT A HEARING TO BE SCHEDULED ON THE PLAN. CREDITORS ARE URGED TO CONSULT WITH THEIR COUNSEL REGARDING THE PLAN. Accompanying this Disclosure Statement are copies of the following documents (**Exhibits A, B and C):**

A. **The Plan;**
B. **Plan Distributions; and**
C. **Liquidation Analysis.**

## II. BACKGROUND OF THE CASE

A. **Historical Background of the Debtor**

Debtor is in the business of developing two digital platforms: an international currency exchange operating in various international markets utilizing the *coins.com* domain name and brand, as well as an exchange which allows for "fractional" investments in rare assets utilizing the *rarex.com* domain name.

The concept behind *coins.com* as a premiere digital assets brokerage and platform was conceived in late 2017 during the rise of the bitcoin and digital currency which was followed by the acquisition of the domain name in early 2018 from Stacks. Stacks had previously been using

4

the domain name for traditional rare coin sales. The Debtor's business plan is to create *coins.com* branded digital currency brokerages around the world but not suffering through the laboring oar and expense of creating jurisdictionally compliant operations and infrastructure through the creation and development of partnerships and joint ventures in each jurisdiction with already established players who want to unify under one global brand, "coins.com". For example, *coins.com* South Africa would be a joint venture between a local South African digital asset brokerage and the Debtor, whereby the Debtor would have a licensing and profit participation in that jurisdiction's activities. The line of business relies mainly on the infrastructure of the local partner and leverages highly on the brand awareness and marketing which will be handled at the Debtor's level through its management team, currently being assembled in both the United States and Singapore, which has become the recognized "hub" of digital currency.

The *rarex.com* concept has been in development since 2017 and in late 2018 the Debtor fully acquired the entirety of the Rarex business and concept. The Debtor is currently working with a well-recognized and regarded technology industry executive with the specialized skills and expertise to continue developing this platform. The Rarex business involves the sale of digital fractional interests in rare assets (art, jewelry, rare coins, etc.) – such that anyone can own a small investment in a piece of art or a rare coin. This platform utilizes blockchain technology and is likely to be highly synergistic with *coins.com*.

The Debtor's efforts to transition its business from the development stage forward have taken longer than expected and hoped. This can be attributed to a number of circumstances both within and outside of the Debtor's control. For one, the unexpected crypto "winter" that took place from the Summer of 2018 until March of 2019 drastically reduced the available capital being invested in the industry as compared to the year leading up to that point. Fortunately, the

Debtor believes that things are turning around and the industry has winds at its back again. Regardless of the cause, the result was that the Debtor was unable to remit the second payment due under the Purchase and Sale Agreement (the "PSA") with Stacks. The Debtor's principal reached out to Stacks to request additional time to make the required payments. JUnfortunately, the parties did not reach an agreement. Faced with the likelihood of the forfeiture of its most valuable asset, as well as the capital already paid to Stacks, the Debtor filed this Chapter 11 to protect itself.

During the chapter 11 case the Debtor faced a setback in its efforts to raise capital when Stacks filed a complaint against Adam Perzow in California alleging, inter alia, the Debtor's alleged breach of contract and potential fraud.

The Debtor believes it has now reached an agreement in principal with Stacks for a global resolution, which will likely result in a motion to approve the agreement and dismissal of the chapter 11 case. In the meantime, the Debtor files this First Amended Plan and Disclosure Statement in order for it to be in compliance with the small business deadline contained in Bankruptcy Code Section 1121(e)(2).

### The Chapter 11 Case

**1. Commencement of the Case**

On March 30, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Case"). The Debtor has continued in possession of its property and the management of its business affairs as a debtor-in-possession pursuant to §§1107 and 1108 of the Bankruptcy Code. No trustee, examiner or statutory committee has been heretofore appointed in this proceeding.

**2. Employment of the Debtor's Professionals**

On April 15, 2019, the Debtor filed an application to retain Charles A. Higgs, as its bankruptcy counsel. No order was entered granting this motion. Instead, on June 26, 2019, a Stipulation of Substitution of Counsel was filed to substitute Kirby Aisner & Curley LLP as Debtor's counsel, in place and instead of Charles A. Higgs. The Debtor filed an application to retain Kirby Aisner & Curley LLP as its bankruptcy counsel on July 1, 2019. The Bankruptcy Court approved the retention Kirby Aisner & Curley LLP *nunc pro tunc* to June 21, 2019 [Docket No. 38]. On July 18, 2019, the Debtor sought to retain the Law Office of Charles A. Higgs as Special Litigation Counsel, which retention was approved *nunc pro tunc* to July 18, 2019 [Docket No. 37].

### 3. Filing of Schedules of Assets and Liabilities and Statement of Financial Affairs

On April 15, 2019, the Debtor filed its Schedules of Assets and Liabilities, together with its Statement of Financial Affairs (collectively, the "Schedules"). The Debtor's Schedules are available on the Bankruptcy Court's website: www.nysb.uscourts.gov (login and password required).

### 4. Establishment of a Claims Bar Date and Claims Process

On August 8, 2019, the Debtor filed a motion to set the last date to file proofs of claim. Pursuant to an order of the Bankruptcy Court dated October 1, 2019 (the "Bar Date Order"), November 8, 2019 was established as the last date by which creditors may file proofs of claim in the Chapter 11 Case, except as otherwise provided in the Bar Date Order. The Bar Date Notice and proof of claim form was mailed to all Creditors listed on the Debtor's Creditor matrix filed with the Bankruptcy Court and all other parties requiring notification as set forth in the Bar Date Order.

### 5. §341 Meeting and Case Status Conferences

The Debtor participated in the Initial Debtor Interview. Thereafter, the Debtor attended the §341 Meeting of Creditors conducted by the Office the U.S. Trustee on May 6, 2019.

## 6. **The Stacks Motion to Dismiss**

On June 17, 2019, Stack's-Bowers Numismatics, LLC ("Stacks") filed a motion seeking (i) conversion to Chapter 7 or dismissal of the Chapter 11 case, (ii) compelling assumption or rejection of executory contract and (iii) modifying the automatic stay to permit the exercise of remedies of assumed or rejected contracts ("Motion to Dismiss"). In the Motion to Dismiss, Stacks argues that the filing of the Chapter 11 Case was a "bad faith" filing because, according to Stacks, they believe that the sole purpose of the Debtor's bankruptcy filing was to delay Stacks' exercise of its rights under the PSA and Escrow Agreement and for the Debtor to have the Bankruptcy Court to rewrite the terms of the PSA, all of which the Debtor disputes.

On August 2, 2019, the Debtor filed opposition to the Motion to Dismiss,  and on October 4, 2019 and December 9, 2019, the Debtor filed supplements to its opposition.  The motion is still pending.  However, as referenced above, the Debtor believes it has reached an agreement in principal with Stacks for a global resolution of all issues.  The Parties are currently endeavoring to memorialize the agreement in writing.

## 7. **The Stacks Adversary Proceeding**

On August 7, 2019, the Debtor commenced an Adversary Proceeding against Stacks captioned *Hampstead Global, LLC v. Stack's-Bowers Numismatics, LLC*, Adv. Pro. No. 19-08282(rdd). In its Complaint, the Debtor seeks declaratory relief and damages for alleged breach of a confidentiality provision in the PSA and unauthorized use of the *coins.com* name, inter alia. The Adversary Proceeding is pending.  However, as noted above, the Debtor expects it will be resolved pursuant to the Parties' agreement in principal.

8. **Avoidance Actions and Recovery Actions**

As of and subject to the occurrence of the Effective Date, the Debtor and the Reorganized Debtor, for and on their respective behalves and respective Estates, will waive and release any Avoidance Actions, which are defined in the Plan as any cause of Action under Sections 510, 542, 543, 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code or state law if made applicable under such Bankruptcy Code section. The Debtor believes, after a thorough investigation and review with its counsel, that there are no Avoidance Actions exist that would provide a meaningful source of funds for the Debtor.

## III. THE PLAN OF REORGANIZATION

THE FOLLOWING IS A BRIEF SUMMARY OF THE PLAN AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE FULL TEXT OF THE PLAN, A COPY OF WHICH IS ANNEXED HERETO AS **EXHIBIT "A."** CREDITORS ARE URGED TO CONSULT WITH THEIR COUNSEL IN ORDER TO FULLY UNDERSTAND THE PLAN AND EXHIBITS ATTACHED TO IT. THE PLAN IS COMPLEX INASMUCH AS IT REPRESENTS A PROPOSED LEGALLY BINDING AGREEMENT BY THE DEBTOR, AND AN INTELLIGENT JUDGMENT CONCERNING SUCH PLAN CANNOT BE MADE WITHOUT UNDERSTANDING IT.

A.      **General**

In general, a Chapter 11 plan of reorganization must (i) divide Claims and equity interests into separate categories and classes, (ii) specify the treatment that each category and class is to receive under such plan, and (iii) contain other provisions necessary to implement the reorganization of a debtor. A Chapter 11 plan may specify that the legal, equitable, and contractual rights of the holders of Claims or equity Interests in certain classes are to remain

unchanged by the reorganization effected by the plan. Such classes are referred to as "unimpaired" and, because of such favorable treatment, are deemed to vote to accept the plan. Accordingly, it is not necessary to solicit votes from holders of Claims in such "unimpaired" classes. Pursuant to Section 1124(1) of the Bankruptcy Code, a class of claims or interests is "impaired," and entitled to vote on a plan, unless the plan "leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest."

Under the Plan, the Holders of Claims in Classes 3 and 5 are "unimpaired," and thus are deemed to vote to accept the Plan. Holders of Claims in Classes 1, 2, and 4 are impaired, inasmuch as they will receive a lesser amount on account of their Claims than they would be entitled to under applicable law. Accordingly, holders of Claims in Classes 1, 2, and 4 are entitled to vote on the Plan. Pursuant to Section 1126 of the Bankruptcy Code, the Plan must be accepted by more than one half in number and two-thirds in amount of those voting of at least one class of impaired creditors in order for the Plan to be confirmed.

## B.    Classification and Treatment of Claims and Equity Interests

Section 1122 of the Bankruptcy Code provides that a plan of reorganization shall classify the claims and equity interests of a debtor's creditors and equity interest holders. In compliance with Section 1122, the Plan divides the holders of Claims and Interests into four (4) unclassified categories and five (5) Classes, and sets forth the treatment offered to each Class.[2] These Classes

---

[2] A debtor is required under Section 1122 of the Bankruptcy Code to classify the claims and interests of its creditors and interest holders into classes containing claims and interests that are substantially similar to the other claims or interests in such class. While the Debtor believes that its classification of all Claims and Equity Interests is in compliance with the provisions of Section 1122 of the Bankruptcy Code, it is possible that a holder of a Claim or Equity Interest may challenge the Debtor's classification scheme and the Bankruptcy Court may find that a different classification is required for the Plan to be confirmed. In such event, it is the present intent of the Debtor, to the

take into account the differing nature and priority of Claims against the Debtor.

The Plan segregates the various Claims against, and Equity Interests in the Debtor into Category 1 Administrative Expense Claims, Category 2 Professionals fee and expense Claims, Category 3 U.S. Trustee Fees, Category 4 Priority Tax Claims, Class 1 Secured Claim of the Greenberg Firm, Class 2 Allowed Claim of Latin Lending Group, Class 3 Allowed Non-Tax Priority Claims, Class 4 Allowed General Unsecured Claims, and Class 5 Interests. The order of distribution as set forth in the Plan and as described below is in accordance with the priorities set forth in the Code and applicable State Law.

| Class | Status |
|---|---|
| Class 1 - Secured Claim of the Greenberg Firm | Impaired – entitled to vote |
| Class 2 - Allowed Claim of Latin Lending Group | Impaired – entitled to vote |
| Class 3 - Allowed Non-Tax Priority Claims | Unimpaired – not entitled to vote and presumed to accept the Plan. |
| Class 4 - Allowed General Unsecured Claims | Impaired – entitled to vote |
| Class 5 - Equity Interests | Unimpaired – not entitled to vote and presumed to accept the Plan. |

Set forth below is a summary of the Plan's treatment of the various categories and Classes of Claims and Interests. This summary is qualified in its entirety by the full text of the Plan. In the event of an inconsistency between the Plan and the description contained herein, the terms of the Plan shall govern. The Plan is complicated and substantial. Time should be allowed for its analysis; consultation with a legal and/or financial advisor is recommended and should be considered. Annexed hereto as **Exhibit "B"** is a list of distributions the Debtor intends to make

---

extent permitted by the Bankruptcy Court, to modify the Plan to provide for whatever reasonable classification might be required by the Bankruptcy Court for Confirmation.

under this Plan.

**1. Unclassified Categories of Claims – Administrative Expense Claims**

Administrative Expense Claims and Obligations include costs incurred in the operation of the Debtor's business after the Petition Date and the fees and expenses of Professionals. Administrative Expense Claims are paid in full in Cash under the Plan unless the claimant accepts a lesser treatment.

(a)     Category 1 – Administrative Expense Claims

Administrative Expense Claims include the actual and necessary costs and expenses incurred during the Chapter 11 Case, excluding the Professionals' fee and expense Claims. Under the Plan, all Allowed Administrative Expense Claims incurred during the Chapter 11 Case shall be paid in full, in Cash, in such amounts as (i) are incurred in the ordinary course of business by the Debtor; (ii) are Allowed by the Bankruptcy Court, upon the later of the Effective Date, the date upon which there is a Final Order allowing such Administrative Expense Claim, or any other date specified in such Order; or (iii) as may be agreed upon between the Holder of such Administrative Expense Claim and the Debtor. All Category 1 Administrative Expenses shall be paid in full, in Cash, in such amounts as (i) are incurred in the ordinary course of business by the Debtor and personally guaranteed by Perzow; (ii) are Allowed by the Bankruptcy Court upon the later of the Effective Date, the date upon which there is a Final Order allowing such Administrative Expense Claim or any other date specified in such Order; or (iii) may be agreed upon between the Holder of such Administrative Expense Claim and the Debtor.

(b)     Category 2 – Administrative Professionals Claims

All awards or allowances by the Bankruptcy Court of Professionals' fees and expenses, or of compensation for services rendered or reimbursement of expenses incurred through and

12

including the Confirmation Date under Sections 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code, if granted, shall be paid in full in such amounts as allowed by the Bankruptcy Court (i) on the later of the Effective Date or the date such Professionals Claim becomes Allowed; or (ii) upon such other terms as may be mutually agreed upon between such Holder of an Allowed Professionals Claim and the Debtor or, on and after the Effective Date, the Reorganized Debtor. All Professionals' fees and expenses for services rendered in connection with this Chapter 11 Case and the Plan after the Confirmation Date, including, without limitation, those relating to the occurrence of the Effective Date and the resolution of Disputed Claims, shall be billed to the Reorganized Debtor, and paid by the Reorganized Debtor in the ordinary course, without the need for further Bankruptcy Court authorization or entry of a Final Order. If the Professionals cannot agree on the amount of post-Confirmation Date fees and expenses to be paid to such Professionals, such amount shall be determined by the Bankruptcy Court. The payment of the Debtor's Administrative Professional Claims has been personally guaranteed by Cary Perzow, the father of the Debtor's principal.

Professionals Claims consist of such Claims of (i) Kirby Aisner & Curley LLP, and (ii) The Law Offices of Charles A. Higgs. The estimated net unpaid Allowed Professional Fee Claims as of the anticipated Confirmation Date are as follows[3]:

| | |
|---|---|
| Kirby Aisner & Curley, LLP | $50,000 |
| The Law Offices of Charles A. Higgs | $35,000 |
| **TOTAL** | **$85,000** |

    (c)    <u>Category 3 – United States Trustee's Fees</u>

Under the Plan, all United States Trustee statutory fees arising under 28 U.S.C. Section 1930(a)(6) and 31 U.S.C Section 3717 shall be paid in full, in Cash, in such amount as they are incurred in the ordinary course of business by the Debtor or Reorganized Debtor, as applicable. The Debtor and Reorganized Debtor, as applicable, shall be responsible, through the entry of a final decree closing the Chapter 11 Case for the payment of United States Trustee quarterly fees, and pursuant to 31 U.S.C. §3717, any interest assessed on unpaid Chapter 11 quarterly fees charged, assessed at the interest rate in effect as determined by the Treasury Department at the date the charges become past due; however, if payment of the full principal amount is received within thirty (30) days of the date of the notice of initial interest assessment, the interest assessed will be waived. The Debtor estimates unpaid United States Trustee fees through Confirmation to be $-0-.

(d)     Category 4 –Priority Tax Claims

Holders of Allowed Priority Tax Claims pursuant to Section 507(a)(8) of the Bankruptcy Code, if any, shall be paid in full, in Cash, on the Effective Date. The Debtor estimates the Allowed Priority Tax Claims to be $-0-.

2. **Classified Categories of Claims**

Pursuant to Section 1124 of the Bankruptcy Code, a class of claims or equity interests is impaired unless the legal, equitable, and contractual rights of the holders of Claims or equity interests in such class are not modified or altered. Holders of Allowed Claims and Interests in impaired classes are entitled to vote on a debtor's plan of reorganization. Under the Debtor's

---

[3] These amounts are estimates. All Professionals will be filing Final Fee Applications to be hear on the same day as the Confirmation Hearing for services rendered during the Debtor's bankruptcy cases. Accordingly, these fees are subject to modification pursuant to Bankruptcy Court Final Fee Orders.

Plan, Classes 3 and 5 are unimpaired and deemed to vote to accept the Plan. Holders of Claims in Classes 1, 2, and 4 are impaired and entitled to vote on the Plan.

(a)     Class 1 – Allowed Secured Claim of Laurie Munn

Class 1 consists of the Holder of the Allowed Secured Claim of the Greenberg Firm. The Holder of the Class 1 Allowed Secured Claim of the Greenberg Firm shall be paid in full upon release of the asset the Greenberg Firm is holding in escrow. The term of the underlying escrow agreement shall be extended such that Greenberg Firm shall continue to hold the coins.com domain name in escrow until such time as the Allowed Class 4 Claims are paid in full in accordance with this Plan. The Class 1 Claim is impaired under the Plan and the Holder is therefore entitled to vote on the Plan. The Debtor estimates that the Class 1 Allowed Secured Claim of the Greenberg Firm totals $5,000.00.

(b)     Class 2 – Allowed Claim of Latin Lending Group

Class 2 consists of the Holder of the Allowed Claim of Latin Lending Group. The Holder of the Class 2 Allowed Secured Claim shall be paid in full on or before the Closing Date. The Class 2 Claims are impaired under the Plan and the Holder is therefore entitled to vote on the Plan. The Debtor estimates that Class 2 Allowed Claim of Latin Lending Group total $15,000.00.

(c)     Class 3 – Allowed Non-Tax Priority Claims

Class 3 consists of Holders of Allowed Non-Tax Priority Claims. The Debtor shall pay to Holders of Class 3 Non-Tax Priority Claims the amount of their Allowed Claim in full and in Cash, on the Effective Date, in full and final satisfaction of its Claims as against the Debtor. Class 3 Claims are unimpaired under the Plan. The Holders are therefore not entitled to vote on the Plan and are deemed to accept the Plan. Class 3 Allowed Non-Tax Priority Claims total approximately $-0-.

(d)    Class 4 – General Unsecured Claims

Class 4 consists of the Holders of the Allowed General Unsecured Claims. The Holders of the Class 4 Claims shall be paid in full on or before nine months after the Effective Date. In the event the Debtor is unable to timely remit balance due on the Class 4, the Sale Process shall be commenced, as set forth in Section 4.2 of the Plan, with the proceeds of the Sale Process used to pay the balance due on the Allowed Class 4 Claims in full, with interest. For the avoidance of doubt, the Holders of Class 4 Claims shall be paid interest until such date as their Allowed Class 4 Claim is paid in full hereunder. The Class 4 Claims are impaired under the Plan and therefore the Holders are entitled to vote on the Plan. The Debtor estimates that Class 4 Allowed General Unsecured Claims total $448,007.75

(h)    Class 5 – Equity Interests

Class 5 consists of the Holder of Equity Interest in the Debtor. The Class 5 Equity Interest Holder shall retain his Equity Interest in the Debtor. The Class 5 Equity Interest Holder is unimpaired and is therefore deemed to accept the Plan.

(i)    Retiree Benefits

The Debtor has never funded or maintained any retiree benefit plans, funds or programs as defined in Section 1114 of the Bankruptcy Code, for the purpose or providing or reimbursing payments for retired employees or their spouses and dependents for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death under any plan, fund or program (through the purchase of insurance or otherwise). Accordingly, the Plan does not make provisions to pay any such benefits under Section 1129(a)(13) of the Bankruptcy Code.

**C.    Acceptance or Rejection of the Plan**

**1.   Voting Classes**

Each Holder of an Allowed Claim in Classes 1, 2, and 4 shall be entitled to vote to accept or reject the Plan.

**2.** **Acceptance By Impaired Classes of Claims**

Classes 1, 2, and 4 shall have accepted the Plan if (i) the Holders (other than any Holder designated under Section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such class have voted accept the Plan and (ii) more than one-half in number of the Holders (other than any Holder designated under Section 1126(c) of the Bankruptcy Code) of such Allowed Claims actually voting in such class have voted to accept the Plan.

**3.** **Presumed Acceptance of the Plan**

Classes 3 and 5 are deemed unimpaired under the Plan, and therefore, is deemed to accept the Plan under Section 1126(f) of the Bankruptcy Code.

**4.** **Application of 11 U.S.C. Section 1129(b)**

The Debtor intends to seek confirmation of the Plan through the "cram down" provisions of Section 1129(b) of the Bankruptcy Code in case any impaired Class of Creditors votes to reject the Plan.

**D.** **Miscellaneous Plan Provisions**

**1.** **Resolution Of Disputed Claims & Reserves**

(a)    Objections.  An objection to the allowance of a Claim shall be in writing and may be filed with the Bankruptcy Court by the Debtor or any other party in interest at any time within 90 days after the Effective Date, or within such other time period as may be fixed by the Bankruptcy Court.

(b)    Amendment of Claims.  A Claim may be amended prior to the Effective Date

only as agreed upon by the Debtor and the Holder of such Claim and as approved by the Bankruptcy Court or as otherwise permitted by the Bankruptcy Code and Bankruptcy Rules. After the Effective Date, a Claim may be amended as agreed upon by the Holder thereof and the Debtor to decrease, but not increase, the face amount thereof.

(c)     <u>Estimation of Disputed Claims.</u> The Debtor shall seek an order or orders from the Bankruptcy Court, estimating the maximum dollar amount of Allowed and Disputed Claims in each Class of Claims, inclusive of contingent and/or unliquidated Claims, or otherwise determining and fixing the amount of the Disputed Claims Reserve for each Class, and may seek to set the amount of any particular Claim for final allowance purposes pursuant to sections 105 and 502(c) of the Bankruptcy Code. This estimate shall be used to calculate and fix distributions to Holders of Allowed Claims and the amount of the respective Disputed Claims Reserve. Such a procedure may also be utilized for Administrative Expense Claims, Priority Tax Claims and Priority Non-Tax Claims. In the event the Debtor seeks to estimate such Claims, Disputed Claims Reserves shall be established for each such category of Claims.

(d)     <u>Disputed Claims Reserve</u>. The Debtor shall reserve for each Holder of a Disputed Claim that property which would otherwise be distributable to such Holder were such Disputed Claim an Allowed Claim on the Effective Date, or such other property as the Holder of such Disputed Claim and the Debtor may agree upon (the "Disputed Claims Reserve"). The property so reserved for the Holder, to the extent such Disputed Claim is allowed, and only after such Disputed Claim becomes a subsequently Allowed Claim, shall thereafter be distributed to such Holder.

(e)     <u>Distributions to Holders of Subsequently Allowed Claims</u>. Unless another date is agreed on by the Debtor and the Holder of a particular subsequently Allowed Claim, the Debtor

shall, within fourteen (14) days after a Final Order is entered by the Bankruptcy Court resolving

any Disputed Claim, make a distribution to the Holder of the previously Disputed Claim

consistent with the terms of the Plan in respect of such Holder's Allowed Claim as determined

by the Bankruptcy Court.

(f)     <u>Disputes Regarding Rights to Payments or Distribution</u>. In the event of any

dispute between and among Claimants (including Persons asserting the right to receive the

disputed payment or distribution) as to the right of any Person to receive or retain any payment

or distribution to be made to such Person under this Plan, the Disbursing Agent may, in lieu of

making such payment or distribution to such entity, remit the disputed portion of the Claim into

an escrow account, as ordered by a court of competent jurisdiction or as the interested parties to

such dispute may otherwise agree among themselves. Notwithstanding anything to the contrary,

the Disbursing Agent shall make distributions on account of the undisputed portion of a Claim to

such Claimants.

(g)     <u>Setoff</u>. Except as otherwise provided in the Plan, the Confirmation Order, or in

agreements previously approved by Final Order of the Bankruptcy Court, the Debtor's estate or

Reorganized Debtor, as the case may be, may, pursuant to Section 553 of the Bankruptcy Code

or applicable non-bankruptcy law, offset against any Claim and any distribution to be made on

account of such Claim, any and all of the Claims, rights and causes of action of any nature that

the Debtor or the estate may hold against the Holder of such Claim; provided, however, that

neither the failure to effect such a setoff, the allowance of any Claim hereunder, any other action

or omission of the Debtor or the estate, nor any provision of this Plan shall constitute a waiver or

release by the Debtor or the estate of any such Claims, rights and causes of action that the Debtor

or the estate may possess against such Holder. To the extent the estate fails to set off against a

Creditor and seek to collect a Claim from such Creditor after a distribution to such Creditor pursuant to the Plan, the estate shall be entitled to full recovery on its Claim against such Creditor.

(h)    <u>Claims Procedures Not Exclusive</u>. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another. On and after the Confirmation Date, Claims which have been estimated may subsequently be compromised, settled, withdrawn, or otherwise resolved without further order of the Bankruptcy Court.

## 2. **Unclaimed Property**

Except as otherwise provided herein, in the event any Claimant fails to claim any distribution within 120 days from the date of such distribution, such Claimant shall forfeit all rights thereto, and to any and all future payments, and thereafter the Claim for which such Cash was distributed shall be treated as a disallowed Claim. In this regard, distributions to Claimants entitled thereto shall be sent to their last known address set forth on a proof of claim filed with the Bankruptcy Court or if no proof of claim is filed, on the Schedules filed by the Debtor or to such other address as may be designated by a Creditor. The Disbursing Agent, Debtor and Reorganized Debtor shall use their collective best efforts to obtain current addresses for all Claimants. The Disbursing Agent shall notify the Debtor of all returned distributions. All unclaimed cash shall be returned to the Reorganized Debtor.

## 3. **Disputed Payments or Distribution**.

In the event of any dispute between and among Claimants (including Persons asserting the right to receive the disputed payment or distribution) as to the right of any Person to receive or retain any payment or distribution to be made to such Person under this Plan, the Disbursing

Agent may, in lieu of making such payment or distribution to such entity, remit the disputed portion of the Claim into an escrow account, as ordered by a court of competent jurisdiction or as the interested parties to such dispute may otherwise agree among themselves. Notwithstanding anything to the contrary, the Disbursing Agent shall make distributions on account of the undisputed portion of a Claim to such Claimants.

4. **Discharge of the Debtor.**

**Occurrence of the Effective Date shall result in the discharge of any indebtedness or entitlement to interest or other such legal or equitable right to payment not specifically contemplated by the Plan as against the Debtor. Nothing in the Confirmation Order or the Plan shall effect a release of any Claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against released parties, nor shall anything in the Confirmation Order or the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against released parties for any liability whatever, including, without limitation, any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state or local authority, nor shall anything in the Confirmation Order or the Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the released parties.**

5. **Exculpation.**

Neither the Debtor, nor the Reorganized Debtor, nor any of their respective members, officers, directors, general partners, managing agents, owners, or employees (acting in such capacity) nor any professional person employed by the Debtor, the Reorganized Debtor, shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement, the Plan Support Agreement, or any other contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Chapter 11 Case or the Plan. From and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute and may be submitted as a complete defense to any claim or liability satisfied, discharged and released pursuant to the Plan; provided, however, that nothing in the Plan shall, or shall be deemed to, release the Debtor or Reorganized Debtor from, or exculpate the Debtor or Reorganized Debtor with respect to, their respective obligations or covenants arising pursuant to the Plan from willful misconduct, gross negligence, breach of fiduciary duty, malpractice, fraud, criminal conduct, unauthorized use of confidential information that causes damages, and/or ultra vires acts. If the Plan is confirmed containing releases of liability as to the Debtor and the Reorganized Debtor creditors will be unable to pursue any Claims that are discharged under the Plan, but creditors can pursue Claims against the Debtor or the Reorganized Debtor that may arise in the future, or pursuant to the Plan. Any such liability against the Debtor's professionals also will not be limited to their respective clients contrary to the requirement of 1.8(h)(1) of the New York State Rules of Professional Conduct, as promulgated in April 2009.

6. **Injunction**.

Except as otherwise expressly provided in the Plan, any and all entities who have held, hold or may hold Claims against or Equity Interests in the Debtor shall, as of the Effective Date, be enjoined from:

(a) commencing, conducting, or continuing, in any manner, any suit, action, or other proceeding of any kind (including, without limitation, in any judicial, arbitral, administrative or other forum) against the Reorganized Debtor arising out of any act or omission of the Debtor;

(b) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collection or otherwise recovering by any manner or means, whether directly or indirectly, or any judgment, award, decree, or order against the Reorganized Debtor with regard to such entities' Claim against the Debtor;

(c) creating, perfecting or otherwise enforcing, in any manner, directly or indirectly, any encumbrance of any kind against the Reorganized Debtor, the property of the Reorganized Debtor, or any successor-in-interest to the Reorganized Debtor;

(d) asserting any set off, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due the Reorganized Debtor, the property of the Reorganized Debtor, or any successor-in-interest to the Reorganized Debtor; and

(e) acting in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

7. **Professional Liability**.

In addition, no provision contained herein shall have the effect of limiting the liability of the professionals of the Debtor or the Reorganized Debtor to their clients contrary to the

requirements of 1.8(h)(1) of the New York State Rules of Professional Conduct, as promulgated in April, 2009, or for fraud, gross negligence, willful misconduct, malpractice, criminal conduct or unauthorized use of confidential information that causes damages, or ultra vires acts

8. **Amendment, Modification, Withdrawal or Revocation of the Plan.**

The Debtor reserves the right, in accordance with the Bankruptcy Code, to amend or modify the Plan prior to the Confirmation Date or as soon as practicable thereafter. After the Confirmation Date, the Reorganized Debtor may, subject to order of the Bankruptcy Court, and in accordance with Section 1127(b) of the Bankruptcy Code, remedy any defect or omission or reconcile any inconsistencies in the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan.

The Debtor reserves the right to revoke or withdraw the Plan prior to the Effective Date. If the Debtor revokes or withdraws the Plan, then the result shall be the same as if the Confirmation Order was not entered and the Effective Date did not occur.

9. **Retention of Jurisdiction**

The Debtor and such other applicable parties in interest as set forth in the Plan reserve the right, as set forth in the Plan, to institute preference, fraudulent conveyance, and other litigation claims within the time period proscribed by the Bankruptcy Code, Bankruptcy Rules, other applicable law, or such time period as may be fixed by the Bankruptcy Court.

The Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Case and the Plan pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)      To determine all controversies relating to, or concerning, the allowance of Claims

upon objection to such Claims by any party in interest;

(b)     To determine requests for payment of Claims entitled to priority under Section 507(a)(2) of the Bankruptcy Code, including any and all applications for compensation or Professional Persons;

(c)     To determine and, if necessary, liquidate, any and all Claims arising from the rejection of any Executory Contracts;

(d)     To determine any and all applications, adversary proceedings, and contested or litigated matters over which the Bankruptcy Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334;

(e)     To determine all disputed, contingent or unliquidated Claims;

(f)     To determine requests to modify this Plan pursuant to Section 1127 of the Code, or to remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order to the extent authorized by the Bankruptcy Code;

(g)     To make such orders as are necessary or appropriate to carry out the provisions of this Plan;

(h)     To resolve controversies and disputes regarding the interpretation or enforcement of the terms of this Plan; and

(i)     To enter a final decree closing the Chapter 11 Case.

**10. Contracts and Unexpired Leases**

The Debtor is not a party to any executory contracts or unexpired leases. As such, assumption or rejection elections under this Plan are not applicable.

**11. Post-Confirmation Fees, Final Decree**

The Debtor shall be responsible for filing post-confirmation disbursement reports with the Bankruptcy Court and shall pay all quarterly fees required under 28 U.S.C. Section 1930 and 31 U.S.C. Section 3717 until the earlier of (a) conversion or dismissal of the Chapter 11 Case or (b) entry of a final decree closing the Chapter 11 Case, and paying such fees as may be levied by the U.S. Trustee pursuant to 28 U.S.C. Section 1930 as are assessed.

**12. <u>Continuation of Bankruptcy Stays</u>**

All stays provided for in the Chapter 11 Case under Section 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

**13. <u>Treatment of Equity Security Holders</u>**

Under the Plan, the Class 5 Equity Interests shall retain his Equity Interest in the Debtor and are therefore deemed to accept the Plan.

**14. <u>Conditions to Effective Date of the Plan</u>**

The Plan shall not become effective unless and until the following conditions shall have been satisfied or waived:

(a)     the Confirmation Order in form and substance reasonably acceptable to the Debtor, shall have been entered by the Bankruptcy Court and shall have become a Final Order;

(b)     all actions, other documents and agreements necessary to implement the Plan shall have been effected or executed and delivered.

In the event that one or more of the conditions specified have not occurred on or before thirty (30) days after the Confirmation Date, upon notification submitted by the Debtor to the Bankruptcy Court (a) the Confirmation Order shall be vacated, (b) no distributions under the Plan shall be made, (c) the Debtor and all Holders of Claims and Equity Interests shall be

restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred and (d) the Debtor's obligations with respect to the Claims and Equity Interests shall remain unchanged and nothing contained herein shall constitute or be deemed a waiver or release of any Claim or Equity Interest by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

## IV.  PLAN CONFIRMATION AND  EXECUTION

The following is a brief summary of the provisions of the Bankruptcy Code respecting acceptance and confirmation of a plan of reorganization. Holders of Claims and Equity Interests are encouraged to review the relevant provisions of the Bankruptcy Code and/or to consult their own attorneys.

### A.      Acceptance of the Plan

This Disclosure Statement is provided in connection with the solicitation of acceptances of the Plan. The Bankruptcy Code defines acceptance of a plan or reorganization by a class of Claims as acceptance by holders of at least two-thirds in dollar amount, and more than one-half in number, of the allowed Claims of that class that have actually voted or are deemed to have voted to accept or reject a plan. The Bankruptcy Code defines acceptance of a plan of reorganization by a class of interests as acceptance by at least two-thirds in amount of the allowed interests of that class that have actually voted or are deemed to have voted to accept or reject a plan. The Bankruptcy Court will confirm the Plan only if it finds that all of the requirements of Section 1129(a) or (b) of the Bankruptcy Code are met. Among the requirements for confirmation of a plan are that the plan (i) is accepted by all impaired Classes of Claims and Interests or, if rejected or deemed rejected by an impaired Class, "does not discriminate unfairly"

and is "fair and equitable" as to each rejecting class; (ii) is feasible; and (iii) is in the "best interest" of Creditors and Interest Holders impaired under the Plan

**B.      Solicitation of Votes**

Each Holder of a Claim in Class 4have been sent a ballot together with this Disclosure Statement. The ballot is to be used for voting to accept or reject the Plan.

The Bankruptcy Court has directed that, to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be mailed or delivered by hand or courier so that they are  <u>ACTUALLY RECEIVED</u>  no later than 5:00 p.m. (Eastern Standard Time) on _____, 2020 at the following address:

**Kirby Aisner & Curley LLP**
**700 Post Road, Suite 237**
**Scarsdale, New York 10583**
**Attn: Erica Aisner, Esq.**

**TO BE COUNTED. YOUR BALLOT MUST BE ACTUALLY RECEIVED BY 5:00 P.M. (EASTERN STANDARD TIME) ON _____, 2020.**

Each Holder of an Allowed Claim in Classes 1, 2, and 4 shall be entitled to vote to accept or reject the Plan as provided for in the order approving the Disclosure Statement. A vote may be disregarded if the Bankruptcy Court determines that such vote was not solicited or procured in good faith and in accordance with the Bankruptcy Code.

All Holders of Claims in Classes 3 and 5 are deemed unimpaired under the Plan, such Holders are deemed to accept the Plan and, accordingly, are not entitled to vote on the Plan.

**C.      Fair and Equitable Test; Cramdown**.

Notwithstanding a rejection by a Class of impaired Creditors, the Bankruptcy Court may

confirm the Plan and the Plan will be binding upon all Classes, including the Classes rejecting the Plan, if it is demonstrated to the Bankruptcy Court that at least one impaired Class of Claims has accepted the Plan and that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to each non-accepting Class. A plan does not discriminate unfairly if the legal rights of a dissenting Class are treated in a manner consistent with the treatment of other Classes whose legal rights are similar to those of the dissenting Class and if no Class receives more than it is entitled to on account of its Claims or Equity Interests.

The Bankruptcy Code establishes different "fair and equitable" test for General Unsecured Claims and Equity Interests as follows:

(a) <u>General Unsecured Claims</u>. Either (i) each Holder of a General Unsecured Claim in a non-accepting Impaired Class receives or retains under the Plan property of a value, as of the Effective Date, equal to the Allowed amount of such Claim, or (ii) the Holders of any Claims or Equity Interests that are junior to the Claims of the dissenting Class will not retain any property under the Plan.

(b) <u>Equity Interest Holders</u>. Under the Plan, the Class 5 Equity Interests shall retain his Equity Interest in the Debtor.

THE DEBTOR INTENDS TO SEEK CONFIRMATION OF THE PLAN UNDER THE "CRAM DOWN" PROVISIONS OF SECTION 1129(b) OF THE BANKRUPTCY CODE IN THE EVENT THAT THE PLAN IS REJECTED BY ANY CLASS OF IMPAIRED CREDITORS. THE DEBTOR BELIEVES THAT THE PLAN IS FAIR AND EQUITABLE AND DOES NOT DISCRIMINATE UNFAIRLY AGAINST ANY CLASS OF IMPAIRED CREDITORS.

**D. Confirmation**

1. **<u>Confirmation Hearing</u>**

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of a plan. Notice of the Confirmation Hearing of the Plan has been provided to all known holders of Claims and Equity Interests or their representatives along with this Disclosure Statement. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement of the adjourned date made at the Confirmation Hearing or any subsequent Confirmation Hearing. At the Confirmation Hearing, the Bankruptcy Court will (i) determine whether the Plan has been accepted by the requisite majorities of each voting class; (ii) hear and determine all objections to the Plan and to confirmation of the Plan; (iii) determine whether the Plan meets the requirements of the Bankruptcy Code and has been proposed in good faith; and (iv) confirm or refuse to confirm the Plan.

Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of a plan. Any objection to Confirmation of the Plan must be in writing, must conform with the Bankruptcy Rules and the Local Rules of the Bankruptcy Court, must set forth the name of the objectant, the nature and amount of Claims or Equity Interests held or asserted by the objectant against the Debtor's estate or property, and the basis for the objection and the specific grounds in support thereof. Such objection must be filed with the Bankruptcy Court together with proof of service thereof, and served upon:

To the Debtor:

Kirby Aisner & Curley LLP
700 Post Road, Suite 237
Scarsdale, New York 10583
(914) 401-9500
Attn: Erica Aisner, Esq.

To the Office of the United States Trustee:

Office of the United States Trustee
Southern District of New York
201 Varick Street #1006
New York, New York 10014
Attn: Andrew D. Velez-Rivera, Esq.

so as to be received no later than _____, 2020 the date and time designated in the notice of the Confirmation Hearing.

2. <u>**Statutory Requirements for Confirmation of the Plan**</u>

At the Confirmation Hearing, the Debtor will request that the Bankruptcy Court determine that the Plan satisfies the requirements of Section 1129 of the Bankruptcy Code. If so, the Bankruptcy Court shall enter an order confirming the Plan. The applicable requirements of Section 1129 of the Bankruptcy Code are as follows:

(a)     The Plan must comply with the applicable provisions of the Bankruptcy Code;

(b)     The Debtor must have complied with the applicable provisions of the Bankruptcy Code;

(c)     The Plan has been proposed in good faith and not by any means forbidden by law;

(d)     Any payment made or promised to be made by the Debtor under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, has been disclosed to the Bankruptcy Court, and any such payment made before Confirmation of the Plan is reasonable, or if such payment is to be fixed after Confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable;

(e)     The Debtor has disclosed the identity and affiliation of any individual proposed to serve, after Confirmation of the Plan, as a director, officer, or voting trustee of the Debtor under the Plan. Moreover, the appointment to, or continuance in, such office of such individual, is consistent with the interests of holders of Claims and Equity Interests and with public policy, and the Debtor has disclosed the identity of any insider that the Reorganized Debtor will employ or retain, and the nature of any compensation for such insider.

(f)     Feasibility and "Best Interest" Tests: The Bankruptcy Code requires that in order to confirm the Plan the Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization of the Debtor (the "Feasibility Test"). For a Plan to meet the Feasibility Test, the Bankruptcy Court must find that the Debtor will possess the resources and working capital necessary to remain a viable entity and meet its obligations under the Plan. In addition, the Bankruptcy Court must determine that the values of the distributions to be made under the Plan to each Class will equal or exceed the values which would be allocated to such Class in a liquidation under Chapter 7 of the Bankruptcy Code (the "Best Interest Test"). The Best Interest Test with respect to each impaired Class requires that each holder of a Claim or Interest in such Class either (i) accept the Plan or (ii) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code.

To determine if the Plan is in the best interest of each class, the probable results of Chapter 7 liquidation must be compared with the results proposed under the Plan. In a Chapter 7 liquidation, creditors and interest holders of a debtor are paid from available assets generally in the following order, with no lower class receiving any payments until all amounts due to senior

classes have either been paid in full or payment in full is provided for: (i) first to secured creditors (to the extent of the value of their collateral); (ii) next to priority creditors, (iii) next to unsecured creditors, (iv) next to debt expressly subordinated by its terms or by order of the Bankruptcy Court, and (v) last to holders of equity interests. Attached hereto as **Exhibit "C"** is a Liquidation Analysis prepared by the Debtor. In light of the foregoing priority, the Debtor believes that if this Chapter 11 case was converted to a Chapter 7 liquidation there would be a significant time delay in which the claimants would receive their distributions. In a Chapter 7 case, there would likely be a delay in the marshaling of the Debtor's assets including the pursuit of litigation which would cause a delay in a distribution to creditors. Therefore, the Plan proposes to maximize the value of the assets in the most cost-efficient manner.

The Plan therefore satisfies all of the statutory requirements of Chapter 11 of the Bankruptcy Code, including the "best interest" and feasibility requirements. The Plan is "fair and equitable" and "does not discriminate unfairly". The Plan complies with all other requirements of Chapter 11 of the Bankruptcy Code and the Plan has been proposed in good faith.

(g)     The Plan therefore satisfies all of the statutory requirements of Chapter 11 of the Bankruptcy Code, including the "best interest" and feasibility requirements. The Plan is "fair and equitable" and "does not discriminate unfairly". The Plan complies with all other requirements of Chapter 11 of the Bankruptcy Code and the Plan has been proposed in good faith.

## E.     Means for Implementation of the Plan

The Debtor proposes to fund the Plan from a capital infusion from the Perzow, individually, in the amount necessary to fund interest payments to all creditors through the Outside Payment Date, which shall be deposited with the Disbursing Agent prior to the Confirmation Hearing. The balance of the funds necessary for the distributions under the Plan

shall either come from capital raised by the Debtor in connection with the launch of its business or from the sale of the Debtor's assets in accordance with this Plan.

**F.      Marketing and Sale Process**

If the Debtor is unable to make the balance of the distributions due under Section 3.2(d) by the Outside Date, the Debtor shall engage the Broker to market and sell the *coins.com* domain name for the highest and best price. In the event that the Debtor elects to retain a Broker other than Sedo, such Broker must be approved in writing by the Escrow Agent. Upon Closing, the proceeds of sale shall be distributed to holders of Claims and Equity Interests in the same manner as provided for in Article III herein. The Broker shall be permitted a marketing period of no less than six (6) months from the Outside Payment Date with any public auction to be held no later than the Auction Date. The closing on the sale of the domain name shall occur no later than the Closing Date.

The sale of the *coins.com* domain, whether pursuant to a private sale or public auction, shall be free and clear of any and all Claims, liens, encumbrances, equities and Interests of any nature or kind (collectively, "*Liens*") and shall constitute a sale under sections 105, 363(b), 363(f), 1123(b)(4) and 1129 of the Bankruptcy Code.

In the event that a buyer cannot be produced by the Broker by the Auction Date, the Escrow Agent shall be permitted to release the *coins.com* domain name back to Stack's in full satisfaction of its Class 4 Claim and the Plan shall be deemed in default.

Notwithstanding any of the foregoing, the Debtor and/or its principal shall have the absolute right to satisfy all Allowed Claims, through any means available, at any time up to the date of any public auction.

**G.      Avoidance Actions**

As of and subject to the occurrence of the Effective Date, the Debtor and the Reorganized Debtor, for and on their respective behalves and the estate, will waive and release any Avoidance Actions, which are defined in the Plan as any cause of Action under Sections 510, 542, 543, 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code or state law if made applicable under such Bankruptcy Code section. The Debtor believes, after a thorough investigation and review with its counsel, that no Avoidance Actions exist.

**H.      Financial Information**

(a)      <u>Debtor's Schedules of Assets and Liabilities</u>. Schedules of the Debtor's assets and liabilities have been respectively filed with the Clerk of the Court and may be inspected by all interested parties.

(b)      <u>Post-Petition Liabilities</u>. During the Debtor's Chapter 11 period, the Debtor has accumulated no post-petition obligations and additional administrative expenses, other than those incurred in the ordinary course of the Debtor's operations, and those liabilities attributable to duly retained professionals and United States Trustee Fees pursuant to 28 U.S.C. §1930. The Debtor shall be pay these claims in full, in Cash, in such amounts as (a) are Allowed by the Bankruptcy Court upon the Effective Date.

(c)      <u>The Estimated Amounts Required On Confirmation:</u>

| | |
|---|---|
| Administrative Expense Claims[4] | $0.00 |
| Administrative Professional Fees (Category 2)(Estimated) | $85,000 |

---

[4] Such Claims will be paid in the ordinary course of the Reorganized Debtor's business on ordinary payment terms. In addition, all Category 1 Administrative Expenses shall be brought current pursuant to the ordinary payment terms prior to the Confirmation Date, including but not limited to all such obligations to the Debtor's unions and taxing authorities.

| | |
|---|---|
| Distribution to Class 1 Allowed Secured Claim of the Greenberg Firm | $5,000 |
| Distribution to Class 2 Allowed Claim of Latin Lending Group | $15,000 |
| Distribution to Class 3 Allowed Non-Tax Priority Claims | $0.00 |
| Distribution to Class 4 Allowed General Unsecured Claims | $0 |
| **TOTAL AMOUNT REQUIRED ON CONFIRMATION** | **$105,000** |

(d)    <u>Feasability</u>. The Debtor believes that the Plan is feasible insofar as in the event the Debtor is unable to make the balance of the distributions due under the Plan, the Debtor shall market and sell its assets.

(e)    <u>Liquidation Analysis</u>. If this case were liquidated under Chapter 7 of the Bankruptcy Code as opposed to the means set forth herein, Class 4 General Unsecured Claims would not receive a distribution at all on their Claims. An updated Liquidation Analysis is annexed hereto as **Exhibit "C".** After careful review of the Debtor's estimated recoveries in a liquidation scenario the Debtor has concluded that the recovery to creditors will be maximized by the Plan.  The Debtor believes that its business and assets have a value that would be maximized in a Chapter 11 reorganization.  According to the liquidation and other analyses prepared by the Debtor with the assistance of their financial advisors, the value of the Debtor's Estate is considerably greater in a Chapter 11 reorganization than as in a liquidation pursuant to Chapter 7 of the Bankruptcy Code.

THE DEBTOR THEREFORE RECOMMENDS ACCEPTANCE OF THE PLAN. CREDITORS SHOULD ALSO CONSULT AMONG THEMSELVES AND THEIR COUNSEL IN DETERMINING WHETHER TO ACCEPT THE PLAN.

## V. <u>POST-CONFIRMATION MATTERS</u>

**A.    Disbursement of Funds and Delivery of Distribution**

The Disbursing Agent shall be Kirby Aisner & Curley LLP, counsel for the Debtor (the

"Disbursing Agent"). The Disbursing Agent anticipates receiving the amounts required on confirmation under the Plan on or prior to the confirmation hearing.

The Disbursing Agent shall not be liable for any distributions made in accordance with this Plan.

Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent (rounding down in the case of .50 or less and rounding up in the case of more than .50).

The Disbursing Agent shall, with the consent of the Debtor, establish a reserve from available cash necessary in order to satisfy post-confirmation fees and expenses of the Professionals and the Disbursing Agent, respectively.

The Disbursing Agent shall not be liable to the Debtor, any creditor or any other person, firm or corporation, for any error of judgment or for any mistake of law or fact or any act done caused to be done, or omitted to be done, by the Disbursing Agent or any or its agents. The Disbursing Agent shall be liable only for acts of willful misconduct, gross negligence or breach of fiduciary duty by itself or such agents.

With respect to services to be rendered by the Disbursing Agent, the Debtor's estate shall pay the reasonable compensation and out-of-pocket expenses incurred by the Disbursing Agent upon submission of written invoice. In the event of a dispute with respect thereto, such dispute shall be subject to determination by the Bankruptcy Court.

**B.    Unclaimed Cash**

Except as otherwise provided herein, in the event any Claimant fails to claim any distribution within 120 days from the date of such distribution, such Claimant shall forfeit all rights thereto, and to any and all future payments, and thereafter the Claim for which such cash

was distributed shall be treated as a disallowed Claim. In this regard, distributions to Claimants entitled thereto shall be sent to their last known address set forth on a proof of claim filed with the Bankruptcy Court or if no proof of claim is filed, on the Schedules filed by the Debtor, as may have been amended from time to time, or to such other address as may be designated by a Creditor, such notification having been received at least two (2) weeks prior to a distribution so as to allow the Debtor adequate time to update its records. In the case of distributions to entities which are returned due to an incorrect, incomplete or out of date address, the Debtor, in its sole discretion, shall take those steps deemed reasonable and appropriate to ascertain a correct or new address of any such entity. Nothing contained in the Plan or this Disclosure Statement will require the Debtor to attempt to locate any holder of an Allowed Claim. If after such reasonable and appropriate steps, a correct or new address cannot be found, then such entity shall forfeit all rights to such unclaimed distribution, which shall be remitted to the Reorganized Debtor.

## C. Post-Effective Date Management of the Reorganized Debtor.

As of the Effective Date, Adam Perzow shall manage the day-to-day operations of the Reorganized Debtor and shall hold the title of Chief Executive Officer of the Reorganized Debtor. Mr. Perzow shall not receive any salary or compensation until all of the payments due under the Plan are completed.

## D. Events of Default

The occurrence of any of the following events shall constitute an event of default under the Plan ("Event of Default"):

(a) The failure of the Debtor to make any payment required to be made under the Plan, which failure shall have remained uncured for a period of ten (10) days after the date such payment is required to be made, unless the time for such payment has been extended in

accordance with the Plan.

(b) The failure of the Debtor to comply with any of the covenants contained in the Plan, which failure shall remain uncured for a period of ten (10) days after the Debtor has received written notice of such failure.

In the event that the Debtor defaults under the provisions of the Plan, and such default is not cured, then, at the option of any creditor or the United States Trustee, a motion may be filed with the Bankruptcy Court seeking an Order of the Bankruptcy Court compelling the Debtor to make such payment or act in a manner consistent with the provisions of the Plan or seeking the conversion this Chapter 11 Case to a Chapter 7 case.

## VI. <u>TAX CONSEQUENCES OF CONFIRMATION</u>

Confirmation may have federal income tax consequences for the Debtor and holders of Claims and Interests. The Debtor has not obtained and does not intend to request a ruling from the Internal Revenue Service (the "IRS"), nor has the Debtor obtained an opinion of counsel with respect to any tax matters. Any federal income tax matters raised by confirmation of the Plan are governed by the Internal Revenue Code and the regulations promulgated thereunder. Creditors and holders of Interests are urged to consult their own counsel and tax advisors as to the consequences to them, under federal and applicable state, local and foreign tax laws, of the Plan. The following is intended to be a summary only and not a substitute for careful tax planning with a tax professional. The federal, state and local tax consequences of the Plan may be complex in some circumstances and, in some cases, uncertain. Accordingly, each holder of a Claim or Interest is strongly urged to consult with his or her own tax advisor regarding the federal, state and local tax consequences of the Plan, including but not limited to the receipt of cash and/or stock under this Plan.

A.      **Tax Consequences to the Debtor.**

The Debtor may not recognize income as a result of the discharge of debt pursuant to the Plan because Section 108 of the Internal Revenue Code provides that taxpayers in bankruptcy proceedings do not recognize income from discharge of indebtedness.  However, a taxpayer is required to reduce its "tax attributes" by the amount of the debt discharged.  Tax attributes are reduced in the following order:  (i) net operating losses; (ii) general business credits; (iii) capital loss carryovers; (iv) basis in assets; (v) passive activity loss and credit carryovers; and (vi) foreign tax credit carryovers.

B.      **Tax Consequences to Unsecured Creditors.**

An unsecured creditor that receives cash in satisfaction of its Claim may recognize gain or loss, with respect to the principal amount of its Claim, equal to the difference between (i) the creditor's basis in the Claim (other than the portion of the Claim, if any, attributable to accrued interest), and (ii) the balance of the cash received after any allocation to accrued interest.  The character of the gain or loss as capital gain or loss, or ordinary income or loss, will generally be determined by whether the Claim is a capital asset in the creditor's hands.  A creditor may also recognize income or loss in respect of consideration received for accrued interest on the Claim. The income or loss will generally be ordinary, regardless of whether the creditor's Claim is a capital asset in its hands.


VII. <u>**ALTERNATIVES TO THE PLAN AND CONSEQUENCES OF NOT CONFIRMING**</u>

Among the possible consequences if the Bankruptcy Court should not confirm the Plan are the following: (1) an alternative plan could be proposed or confirmed; or (2) the Chapter 11 Case could be converted to liquidation under Chapter 7 of the Bankruptcy Code.

**A.** **Alternative Plans**

As previously mentioned, with respect to an alternative plan, the Debtor and its professional advisors have explored various alternative scenarios and believe that the Plan enables the holders of Claims and Equity Interests to realize the maximum recovery under the circumstances. The Debtor believes that the Plan is the best plan that can be proposed and serves the best interest of the Debtor and other parties-in-interest.

**B.** **Chapter 7 Liquidation**

For a discussion of Chapter 7 liquidation, see Section V, D, 2, (f) above entitled "Plan Confirmation and Execution – Confirmation – Statutory Requirements for Confirming a Plan – Feasibility and 'Best Interest' Test." The Debtor believes that if this Chapter 11 case was converted to Chapter 7 liquidation, Class 4 Claims and Class 5 Interests would not receive a distribution at all on their Claims or Interests and only after a likely delay in the marshaling of the Debtor's assets including the pursuit of litigation which would cause a delay in a distribution to creditors.

## VIII. <u>RECOMMENDATION AND CONCLUSION</u>

The Debtor and its professional advisors have analyzed different scenarios and believe that the Plan is preferable to a conversion to cases under Chapter 7 of the Bankruptcy Code. The Plan will provide greater recoveries than those available in liquidation to all holders of Claims. Any other alternative would cause significant delay and uncertainty, as well as substantial administrative costs.

**ACCORDINGLY, THE DEBTOR BELIEVES THAT THE PLAN PROVIDES THE BEST RECOVERY POSSIBLE FOR CLAIMHOLDERS, AND THE DEBTOR STRONGLY RECOMMENDS THAT YOU VOTE TO ACCEPT THE PLAN.**

THE FOLOWING WAS A BRIEF SUMMARY OF THE PLAN AND SHOULD NOT BE RELIED ON FOR VOTING PURPOSES WITHOUT YOUR ALSO READING THE PLAN. THE PLAN REPRESENTS A PROPOSED LEGALLY BINDING AGREEMENT BETWEEN THE DEBTOR AND ITS CREDITORS, AND SHOULD BE READ TOGETHER WITH THIS DISCLOSURE STATEMENT IN ORDER THAT AN INTELLIGENT AND INFORMED JUDGMENT CONCERNING THE PLAN CAN BE MADE.

Dated: Scarsdale, New York
       January 24, 2020

KIRBY AISNER & CURLEY, LLP
Attorneys for the Debtor
700 Post Road, Suite 237
Scarsdale, New York 10583
(914) 401-9500

By: */s/ Dawn Kirby*
       Dawn Kirby