Jeffrey Chubak
AMINI LLC
131 West 35th Street, 12th Floor
New York, New York 10001
(212) 490-4700
jchubak@aminillc.com
*Proposed Attorneys for the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| HAMPSTEAD GLOBAL, LLC, | Case No. 19-22721-rdd |
| Debtor. | |

**SECOND AMENDED CHAPTER 11 PLAN**
**(SUBCHAPTER V)**

## TABLE OF CONTENTS

                                                                                                                                                **Page**

BACKGROUND ........................................................................................................................... 1

    A.     Description and History of the Debtor's Business ................................................... 1

           1.        The Purchase Agreement ............................................................................ 1

           2.        Events Leading to the Commencement of this Chapter 11 Case ............................ 2

           3.        Capital Structure ......................................................................................... 2

    B.     Liquidation Analysis ................................................................................................ 3

    C.     Ability to Make Future Plan Payments and Operate Without Further Reorganization ...... 4

    D.     Subchapter V Election .............................................................................................. 4

ARTICLE I DEFINITIONS AND RULES OF CONSTRUCTION ............................................. 6

1.1     Definitions and Rules of Construction ............................................................................ 6

1.2     Computation of Time ...................................................................................................... 6

ARTICLE II TREATMENT OF UNCLASSIFIED CLAIMS ...................................................... 6

2.1     Administrative Expense Claims ...................................................................................... 6

2.2     Bankruptcy Fees ............................................................................................................. 7

ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ........ 7

3.1     Classification ................................................................................................................... 7

3.2     Treatment of Claims and Interests .................................................................................. 7

           (a)       Class 1—Escrow Agent .............................................................................. 7

           (b)       Class 2—Latin Lending Group ................................................................... 7

           (c)       Class 3—Stack's Bowers ............................................................................. 8

           (d)       Class 4—Other Unsecured Claims .............................................................. 8

           (e)       Class 5—Interests ........................................................................................ 8

ARTICLE IV MEANS FOR IMPLEMENTATION ..................................................................... 8

4.1     Management of the Debtor ............................................................................................. 8

4.2     Coins.com URL .............................................................................................................. 8

4.3     Source of Cash for Payments ......................................................................................... 9

4.4     Preservation of Causes of Action; Setoff ....................................................................... 9

4.5     Remedies in the Case of Default .................................................................................... 9

ARTICLE V PROVISIONS GOVERNING PAYMENTS ......................................................... 10

5.1     Debtor to Make Payments ............................................................................................ 10

5.2     Delivery of Payments ................................................................................................... 10

5.3     Time Bar to Cash Payments .......................................................................................... 10

5.4     No Interest ..................................................................................................................... 10

5.5     Disputed Claims Reserve .............................................................................................. 10

5.6     Resolution of Disputed Claims ..................................................................................... 10

5.7     Withholding Taxes ........................................................................................................ 10

ARTICLE VI EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............................ 11

6.1     Rejection of Executory Contracts and Unexpired Leases ............................................. 11

6.2     Rejection Damages Claims ........................................................................................... 11

ARTICLE VII DISCHARGE ........................................................................................................ 11

7.1     Discharge ...................................................................................................................... 11

ARTICLE VIII MISCELLANEOUS ............................................................................................ 11

8.1     Severability ................................................................................................................... 11

8.2     Binding Effect ............................................................................................................... 11

8.3     Captions ........................................................................................................................ 11

8.4     Governing Law ............................................................................................................. 12

8.5     Corporate Governance .................................................................................................. 12

8.6     No Amendments ........................................................................................................... 12

## BACKGROUND

**A.    Description and History of the Debtor's Business**

1.    <u>The Purchase Agreement</u>

The Debtor is a Delaware LLC formed by Adam Perzow, its sole member and manager, for the purpose of acquiring the domain name http://www.coins.com ("Coins.com URL") and monetizing the same.

The Debtor's business plan was, and remains, to develop a consumer focused fintech company, serving as a global digital currency exchange and unified affiliate network and hub, operating in international markets utilizing the Coins.com URL (and brand). Specifically, the plan is to position Coins.com as the Google of digital value—without the need to incur the expense of creating jurisdictionally-compliant operations and infrastructure—through the creation and development of partnership and joint ventures in each jurisdiction with already-established players who wish to unify under a single, global brand (Coins.com). Thus, for example, Coins.com Europe (http://www.eu.coins.com) would be a joint venture between a local digital asset brokerage and the Debtor, wherein the Debtor would have a licensing and profit participation in the jurisdiction's activities. The line of business relies mainly on the infrastructure of the local partner and leverages brand awareness and marketing which will be handled by Debtor's management.[1]

The Debtor entered into a Purchase and Sale Agreement for Coins.com Domain Name with Stack's-Bowers Numismatics, LLC, a Delaware LLC ("Stack's Bowers"), dated as of April 30, 2018 ("Purchase Agreement").

Pursuant to the Purchase Agreement, the Debtor agreed to purchase the Coins.com URL in consideration for $1.7 million, payable according to the following schedule: $300,000 due within five (5) business days following April 30, 2018; $300,000 due ten (10) months after April 30, 2018; $200,000 due thirteen (13) months after April 30, 2018; $300,000 due sixteen (16) months after April 30, 2018; and $600,000 due twenty-five (25) months after April 30, 2018.

The Purchase Agreement provided for the Coins.com URL to be held in escrow by a Washington, D.C. intellectual property law firm, Greenberg & Lieberman, LLC ("Escrow Agent"), pending the completion of payments, and on terms set forth in a Three-Party Escrow Agreement, dated May 1, 2018, annexed as an exhibit to the Purchase Agreement ("Escrow Agreement").

---

[1] In addition, the Debtor has since 2017 been working towards developing a platform to permit fractional investments in physical and digital rare assets (art, jewelry, rare coins, etc.) utilizing the domain name http://www.rarex.com ("Rarex.com URL"), which the Debtor purchased from Latin Lending Group. In this regard the Debtor is currently working with a well-recognized and well-regarded technology industry executive with the specialized skills and expertise needed to continue developing the platform. The business would permit anyone to purchase a fractional investment in a piece of art, limited edition collector car, marquis real estate asset, or a rare coin. The platform would utilize blockchain technology and the Debtor anticipates its being highly synergistic with the Coins.com URL business. A 23-page business plan describing the concept has been filed at Dkt. No. 61-2.

1

Pursuant to the Purchase Agreement, while in escrow the Debtor has the right to use the Coins.com URL (a) to host content concerning blockchain and cryptocurrency and direct the Coins.com URL to other websites, provided the foregoing is done in a manner designed to preserve or increase the value of the Coins.com URL, and (b) with regard to all marketing related efforts in connection with the foregoing and in connection with one or more e-mail addresses; <u>provided, however</u>, the Debtor is prohibited from incurring or guaranteeing any debt that is secured by the Coins.com URL, or utilizing the Coins.com URL for any unlawful purpose or to host pornographic content.

2. <u>Events Leading to the Commencement of this Chapter 11 Case</u>

The Debtor made the first $300,000 payment and commenced development of the subject platform with assistance from independent contractors. The Debtor requested an extension of the deadline to make the second payment under the Purchase Agreement; however, Stack's Bowers refused. The Debtor commenced this chapter 11 case on March 30, 2019 to preserve value for the benefit of its stakeholders and prevent loss of the $300,000 initial payment.[2]

3. <u>Capital Structure</u>

The following table lists scheduled claims against the Debtor not marked contingent, unliquidated or disputed, and filed claims against the Debtor. No scheduled is listed as being and no filed claim asserts that it is entitled to priority status under Bankruptcy Code section 507.

| Schedule D: Creditors Who Have Claims Secured by Property | | |
|---|---|---|
| **Name** | **Collateral** | **Claim Amount** |
| Escrow Agent | Coins.com URL | $5,000 |
| Latin Lending Group | Rarex.com URL | $15,000 |

**Total: $20,000**

| Schedule E/F: Creditors Who Have Unsecured Claims | |
|---|---|
| **Name** | **Claim Amount** |
| Ari Gati | $105,000 |
| Barbara Etinson | $150,000 |
| Bowse Law Group, P.C. | $2,000 |
| Carmen Marx | $720 |
| Corporate Filings LLC | $45 |
| Digital Ocean LLC | $10 |
| [Delaware] Division of Corporations | $300 |
| Google GSuite | $10 |
| Identity Digital | $250 |
| Josh Perzow | $180,000 |
| Julie Aaron | $325 |

---

[2] Documents filed on the docket of this chapter 11 case and the associated adversary proceeding are cited herein as "<u>Dkt. No. [•]</u>." They are available for a fee through PACER, or free of charge on request from Debtor's proposed undersigned counsel.

2

| | |
|---|---|
| One Unit | $1,250 |
| Regus | $1,000 |
| Sam Katz | $1,220 |
| T-Mobile | $102.75 |
| The Rocket Science Group, LLC | $25 |

**Total: $442,257.75**

| Filed Proofs of Claim | |
|---|---|
| **Name** | **Claim Amount** |
| Stack's Bowers | $1,400,000 |

**Total: $1,400,000**

The Debtor has no business income and has not incurred business debt since the commencement of this chapter 11 case. In January 2020, the Debtor's attorneys estimated accrued professional fees through confirmation of $85,000 [Dkt. No. 69, p.13], $50,000 attributable to services rendered by Kirby, Aisner & Curley LLP, Debtor's counsel under Bankruptcy Code section 327(a), and $35,000 attributable to services by The Law Offices of Charles A. Higgs, who filed this chapter 11 case but is employed as special counsel under section 327(e).

The Debtor disputes Stack's Bowers' claim; more specifically, the Debtor believes that it is subject to offset under Bankruptcy Code section 558. The ground for the Debtor's position is as follows:

On May 10, 2019, Stack's Bowers commenced an action in Los Angeles County Superior Court, assigned Case No. 19SMCV00875 ("State Court Action"), asserting a cause of action against Mr. Perzow for fraudulent inducement, and seeking contract damages of $1.4 million and punitive damages of $10 million. Aside from amounting to breach of the Purchase Agreement (which among other things provides that "[t]he parties … waive any and all reliance or inducement claims of any kind"), the pendency of a fraud action in respect of the Coins.com URL has left the Debtor unable to raise the capital needed to develop and implement its business plan either with respect to the Coins.com URL or the Rarex.com URL.

The Debtor has engaged Duane Morris LLP to bring suit on account of Stack's Bowers' commencement of the State Court Action [Dkt. No. 78]. Contemplated causes of action include breach of contract, breach of the covenant of good faith and fair dealing, tortious interference with prospective business relations, violation of California Business & Professions Code § 17200 et seq. and Lanham Act violations.

**B.     Liquidation Analysis**

To confirm this Plan, each creditor listed in the table of claims that begins on the preceding page must either vote for or be deemed to have voted for this Plan; or alternatively, this Plan must provide for such creditor to receive at least as much as it would if the Debtor were liquidated under chapter 7 on the Effective Date.

The Debtor believes that the so-called "best interests" test is satisfied because this Plan provides for holders of allowed unsecured claims including Stack's Bowers to receive interest in

3

an amount that exceeds the federal judgment rate (presently .16%), the rate of interest such holders would receive under Bankruptcy Code section 726(a)(5).[3]

As to this Plan's valuation premise, the Debtor previously submitted an appraisal valuing the Coins.com URL at not less than $4 million [Dkt. No. 61-1] and opined that it would be worth much more to someone capable of exploiting the same. The Debtor understands Stack's Bowers' position is that "the value [of the Coins.com URL] is best evidenced by what the debtor paid for it a year ago"; namely, $1.7 million. (Dec. 16, 2019 Hr'g Tr. [Dkt. No. 67] 9:22-25.) And thus, it has an equity cushion after accounting for Debtor's having made the first, $300,000 payment under the Purchase Agreement. The Debtor intends to file admissible, expert affidavits in advance of the deadline to object to confirmation in further support of the Debtor's valuation position.

C.    **Ability to Make Future Plan Payments and Operate Without Further Reorganization**

The proponent of a chapter 11 plan must show that it will have enough cash over the life the plan to make the payments required thereunder and operate the Debtor's business. This Plan contemplates repayment of creditors in full upon the occurrence of a monetization event; namely, the sale of membership or other equity interests in the Debtor to a partner capable of funding implementation of the Debtor's business plan; or alternatively, a business plan of the partner. Pending such event, this Plan calls for the Debtor or Mr. Perzow to pay interest that accrues on allowed claims under this Plan, and escrow two (2) years' worth of interest payable to Stack's Bowers if its claim were allowed in full by the Effective Date. This Plan also contemplates the Debtor or Mr. Perzow making installment payments on account of allowed administrative expenses (professional fees) and accrued bankruptcy fees under 28 U.S.C. § 1930, pursuant to Bankruptcy Code section 1191(e). The Debtor intends to submit evidence in advance of confirmation attesting as to Mr. Perzow's financial ability to perform, absent a monetization event.

D.    **Subchapter V Election**

This chapter 11 case was commenced on March 30, 2019, prior to the enactment of the Small Business Reorganization Act of 2019 ("SBRA") which inter alia amended chapter 11 of the Bankruptcy Code to add a fifth subchapter ("Subchapter V") that inter alia:

- Modified otherwise applicable confirmation requirements; including, significantly, Bankruptcy Code section 1129(a)(9)(A)'s requirement that administrative expense claims be paid in full on the effective date of a plan; *compare* 11 U.S.C. § 1191(e) ("Special Rule" applies in Subchapter V cases);

---

[3] The Debtor anticipates both secured creditors voting for this Plan; and hence, the best interests test will be satisfied as to them.

4

- Modified the definition of "fair and equitable" in section 1129(b), which comes into play in the event that a class of claims (*e.g.*, Stack's Bowers) votes to reject this Plan;[4] and

- Streamlined various otherwise bankruptcy requirements, with a view towards promoting plan confirmation at reduced costs.

On June 5, 2020, the Debtor filed an amended voluntary petition electing treatment under Subchapter V. Other courts have permitted debtors to elect treatment under Subchapter V in chapter 11 cases commenced prior to the effective date of the SBRA. *E.g.*, *In re Ventura*, No. 8:18-77193-reg, 2020 WL 1867898, at *8 (Bankr. E.D.N.Y. April 10, 2020). This Court should as well.

---

[4] Ordinarily, if a class of unsecured claims votes to reject a chapter 11 plan, the plan may still be confirmed provided the "cramdown" requirements in section 1129(b) are satisfied. In general, the fair and equitable requirement is satisfied as to a class of unsecured claims where the plan provides for each creditor in the class to "receive or retain on account of [its] claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim." 11 U.S.C. § 1129(b)(2)(B)(i). In *Matter of MPM Silicones, LLC*, 874 F.3d 787 (2d Cir. 2017), the Second Circuit adopted a two-part process for selecting an interest rate to be paid to creditors in a rejecting class, to ensure they receive the present value of their claim: "[1] The market rate should be applied in Chapter 11 cases where there exists an efficient market. [2] But where no efficient market exists for a Chapter 11 debtor, then the bankruptcy court should employ the formula approach" endorsed by the Supreme Court in *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004). *MPM Silicones*, 874 F.3d at 800 (quoting *In re American HomePatient, Inc.*, 420 F.3d 559, 568 (6th Cir. 2005). Given the absence of an efficient market for relatively small, bankruptcy loans collateralized by domain names held in escrow, this would result in application of the formula approach. The formula approach instructs the court to begin with the prime rate (presently 3.25%/year) and then determine a proper, plan-specific risk adjustment. *MPM Silicones*, 874 F.3d at 799. "Courts have generally approved adjustments [above the prime rate] of 1% to 3%." Thus, application of section 1129(b)(2)(B)(i) would likely result in a cramdown interest rate of around 5.25% ($73,500/year for Stack's Bowers) (assuming an adjustment of 2%, the midpoint between 1-3%). Subchapter V, however, modifies section 1129(b), such that a plan is considered fair and equitable if it provides for the payment of all of the debtor's "projected disposable income" (defined as "income that is received by the debtor and that is not reasonably necessary to be expended … for the payment of expenditures necessary for the continuation, preservation or operation of the business of the debtor") over a three (3) year period; or alternatively, an identical amount over a period not to exceed five (5) years. 11 U.S.C. § 1191(c)-(d). As the Debtor presently has no income, this would result in substantially reduced interest obligations; qualified, of course, by the fact that creditors must receive more than they would in a chapter 7 liquidation (discussed above).

5

## ARTICLE I
## DEFINITIONS AND RULES OF CONSTRUCTION

**1.1    Definitions and Rules of Construction**

The definitions and rules of construction set forth in Bankruptcy Code sections 101-102 shall apply when terms defined or construed in the Bankruptcy Code are used herein. In addition, capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them above and in this Section 1.1:

"Default" means a payment default under this Plan, or the failure of the Effective Date to occur within forty-five (45) days following entry of an Order confirming this Plan, or non-compliance with Section 4.2.

"Effective Date" means the first business day following the date that is fourteen (14) days after confirmation of this Plan and on which payments hereunder commence. It shall be a condition precedent to the occurrence of the Effective Date that the Debtor or Mr. Perzow shall have escrowed with Stack's Bowers' counsel, or alternatively, the Debtor's undersigned counsel, two (2) years' worth of interest payable to Stack's Bowers on account of its claim under this Plan if it were allowed in full.

"Monetization Event" has the meaning ascribed to it in Section 4.3.

"Other Unsecured Claims" means all claims listed on the Debtor's Schedule E/F not marked disputed, contingent or unliquidated.

"Preserved Causes of Action" means all causes of action belonging to the Debtor or its estate as of the Effective Date, including all causes of action against Stack's Bowers arising from Stack's Bowers' commencement or prosecution of the State Court Action, and further including the adversary proceeding the Debtor commenced against Stack's Bowers, assigned No. 19-ap-08282.

"Trustee" means the trustee appointed pursuant to Bankruptcy Code section 1183(a).

**1.2    Computation of Time**

The provisions of Rule 9006(a) shall apply in computing any period of time prescribed or allowed by this Plan.

## ARTICLE II
## TREATMENT OF UNCLASSIFIED CLAIMS

**2.1    Administrative Expense Claims**

Except to the extent that the holder of an allowed administrative expense claim agrees to less favorable treatment, each such holder will receive payment of its allowed claim in full in cash, in equal, quarterly installments paid on the last business day of each calendar-quarter, over a five (5) year period commencing on the later of the Effective Date and the date on which such claim becomes allowed, pursuant to Bankruptcy Code section 1191(e).

Attorneys employed pursuant to Bankruptcy Code section 327 shall file their final fee applications within thirty (30) days following the Effective Date.

**2.2    Bankruptcy Fees**

All bankruptcy fees payable under 28 U.S.C. § 1930 that are due and owing as of the Effective Date shall be paid within ten (10) days following such date.

### ARTICLE III
### CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

**3.1    Classification**

The following table designates classes of claims and interests and specifies which classes are impaired or unimpaired and their voting status.

| Class | Designation | Status under Plan | Voting Status |
|---|---|---|---|
| 1 | Escrow Agent | Impaired | Entitled to vote |
| 2 | Latin Lending Group | Impaired | Entitled to vote |
| 3 | Stack's Bowers | Impaired | Entitled to vote |
| 4 | Other Unsecured Claims | Impaired | Entitled to vote |
| 5 | Interests | Unimpaired | Deemed to accept |

**3.2    Treatment of Claims and Interests**

(a)    <u>Class 1—Escrow Agent</u>

Except to the extent that the Escrow Agent agrees to less favorable treatment, it will receive payment of its allowed claim in full in cash within five (5) years following the Effective Date.  The Escrow Agent's claim shall be allowed in the amount of $5,000.  The Escrow Agent shall retain its lien on the Coins.com URL until its allowed claim has been paid in full after which the lien shall be deemed terminated.

(b)    <u>Class 2—Latin Lending Group</u>

Except to the extent that Latin Lending Group agrees to less favorable treatment, it will receive payment of its allowed claim in full in cash within five (5) years following the Effective Date. Latin Lending Group's claim shall be allowed in the amount of $15,000.  Latin Lending Group shall retain its lien on the Rarex.com URL until its allowed claim has been paid in full after which the lien shall be deemed terminated.

7

(c) <u>Class 3—Stack's Bowers</u>

Except to the extent that Stack's Bowers agrees to less favorable treatment, Stack's Bowers will receive payment of its allowed claim in full in cash, plus post-Effective Date simple interest thereon at the rate of .5%/year, within five (5) years following the Effective Date. Interest on Stack's Bowers' allowed claim shall be paid on or before the last business day of each calendar-quarter. For the avoidance of doubt, upon the Effective Date, Stack's Bowers' claim shall be treated as disputed and shall only be allowed if and to the extent the Preserved Causes of Action have been dismissed or disposed of by final order.

(d) <u>Class 4—Other Unsecured Claims</u>

Except to the extent that the holder of an allowed Other Unsecured Claim agrees to less favorable treatment, each holder of an allowed Other Unsecured Claim will receive payment of its allowed claim in full in cash, plus post-Effective Date simple interest thereon at the rate of .5%/year, within five (5) years following the Effective Date. Interest on an allowed Other Secured Claim shall be paid on or before the last business day of each calendar-quarter. Each Other Unsecured Claim shall be allowed in its respective scheduled amount.

(e) <u>Class 5—Interests</u>

Mr. Perzow will retain his membership interests in the Debtor, but shall not be paid any amount on account thereof until all holders of allowed claims against the Debtor have been paid in full and Stack's Bowers' claim has either been fully satisfied or reserved for.

**ARTICLE IV**
**<u>MEANS FOR IMPLEMENTATION</u>**

**4.1  Management of the Debtor**

From and after the Effective Date, Adam Perzow will continue to serve as the Debtor's manager. He shall serve without compensation, until such time as all holders of allowed claims against the Debtor have been fully satisfied or reserved for as provided herein. For the avoidance of doubt, from and after the Effective Date, the Debtor may employ and pay attorneys, consultants and other professionals for the limited purpose of effectuating this Plan.

**4.2  Coins.com URL**

The Coins.com URL shall remain in escrow, on terms set forth in the Escrow Agreement, until Stack's Bowers' allowed claim has been paid in full as provided herein. While in escrow, the Escrow Agent shall continue to manage and maintain the registration of the Coins.com URL in its name. In addition, while in escrow, and in accordance with the applicable provisions of the Purchase Agreement, the Debtor shall have the right to use the Coins.com URL to host content concerning blockchain and cryptocurrency and direct the Coins.com URL to the website(s) and/or web page(s) of the Debtor's choosing, in both cases in a manner designed to preserve or increase the value of the Coins.com URL, and also use the Coins.com URL with regard to all marketing related efforts in connection with the foregoing and in connection with one or more e-mail addresses; <u>provided</u>, <u>however</u>, the Debtor shall not incur or guarantee any debt that is secured by

the Coins.com URL, or utilize the Coins.com URL for any unlawful purpose or to host pornographic content.

Promptly after Stack's Bowers' claim has either been fully satisfied for or reserved for as provided herein, the Escrow Agent shall transfer registration of the Coins.com URL to the Debtor, and execute and deliver such documentation as may be necessary to implement the foregoing transfer.

**4.3    Source of Cash for Payments**

Payments to creditors shall be made from outside capital raised from the sale of membership interests or other equity interests in the Debtor ("Monetization Event") and/or earnings realized from operating the Coins.com URL as provided in Section 4.2. In accordance with Bankruptcy Code section 1190(2), the Debtor shall submit its future earnings and other income to the supervision and control of the trustee, but solely to the extent necessary to execute this Plan.

Upon the occurrence of a Monetization Event, the Debtor shall immediately pay all claims allowed under this Plan and fund the disputed claims reserve to the extent Stack's Bowers' claim has not been allowed.

**4.4    Preservation of Causes of Action; Setoff**

Upon the Effective Date, the Preserved Causes of Action shall vest in the Debtor. The Debtor may, to the extent permitted by Bankruptcy Code section 558, set off against Stack's Bower's claim the value of any Preserved Causes of Action as determined by final order; provided, however, any such causes of action must be commenced within sixty (60) days following the Effective Date.

**4.5    Remedies in the Case of Default**

In the event of a Default, the affected creditor shall serve notice of Default upon the Debtor, and Stack's Bowers if the affected creditor is one other than Stack's Bowers. In the event that the Default remains uncured for a period of fourteen (14) days, the Debtor shall sell the Coins.com URL through a domain broker jointly selected by the Debtor and Stack's Bowers, following a pre-sale marketing period conducted by the broker of not less than twelve (12) weeks. In the event that the Debtor and Stack's Bowers cannot agree on a domain broker, the matter may be brought to the Court for resolution. The sale proceeds shall be paid first to holders of allowed administrative expense claims and accrued bankruptcy fees under 28 U.S.C. § 1930 (if any); next, to holders of allowed secured claims; next, to Stack's Bowers; next, to holders of allowed Other Unsecured Claims; and next, to Mr. Perzow.

Notice under this Section 4.5 shall be valid if given to the Debtor, by e-mail to Mr. Perzow at adam@coins.com with a copy to the Debtor's undersigned counsel, Jeffrey Chubak at jchubak@aminillc.com; and to Stack's Bowers, by e-mail to its counsel Jay Teitelbaum at jteitelbaum@tblawllp.com.

# ARTICLE V
# PROVISIONS GOVERNING PAYMENTS

**5.1    Debtor to Make Payments**

The Debtor shall make all payments required by this Plan, whether confirmed under Bankruptcy Code section 1191(a) or (b).  Upon the Effective Date, all payments or funds received by the Trustee, if any, during this chapter 11 case shall be returned to the Debtor after deducting any fee owed to the Trustee.

**5.2    Delivery of Payments**

Payments required by this Plan shall be made by check mailed to the address set forth in any proof of claim; to the address set forth in any written notice of address change filed with the Court or provided to the Debtor or its counsel; or to the address set forth in the Debtors' schedules if no proof of claim has been filed and no written notice of address change has been filed or provided.

**5.3    Time Bar to Cash Payments**

Checks issued by the Debtor on account of allowed claims shall be null and void if not negotiated within sixty (60) days after issuance.  After expiration of such period, the creditor's payment shall irrevocably revert to the Debtor free and clear of any restrictions.

**5.4    No Interest**

Unless otherwise specifically provided for in this Plan, postpetition interest shall not accrue or be paid on any claim.

**5.5    Disputed Claims Reserve**

The Debtor shall establish a reserve for the payment of Stack's Bowers' claim to the extent such claim becomes allowed.  The amount reserved shall be that which would be paid on account of the claim if allowed in the amount set forth in its proof of claim.

**5.6    Resolution of Disputed Claims**

The Debtor shall have the authority to settle and resolve any matters concerning the allowance or disallowance of Stack's Bowers' claim or Preserved Causes of Action.

**5.7    Withholding Taxes**

The Debtor shall be entitled to deduct any federal, state or local withholding taxes from any payments made under this Plan.  As a condition to making any such payment, the Debtor may require that the holder of an allowed claim provide its Taxpayer Identification Number and such other information and certification as may be deemed necessary for it to comply with applicable tax reporting and withholding laws.  Failure to provide such number, information or certification may result in forfeiture of such holder's right to payment on account of its claim.

10

## ARTICLE VI
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**6.1    Rejection of Executory Contracts and Unexpired Leases**

The Debtor will be conclusively deemed to have rejected all of its executory contracts and unexpired leases as of the Effective Date, to the extent not previously assumed, assumed and assigned or rejected.

**6.2    Rejection Damages Claims**

Proofs of claim arising from the rejection of any executory contract or unexpired lease pursuant to this Plan must be filed with the Court within thirty (30) days following the Effective Date. All rejection damages claims filed after such date shall be deemed disallowed, without the need to file a formal objection pursuant to Rule 3007.

## ARTICLE VII
## DISCHARGE

**7.1    Discharge**

If this Plan is confirmed under Bankruptcy Code section 1191(a), the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in Bankruptcy Code section 1141(d)(1)(A), except that the Debtor will not be discharged of any debt imposed by this Plan or to the extent provided in section 1141(d)(6).

If this Plan is confirmed under section 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan unless the Court grants a discharge on completion of all payments due within the first three (3) years of this Plan, or as otherwise provided in Bankruptcy Code section 1192. The Debtor will not be discharged from any debt on which the last payment is due after the first three (3) years of the Plan, or as otherwise provided in section 1192.

## ARTICLE VIII
## MISCELLANEOUS

**8.1    Severability**

If any provision of this Plan is determined to be unenforceable, the determination will not limit or affect the enforceability or operative effect of any other provision.

**8.2    Binding Effect**

The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of its successors and assigns.

**8.3    Captions**

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**8.4    Governing Law**

Unless a rule of law or procedure is supplied by federal law, the laws of the State of New York govern this Plan and any agreements, documents or instruments executed in connection therewith, except as otherwise provided herein.

**8.5    Corporate Governance**

The Debtor's operating agreement shall be deemed amended to include a provision prohibiting the issuance of non-voting equity securities.

**8.6    No Amendments**

Upon the Effective Date, no creditor shall be permitted to amend its proof of claim against the Debtor.

[Remainder of Page Left Blank]

Dated: June 5, 2020

Respectfully submitted,

HAMPSTEAD GLOBAL, LLC

_____
Sole Member and Manager

AMINI LLC

/s/ Jeffrey Chubak
131 West 35th Street, 12th Floor
New York, New York 10001
(212) 490-4700
jchubak@aminillc.com
*Proposed Attorneys for the Debtor*