KIRBY AISNER & CURLEY, LLP
700 Post Road, Suite 237
Scarsdale, New York 10583
(914) 401-9500
Dawn Kirby, Esq

*Hearing Date: July 7, 2020*
*Hearing Time: 10:00 a.m.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
In re:

HAMPSTEAD GLOBAL, LLC,

Chapter 11
Case No. 19-22721 (RDD)

Debtor.
---------------------------------------------------------------X

**FINAL APPLICATION FOR ALLOWANCE OF PROFESSIONAL COMPOSATION AND REIMBURSEMENT OF EXPENSES OF KIRBY AISNER & CURLEY, LLP, ATTORNEYS FOR THE DEBTOR, FOR THE PERIOD OF JUNE 21, 2019 THROUGH JUNE 15, 2020**

**TO:   THE HONORABLE ROBERT D. DRAIN**
**UNITED STATES BANKRUPTCY JUDGE:**

Kirby Aisner & Curley LLP (the "Applicant"), attorneys for the above captioned debtor (the "Debtor"), submits this application (the "Application") seeking final approval and allowance of professional fees pursuant to Bankruptcy Code Sections 330 and 503(b), covering services rendered by the Applicant to the Debtor from June 21, 2019 through June 15, 2020 (the "Fee Period"), plus necessary and reasonable disbursements incurred during the same period of time.

**LEGAL STANDING OF APPLICANT**

1.    Applicant's attorneys are all admitted to practice law in the State of New York and the Federal and Bankruptcy Court for the Southern District of New York and are in good standing in this Court. Applicant's attorneys have extensive experience in all aspects of insolvency law with varying levels of expertise ranging from fourteen (14) to twenty-five (25) years.

2. On March 30, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the or this "Court").

3. On the Petition Date, the Debtor was represented by the Law Office of Charles A. Higgs (the "Higgs Firm").

4. On June 26, 2020, a Stipulation of Substitution of Counsel among the Higgs Firm, the Applicant and the Debtor was filed. [ECF Docket No. 17, 18]. On July 1, 2019, an application to retain Applicant (the "KAC Retention Application") as counsel for the Debtor was filed. [ECF Docket No. 19]. On August 9, 2020, an order was entered granting the KAC Retention Application *nunc pro tunc* to June 21, 2020. [Docket No. 38].

## FORMAT OF APPLICATION

5. Applicant seeks final allowance of reasonable compensation for professional services rendered as counsel to the Debtor from June 21, 2019 through March 31, 2020 and reimbursement of actual and necessary out-of-pocket disbursements for the same period.

6. At the time of Applicant's retention, the Debtor agreed, subject to Bankruptcy Court approval, to hourly billing rates for Applicant's attorneys in the amount of $425 to $525, and for paraprofessionals $150.00. Applicant thereafter hired an associate attorney whose hourly billing rate is $295.

7. Applicant received a $5,000.00 retainer from Adam Perzow in connection with its representation of the Debtor. Of that amount, $171.80 was applied to the pre-retention period for time billed ($157.50) and ECF charges ($14.30) from June 17, 2020 through June 20, 2020.

8. Annexed as **Exhibit "A"** is a certification by Dawn Kirby, made pursuant to the Guidelines for Reviewing Applications For Compensation as promulgated by the United States

Trustee dated March 22, 1995 and the Amended Guideline for Fees and Disbursements for Professional in the Southern District of New York Bankruptcy Court dated November 25, 2009 ("U.S. Trustee Guidelines").

9. Applicant maintains precise and detailed records of time expended in the rendition of all professional services. In accordance with the U.S. Trustee Guidelines, a breakdown of time entries by project category. A summary cover sheet and time records are annexed as **Exhibit "B"**.

## SUMMARY OF THE CHAPTER 11 CASE

10. On March 30, 2019, (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Case"). The Debtor has continued in possession of its property and management of its business affairs as a debtor-in-possession pursuant to §§1107(a) and 1108 of the Bankruptcy Code. No committee, trustee or examiner has been appointed.

11. The Debtor is a single member Limited Liability Corporation that has been in the process of developing a digital currency and digital currency platform on their primary asset, the internet domain www.coins.com.

## SUMMARY OF APPLICANT'S SERVICES

A. **Retention of Professionals**

12. This chapter 11 case was filed by The Law Office of Charles A. Higgs (the "Higgs Firm"). Approximately three months later, on June 26, 2020, a Stipulation of Substitution of Counsel among the Higgs Firm, the Applicant and the Debtor was filed. [ECF 17, 18].

13. On July 1, 2019, with the help of Applicant, the Debtor filed an application to retain Applicant as counsel for the Debtor. [ECF 19]. On August 9, 2020, and order was entered granting KAC's Retention Application effective as of June 21, 2020. [ECF 38].

3

14. On July 18, 2019, with the help of Applicant, the Debtor filed an Application to Employ the Higgs Firm, Debtor's original bankruptcy counsel, as Special Litigation Counsel for the Debtor. [ECF No. 21]. On August 9, 2020, and order was entered granting the Higgs Firm's Retention Application effective as of June 21, 2020. [ECF 37].

15. On March 19, 2020, with the help of Applicant, Debtor filed an Application to Employ Duane Morris LLP as Special Litigation Counsel for the Debtor [ECF No. 74]. Stacks Bowers expressed an objection via letter to the Court. After a conference with the Court, the application was granted. On May 21, 2020, an order was entered granting Duane Morris' Retention Application effective as of March 16, 2020. [ECF No. 78].

**B. Motion to Dismiss filed by Stacks Bowers Galleries**

16. On June 19, 2019, Stacks Bowers ("Stacks") filed a Motion to Dismiss (the "MTD"). [ECF No. 15].

17. On August 2, 2019, with the help of Applicant Debtor filed Opposition to the MTD.

18. On October 4, 2019, with the help of Applicant Debtor filed a Supplemental Response to the MTD. [ECF No. 54].

19. On December 9, 2019, with the help of Applicant, Debtor filed a Second Supplemental Opposition to the MTD. [ECF No. 61].

**C. Establishment Of Bar Date and Claims Analysis**

19. On August 8, 2019, with the help of Applicant, Debtor filed a Motion to Set Last Day to File Proofs of Claim and Approving the Form and Manner of Notice Thereof [ECF No. 34].

20. As a result of Applicant's diligent and efficient efforts, a bar date of November 8, 2019 was established as the Bar Date, thereby allowing the Debtors to obtain a more precise picture as to all potential and outstanding liabilities.

21. Applicant also worked closely with the Debtors to ensure that all potential creditors, whether known or unknown, received notice of the Bar Date in order to ensure that all creditors had a fair opportunity to file claims and partake in the bankruptcy proceeding.

**D. <u>Operating Reports</u>**

22. Applicant was in constant contact with the Debtor and regularly assisted the Debtor in timely filing the Debtor's complex operating reports throughout the chapter 11 case.

**E. <u>Plan and Disclosure Statement</u>**

20. On August 8, 2019, with the help of Applicant, the Debtor filed a Chapter 11 Plan of Reorganization [ECF No. 36].

21. On January 24, 2020, with the help of Applicant, Debtor filed a First Amended Chapter 11 Plan and Disclosure Statement [ECF Nos. 68 & 69].

22. On February 15, 2020, with the help of Applicant, the Debtor filed an application to extend Debtor's time to confirm its First Amended Chapter 11 Plan. [ECF No. 71]. On March 6, 2020, an order was entered extending Debtor's time through April 30, 2020. [ECF No. 73].

23. The parties were deep in settlement negotiations during the Spring of 2020. In light of progress being made, Stacks expressed no objection to the Debtor further extending its time to confirm a plan.

24. On April 30, 2020, with the help of Applicant, Debtor filed a second application to further extend the Debtor's time to confirm a plan. [ECF No. 76]. On March 6, 2020, an order was entered extending Debtor's time through August 31, 2020. [ECF No. 77].

**F. Settlement Negotiations**

25. Throughout the chapter 11 case Applicant was involved in extensive settlement negotiations, client conferences, client conferences in conjunction with the Debtor's three other

counsel (Mr. Higgs, Mr. Bowse, Mr. Kahane), phone conferences, written settlement proposals, responses to written settlement proposals, letters to the Court, and other settlement activities.

**G. Subchapter V and Application to Retain Amini LLC**

26. On of June 4, 2020 at 8:24 pm, Debtor's counsel at Duane Morris sent a settlement communication to Stacks. Applicant became aware of the communication early the next morning. In furtherance to the substance of the communication, Applicant immediately advised the Debtor and its litigation team that an Amended Petition electing Subchapter V would be prepared. The document was immediately prepared. KAC was standing by for further direction from the Debtor with respect to its filing. Debtor's principal advised Applicant he would be in touch later that day.

27. Instead, seven hours later Applicant was surprised when an application to retain Amini LLC as new counsel for the Debtor was filed. The application sought to disparage KAC in at least two ways. Astonishingly, it was alleged KAC had refused to file an amended petition electing Subchapter V. It was also alleged KAC had not forwarded a draft Second Amended Petition to the Debtor, despite the fact several emails from the Debtor's principal to KAC direct KAC not to draft such a document because the principal and another non-attorney were drafting it themselves. KAC filed a limited response to the Amini LLC retention application defending itself against the false allegations. [Docket No. 91].

28. KAC presumes the false allegations were made to intimidate KAC from filing the instant Application. KAC cooperated in signing a Stipulation of Substitution of Counsel on June 7, 2020, but the Debtor has failed to enter it on the Docket.

29. The benefit of Applicant's year-long efforts for the Debtor is evidenced by the fact that only 6 days after the Amini LLC retention application was filed, on June 11, 2020, a motion seeking to approve a fully executed settlement agreement between the Debtor and Stacks was filed.

### H. Miscellaneous Activities

30. The foregoing description of Applicant's services merely summarizes the legal services performed by Applicant. It is virtually impossible to set forth herein specific details of every service rendered. Applicant's time records annexed hereto provide detailed descriptions of every activity performed by Applicant on behalf of the Debtor. The the Court is respectfully referred to said records to more fully analyze Applicant's activities during the period requested.

31. Applicant was constantly called upon to communicate at different times with the Debtor, various creditors, and the U.S. Trustee's Office, as well numerous other parties in interest.

32. Applicant wishes the Court to note the benefits conferred on the estate as a result of these substantial efforts.

## CASE STATUS

33. The Debtor, through its proposed new counsel Amini LLC, is seeking to dismiss its chapter 11 case without paying its professionals or any other of its creditors.

34. On June 12, 2020, KAC communicated via email with Amini LLC inquiring whether the Debtor wished to consensually resolve KAC's professional fees. To date, no response has been received. KAC is hopeful the Debtor will respond and resolve the instant Application with KAC prior to the hearing date on July 10, 2020.

## APPLICABLE LEGAL STANDARDS

35. Section 330(a) of the Bankruptcy Code provides that a Bankruptcy Court may award to a professional person employed under Section 327:

> (A) reasonable compensation for actual, necessary services rendered by the . . . attorney and by any paraprofessional person employed by any such person; and
>
> (B) reimbursement for actual, necessary expenses.
> * * *

(3)(A) In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –

    (A) the time spent on such services;

    (B) the rates charged for such services;

    (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

    (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance and nature of the problem, issue, or task addressed; and

    (E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

36. Section 503(b)(2) of the Bankruptcy Code provides that:

After notice and a hearing, there shall be allowed administrative expenses . . . including . . . compensation and reimbursement awarded under section 330(a) of this title . . .

37. Although the Supreme Court has not ruled on the proper method for determining reasonable fees under Section 330(a), the Court has established guidelines generally applicable to awards of attorneys' fees under other federal statues, which require that the fee awarded be reasonable. *See, Pennsylvania v. Delaware Valley Citizens' Council for Clear Air*, 478 U.S. 546 (1986) (construing standards for award of fees under § 304(d) of the Clean Air Act ("Delaware Valley I"); *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711 (1987) ("Delaware Valley II"). In Delaware Valley I, the court concluded that the "lodestar" approach to determining fees for services performed, as articulated in *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3rd Cir. 1973), was preferable to other, more subjective methods: "[T]he 'lodestar' figure includes most, if not all, of the relevant factors comprising reasonable attorneys' fees*." Delaware Valley Citizens' Counsel for Clean Air* at 565.

38.     <u>Lodestar</u>. Under the lodestar calculation, a reasonable hourly rate is set by the court based on a number of factors, including the difficulty of the task, the prevailing market rate for counsel of the petitioner's experience, counsel's normal billing rate, and the rates awarded by other courts in similar circumstances. The American Bankruptcy Institute favors the lodestar approach as "giving the courts a simple mathematical formula to apply as the starting point for the analysis, with the reasonableness inquiry narrowed principally to the hourly rate and time spent factors." *American Bankruptcy Institute National Report on Professional Compensation in Bankruptcy cases* (G.R. Warner rep. 1991) p. 144.

39.     The first step to be taken in a lodestar analysis is to determine the nature and extent of services rendered. professionals and paraprofessionals have expended 118.9 hours from June 21, 2019 through March 31, 2020. Applicant respectfully submits that the hours billed were reasonable and necessary.

40.     The next step is to establish a reasonable hourly rate. 11 U.S.C. § 330(a) provides for the award of reasonable compensation for actual and necessary services performed by professionals employed pursuant to Section 327 and 1103 of the Bankruptcy Code "based on the time, the nature, the extent, and the value of comparable services other than in a case under this title." *See also, Collier on Bankruptcy*, ¶330.02, p. 330-12 (1st Ed. 1996). The Bankruptcy Code thus rejects the "principle of economy" which existed under the Bankruptcy Act. "Notions of economy of the estate in fixing fees are outdated and have no place in a Bankruptcy Code." 124 Cong. Rec. 11,0899 (daily ed. Sept. 28, 1978) (statement of Congressman Edwards on policies underlying Section 330). *Accord, In re Bible Deliverance Evangelistic Church*, 39 B.R. 768, 774 (Bankr. E.D. Pa. 1984).

41. Indeed, Congress has made clear that the fees paid in bankruptcy cases must be no less than those paid in other cases involving legal specialties with comparable complexities and responsibilities: "Bankruptcy specialists . . . if required to accept fees in all of their cases that are consistently lower than fees they could receive elsewhere, will not remain in the bankruptcy field." *H.R. Rep. No. 595, 95th Cong. & Admin. News*, p. 5787. Congress intended that allowance of professional fees in bankruptcy cases should be at market rates in the market in which they customarily practice. *In re Jenson-Farley Pictures, Inc.,* 47 B.R. 557, 578 (Bankr. D. Utah 1985).

42. Consistent with the intent of Congress as expressed in the legislative history of the Bankruptcy Code, it is "necessary to compensate bankruptcy attorneys, whenever possible, at the highest rate of compensation available for their efforts." *In re Bible Deliverance Evangelistic Church, supra*, 39 B.R. at 773. *See also, In re Penn-Dixie Industries, Inc., supra*, 39 B.R. at 838 (a liberal standard of compensation is needed to "encourage successful administration of estates by attracting bankruptcy specialists of high quality").

43. The rates charged by Applicant are commensurate, if not below, those typically charged by Applicant and other bankruptcy attorneys in the Southern and Eastern Districts of New York. Accordingly. The lodestar amount of fees sought by Applicant (customary hourly rate multiplied by the reasonable/necessary time spent) is both reasonable and appropriate.

44. <u>Time, Nature and Extent of Services, Results Obtained and Related Factors</u>. The summary set forth above and the annexed cover sheet and detailed time slips disclose the time, nature and extent of professional services rendered by Applicant during the period sought. Further, Applicant believes the time spent was justified by the beneficial results achieved thus far.

45. Services rendered by KAC were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue or task addressed.

Whether reviewed individually as to each of the tasks described or collectively as a whole, the time expended by Applicant has been reasonable and efficient to accomplish the needs of the Debtor in this Chapter 11 case.

46. <u>The Skill Requisite to Perform the Legal Services Properly</u>. In order to perform the services and obtain the results required in its representation of the Debtor, substantial legal skill and experience in the areas of litigation and negotiations were required by Applicant.

47. <u>Preclusion of Other Employment</u>. Adequate representation of the Debtor herein required a substantial commitment of Applicant's resources. Although Applicant was not precluded from accepting other engagements, matters herein treated by Applicant in an expeditious and professional manner. Various matters on behalf of the Debtor required Applicant to devote considerable time, often to the preclusion of expending time on other matters.

48. <u>Time Limitations or Other Circumstances</u>. Many of the matters on behalf of the Debtor have required resolutions on an expedited basis.

49. <u>Amounts Involved and Results Obtained</u>. Applicant, through its services, has succeeded in assisting the Debtor in restructuring its obligations.

50. <u>The Customary Fee</u>. The hourly rates of the attorneys of Applicant are equal to or less than hourly rates billed by Applicant to its clients in other Chapter 11 matters.

51. <u>Awards in Similar Cases</u>. The amount requested by Applicant is not unreasonable in terms of awards in cases of similar complexity. Compensation requested by Applicant comports with the mandate of the Bankruptcy Code, which directs that services be evaluated in light of comparable services performed in non-bankruptcy cases in the community.

52. <u>Whether the Fee is Fixed or Contingent</u>. Applicant's compensation in this Chapter 11 case is subject to the approval of the Court. The Applicant's compensation should reflect its

assumption of the high degree of risk of non-payment and its delay in payment in addition to the results achieved thus far.

53. <u>The Experience, Reputation and Ability of the Attorneys</u>. The attorneys of Applicant working on this Chapter 11 case are experienced in matters of this kind.

**ALLOWANCES FOR COMPENSATION**

54. During Applicant's retention in the period of request herein, Applicant has been caused to render **120.9 hours** of professional services to the Debtor. These professional services demanded a high degree of Applicant's professional competence and responsibility. Applicant rendered such services in an efficient and economical manner on legal issues presented, which range other specialties of law. Applicant attempted on every occasion to avoid duplication of services performed by the other professionals retained in this case. The value of the services rendered by Applicant were necessary, essential and beneficial to the estate at large.

55. In conformity with the practices of the Applicant, that due to the pressures of other business matters during the course of the day, or inadvertence, not every single minute detail for Applicant's services were recorded by Applicant, and Applicant is not seeking compensation for same. In addition, Applicant does not charge for *deminimis* telephone calls and emails. Applicant is not seeking compensation for such time but asks the Court to take cognizance of this.

56. In view of the difficulties inherent in this case, the contingency of Applicant's compensation, the standing in bar of Applicant, the amount of legal services performed, the time consumed, the skill required by Applicant, and most important, the results achieved, Applicant requests that it be allowed the sum of **$58,117.50** as compensation for professional services rendered from June 21, 2019 through June 15, 2020, and with respect to disbursements during the same time, Applicant requests that it be reimbursed the sum of **$665.00**.

57. Applicant believes the amount of compensation requested most reasonable in light of the substantial services performed and the beneficial results obtained to date.

58. No agreement prohibited by 18 U.S.C. Section 155 has been made.

**WHEREFORE,** the Applicant requests that it be granted final allowance for compensation for professional services rendered, as set forth in this Application, in the sum of **$58,117.50** and necessary out-of-pocket expenses incurred in the sum of **$665.00**, together with such other and further relief as is just, proper and equitable under the circumstances.

Dated: Scarsdale, New York
      June 15, 2020

    KIRBY AISNER & CURLEY LLP
    *Attorneys for the Debtor*
    700 Post Road, Suite 237
    Scarsdale, New York 10583
    (914) 401-9500

    By: */s/ Dawn Kirby*
        Dawn Kirby