KIRBY AISNER & CURLEY LLP  
700 Post Road, Ste. 237  
Scarsdale, New York 10583  
(914) 401-9500  
Dawn Kirby, Esq.

*Hearing Date: July 7, 2020*  
*Hearing Time: 10:00 a.m.*

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  
-------------------------------------------------------x  
In re:

HAMPSTEAD GLOBAL, LLC,

        Debtor  
-------------------------------------------------------x

Chapter 11  
Case No. 19-22721 (rdd)

# DECLARATION OF DAWN KIRBY IN REPLY TO DEBTOR'S OPPOSITION TO FEE APPLICAITON OF KIRBY AISNER & CURLEY LLC TO

DAWN KIRBY, hereby declares pursuant to 28 U.S.C. §1746 as follows:

1. I am a member of Kirby Aisner & Curley LLP ("KAC") and have practiced law for over 25 years. I submit this declaration in reply (the "Reply") to declarations of Adam Perzow (the "Perzow Declaration") and Ari Gati (the "Gati Declaration") on behalf of Hampstead Global LLC (the "Debtor") in opposition (the "Opposition") to KAC's Fee Application.

2. Like Mr. Teitelbaum, I honestly believe this Court will see through the twisted half-truths and outright lies contained in the Perzow Declaration and Gati Declaration. I hesitate to defend myself on a point-by-point basis lest my response infer there is any credence whatsoever to Mr. Perzow's statements.

3. Never-the-less, I will address the scope of KAC's representation of the Debtor in order to correct the record in connection with KAC's fee application.

**The Retainer Agreement**

4. Mr. Perzow was a client of my former partner, Mr. Pasternak, in a prior bankruptcy case, *In re Heath Global, Inc.*, Chapter 11 Case No. 12-10511 (scc). Through that matter, Mr.

1

Perzow was familiar with my partners, Erica Aisner and Julie Curley, which is what led him to contact KAC.

5. On May 24, 2020, Ms. Aisner and I first met with Mr. Perzow.

6. On June 14, 2020, Mr. Perzow sent me an email saying he was considering retaining KAC. We understood there would be a consensual arrangement whereby Mr. Higgs would continue to act as litigation counsel and KAC would act as chapter 11 counsel. We were initially told the matter was on the verge of settlement.

7. On June 17, 2020, I sent Mr. Perzow a retainer agreement. On June 19, 2020, Mr. Perzow returned the agreement, but with numerous hand-written changes that were unacceptable to KAC. On June 20, 2020, Ms. Aisner sent an email to Mr. Perzow rejecting the proposed changes, including confusing language regarding payment due upon conversion or dismissal.

8. On June 24, 2020, Mr. Perzow returned the signed retainer agreement. See Perzow Declaration, Exhibit A.

9. It is absurd for Mr. Perzow to argue that KAC is not entitled to payment of its legal fees because the Debtor has decided to voluntarily dismiss its case. Mr. Perzow has twisted and misinterpreted the language in the signed retainer agreement, which reads as follows:

> In partial consideration of services to be rendered, Client's principal, Adam Perzow, agrees to pay a retainer in the amount of $5,000.00 on account for legal services to be rendered, payable upon execution of this Agreement. Except in the event of conversion of dismissal, any fees payable in excess of the applied retainer are payable upon award by the bankruptcy court or pursuant to a monthly fee payment order as may be entered by the bankruptcy court. I the event of conversion or dismissal of the Chapter 11 case, the engagement provided for in this Retainer Agreement shall cease and continued representation of Client by Kirby Aisner & Curley LLP may be subject to additional retainer payment and/ or agreement.

10. The language says fees are payable upon court order. If there is no court order existing at the time of conversion or dismissal, fees are due regardless of the absence of a court

order at the time. The foregoing is consistent with how legal fees are treated in the event of a conversion or dismissal of a chapter 11 case. The retainer agreement does not say that upon a voluntary dismissal that contemplates payments to creditors other than KAC, that KAC is not entitled to be treated as an administrative creditor. Mr. Perzow's argument lacks merit.

**The First Plan**

11. On August 8, 2020, only six weeks after KAC was retained, KAC filed a Plan of Reorganization (the "First Plan") with Mr. Perzow's blessing. The Plan was not a "form" as Mr. Perzow alleges. Rather, it contains creditor classes and payment terms dictated by Mr. Perzow. It proposes to pay Stacks' in full with 4% interest within 12 months of the Effective Date, after which the Debtor would submit to a Sale Process. The "cramdown" concept was discussed at length with Mr. Perzow and embedded in the First Plan. Latin Lending Group, owned/controlled by insider Ari Gati, was classified as a secured creditor and set up to be an impaired consenting class. Mr. Perzow's allegations that KAC never disclosed the cramdown process to him is utterly false.

12. On August 9, 2020, the Court held a status conference. In Court, Mr. Teitelbaum suggested further settlement discussion to Ms. Aisner. With Mr. Perzow's blessing, as he was physically in attendance, Ms. Aisner adjourned the matter to October 7, 2019. Immediately after that hearing the Debtor and KAC first learned of the California Complaint.

13. Prior October 7, 2019, Mr. Teitelbaum was contacted by Ms. Li who advised that the Court's calendar required a further adjournment. The matter was adjourned to December 16, 2020. The minor delay was due to the Court's calendar, not due to any delay by KAC.

**Leading Up to the December 16, 2019 Hearing**

14. During September – November 2019, Mr. Perzow was unsure of what terms he wanted to present in a Plan. There was no specific directive for KAC to follow.

3

15. On October 6, 2019, Mr. Perzow wrote to me concerning the adjournment, saying "*Before we commit to a [adjourned hearing] date let's discuss what our master strategy is. Ari advise the earliest you are available*", and in another email that day said "*We should all discuss the plan / disclosure statement (and possibly with new longer terms)…*" See Perzow Dec., Ex. F.

16. On November 1, 2029, Mr. Perzow wrote to me expressing "*concerns I have regarding the current state of both crypto and the fundraising environment*", which require a longer "*runway*" to pay Stacks'. See Perzow Dec., Ex. F.

17. On November 11, 2020, he wrote to me saying "*One thing for your consideration is that we should consider doing a 3 year plan,*". See Perzow Dec., Ex. F.

18. Mr. Perzow was likewise concerned that the California Complaint was creating an absolute bar to the Debtor's ability to move the process forward.

19. It is Mr. Perzow's strategizing and fluctuation on payment terms that delayed the completion of a first amended plan. His own October and November 2019 emails contradict his statements that I did not provide documents as requested during September through November 2019. He had not yet defined what terms he wanted to propose.

**The December 16, 2019 Hearing**

20. At the hearing on December 16, 2019, Mr. Perzow telephonically appeared and I appeared in person. A copy of the Transcript is annexed as **Exhibit A**.

21. Consistent with the foregoing, I advised the Court that the Debtor had been unable to move forward with a disclosure statement due to the California Complaint. [Transcript, page 4, lines 18 – 24; page 5, lines 11 – 16; p. 6, lines 5-9 and 15-17). The Court indicated its agreement. "*… frankly, I don't believe that the debtor could actually raise the money with that complaint out there. I understand their position on that,*" [Transcript, page 12, lines 9-11].

4

22. Mr. Perzow now attempts to paint a different picture. He says that the California Complaint was only brought against him personally, implying it had no bearing on the Debtor's ability to move forward in the chapter 11 case. He says, "*Ms. Kirby finally advised us that she would not make the subject filings. The asserted justification was the California Complaint*". See Perzow Declaration, para. 24.

23. That statement is ludicrous. Mr. Perzow was unsure whether he wanted the disclosure statement filed in light of the California Complaint, and asked me for my opinion on how to proceed.

24. On December 10, 2019, Mr. Perzow wrote to me, saying "*On the other hand, Stacks has since interfered and acted in bad faith after that hearing and refusing to back down. All that said – just wondering if u think its best to file the disclosure end of this week so we can say we did what he asked of us… or do we wait to see how the 16th goes and the file it?*". See Perzow Dec., Ex. G.

25. I responded with my opinion. I agreed that we should advise Your Honor that the existence of the California Complaint was a barrier to proceeding with a disclosure statement and suggested seeking a ruling from Your Honor. See Perzow Dec., Ex. G.

26. My response was by no means a refusal to file something. Mr. Perzow and his entire team agreed with my approach. Mr. Perzow, Mr. Gati and one of their California counsel, Mr. Bowse, were all copied on the emails. None of them disagreed. In fact, Mr. Gati later that day responded concerning certain exhibits, and ended the email with a friendly "*Thanks*!". A copy of Mr. Gati's email is annexed as **Exhibit B.**

27. Mr. Perzow's insinuation that he believes the California Complaint is an irrelevant "excuse" employed by me to not draft a disclosure statement is belied by the fact he directed Mr.

Higgs to file ta motion for sanctions based upon its existence [Docket No. 41] and Mr. Perzow's 8 re-drafts[1] of the Debtor's second supplement in opposition to the motion to dismiss. In that document expressly says "the California Complaint is the **reason** the Debtor has been unable to advance this case…" [Docket 61, p. 3, para. 5]. That highlight was drafted by Mr. Perzow himself.

28. At the hearing, the Court guided the parties as to what it believed were reasonable terms. These included global resolution of litigation, a joint representation in the disclosure statement that the parties were working together, and a time period of six months to obtain a signed contract or alternatively the asset would be sold. The Court made it clear that the proposed 12-month period was "too long", albeit this was pre-COVID-19. Filing a Plan prior to the hearing that proposed a three-year period is not what Mr. Perzow asked us to do and would not have caused the Court to alter its impression of what it deemed a fair compromise.

**The Second Plan**

29. After the hearing on December 16, 2019, Mr. Perzow's California counsel, Mr. Bowse, engaged in settlement discussions with Stacks' California counsel, Mr. Spencer. This was not a reflection on me, but rather Mr. Perzow's perception that Mr. Teitelbaum was unduly difficult to negotiate with.

30. In January 2020, Mr. Bowse and Mr. Spencer struck a deal in principal. Mr. Bowse sent me an inquiry about extending the Debtor's time to file a Plan. He didn't urge me to file a Plan as Mr. Perzow misrepresents. A Plan was already on file, and Mr. Teitelbaum agreed there was no need to file another Plan by the January 24, 2020 deadline. This was all communicated to

---

[1] It was common for Mr. Perzow to draft and re-draft every document, from pleadings to letters to emails. This required not only constant time-intensive revisions, but also very close scrutiny as Mr. Perzow tended to include unconfirmed information as "facts" and/or express an overly hostile or personal tone.

Mr. Perzow and documented via email. Mr. Perzow and Mr. Bowse were focused on extending the Debtor's time to file a Plan. Copies of relevant emails are annexed as **Exhibit C**.

31. Regardless, Mr. Perzow, always a demanding client, asked me to file a Plan and Disclosure Statement anyway (the "Second Plan"), which I did. [Docket No. 68]. It was not a "placeholder" as Mr. Perzow misrepresents, but instead contained terms being discussed by Mr. Bowse and Mr. Spencer.

**The Third Plan**

32. Throughout mid-March 2020, I was copied on emails by Mr. Bowse who continued to negotiate settlement terms with Mr. Spencer.

33. KAC also worked with Mr. Perzow to retain Mr. Kahane of Duane Morris to pursue the Debtor's claims against Stacks for damages in California state court. I participated in numerous emails and conference calls with Mr. Kahane who was always professional with me. Mr. Perzow's claim that Mr. Kahane questioned my professionalism is shocking and belied by the fact there is no declaration from either Mr. Kahane or Mr. Bowse in support of these preposterous allegations.

34. Throughout February and March 2020, Mr. Perzow advised me that he and Mr. Gati were working on drafting an amended plan (the "Third Plan") to be used in the event a settlement did not occur, so I was to "hold off" and wait for the document from them. I continued to advise Mr. Perzow and Mr. Gati on court dates and deadlines. I confirmed in writing that I was holding off on drafting anything at Mr. Perzow's direction and I continued to ask if anything was needed from me. Relevant emails are annexed as **Exhibit D.**

35. Thus, the reason a Third Plan was not filed by KAC is not due to any delay on KAC's part, but rather the ongoing settlement discussions and Mr. Perzow's desire to draft his own documents.

36. Once the COVID-19 crisis set in, Mr. Perzow and Mr. Gati were actually focused on delaying things not expediting them, with Mr. Gati telling me to extend the plan confirmation date to the latest day possible. Again, no delay was caused by KAC. See Exhibit D.

**Subchapter V Plan**

37. On June 4, 2020, at 8:23 pm, Mr. Kahane sent an email to Mr. Spencer with a settlement proposal and discussing the potential of a Subchapter V filing. The email ended saying if an agreement is not reached by noon tomorrow, there is no deal.

38. I saw the email early in the morning on June 5, 2020. I immediately responded that I would have the Subchapter V petition drafted and would stand by for further instruction. Mr. Perzow responded to me that he was "out of pocket" and would be in touch with me around "4-ish". Incredibly, seven hours later Mr. Perzow caused his application to retain Mr. Chubak's firm to be filed, stating that I had refused to file a Subchapter V petition on behalf of the Debtor.

39. Mr. Perzow appears to have withdrawn this blatant lie, as his Declaration makes no mention of it.

**Professional Relationship with Mr. Teitelbaum**

40. I took Mr. Perzow's accusations concerning my "*oddly close relationship*". with Mr. Teitelbaum to be a ridiculous attempt to insinuate we were colluding against Mr. Perzow. Mr. Teitelbaum obviously read even more into it, which certainly is another way to read it.

41. Mr. Perzow has a knack for twisting facts in order to drag folks through the mud for his own gain, no matter how absurd the accusation.

42. In truth, Ms. Aisner, my partner, and I were upfront with Mr. Perzow from day one about our professional contacts to Mr. Teitelbaum. We represented, and Mr. Perzow appreciated,

that the mutual respect between Mr. Teitelbaum's firm and ours was valuable in forwarding settlement discussions, the original purpose for which KAC was retained.

43. There are small grains of truth in what Mr. Perzow suggests. I've had friendly discussions with Mr. Teitelbaum about our retirement plans while awaiting a calendar call in Your Honor's courtroom. We by no means discussed our personal financial information with each other. I did serve as counsel to a lender in the bankruptcy case of Mr. Arsante in which Mr. Teitelbaum represented the Debtor. According to ECF, that is only 1 of 478 bankruptcy cases I've appeared in since electronic filings began. Hardly a smoking gun to an improper relationship.

44. As Mr. Perzow's insinuations concerning Mr. Teitelbaum are completely absurd, I will not address them further.

## **Conclusion**

45. I've limited my responses to the relevant context, KAC's fee application pending before this Court. While I won't sugarcoat the fact that this was a difficult representation of a difficult client, I was utterly shocked to learn via ECF of Mr. Chubak's retention.

46. I echo Mr. Teitelbaum's desire that Mr. Perzow should be held accountable for the false content and uncivil innuendo contained in the Perzow Declaration.

Pursuant to 28 U.S.C. §1746, I declare under the penalty of perjury that the foregoing is true and correct.

Dated: July 6, 2020
       Scarsdale, New York        */s/ Dawn Kirby*

                                                       Dawn Kirby, Esq.